UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____ )
                                         )
LAVATEC LAUNDRY TECHNOLOGY GMBH          )
        Plaintiff                        )        Civil Action
                                         )        3:13-cv-0056-SRU
          v.                             )
                                         )        February 3, 2017
VOSS LAUNDRY SOLUTIONS INC.              )
        Defendant                        )
_____ )

**DEFENDANT VOSS' OPPOSITION TO PLAINTIFF'S DAMAGE CLAIM WITH
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

# TABLE OF CONTENTS

**DEFENDANT VOSS' OPPOSITION TO PLAINTIFF'S DAMAGE CLAIM WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW**..........................................................1

**I.   Preface** .....................................................................................................1

**II.   DEFENDANT VOSS'S PROPOSED FINDINGS OF FACT** .......................3

    A.   DEFENDANT'S GOOD FAITH ADOPTION AND USE OF THE LAVATEC MARK ..3

    B.   DEFENDANT'S EXPENSES ARE VALID DEDUCTIONS ........................8

    C.   EVIDENCE DOES NOT JUSTIFY THE CASE AS EXCEPTIONAL FOR AN AWARD OF ATTORNEY FEES........................................................... 10

**III.   DEFENDANTS CONCLUSIONS OF LAW** .............................................13

    A.   Willfulness Is A Prerequisite For An Award of Profits........................ 13

    B.   Calculation of Profits Includes Deductions For Expenses Attributable To The Infringement.................................................................................... 16

    C.   Attorney Fees Are Not Awarded Unless the Case Is Exceptional. ................... 17

**IV.   Conclusion** ............................................................................................18

**INDEX OF CITATIONS**

**Cases**

*Allen-Myland, Inc. v. IBM*, 770 F. Supp. 1014 (E.D. Pa 1991)......................................................15

American *Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990)..17

*Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 707 (2d Cir. 1970) ...................14

*Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131;67 S. Ct. 1136 (1947) 2, 13, 15

*Cross Commerce Media, Inc. v. Collective, Inc.*, 2014 U.S.Dist. Lexis 177176 (S.D.N.Y.

   Dec. 16, 2014) ..................................................................................................................17

*Faberware Licensing Co. LLC v. Meyer Mktg. Co.,*428 Fed. Appx. 97, 100 (2d Cir. 2011)

   ..........................................................................................................................................18

*Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 191 (1st Cir. 2012)...................................16

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110 (2d Cir. 1986...............................15

*Frank Music Corp. v. Metro-Goldwyn Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985) ...............15

*George Basche Co. v. Blue Coral, Inc.,* 968 F.2d 1532, 1537 (2d Cir. 1992) .................2, 14

*Gucci Am. Inc. Gucci,* 2009 U.S. Dist. Lexis 124888 (S.D.N.Y. 2009)…………………..15

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, USA, Inc,*, 80 F.3d 749, 753 (2d

   Cir. 1996)........................................................................................................................ 1, 14

Klein-Becher USA, LLC v. Englert, 711 F.3d 1153, 1161 (10th Cir. 2013)............................16

*Lindy Pen Co. v. Bic Pen Co.*, 982 F.2d 1400, 1406 (9th Cir. 1993) ..........................................15

*Manhattan Industries v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1 (2d Cir. 1989)................17

*Metro. Enter.Corp. v. United Techs. Int'l Corp.*, 2005 U.S. Dist. Lexis 43473, n. 5 (D.

Conn. Sept. 21, 2005 (JBA))..................................................................................... 16

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014) 17, 18

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003…………2, 17

*Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 555 ( 5th Cir. 1998) ............................2, 13

*Readers' Digest Ass'n v. Conservative Digest, Inc.*, 821 F.2d 800 (D.C. Cir. 1987) ........15

*River Light V, LP v. Lind & J International, Inc.*, 299 F.R.D. 61; 2015 U.S. Dist. Lexis

   82940 *(S.D.N.Y. 2014)........................................................................................................17

*Romag Fasteners. Inc. v. Fossil, Inc.*, 2014 U.S. Dist. Lexis 87635 at *62-63 (D. Conn. June 27, 2014) (JBA)( affirmed applying Second Circuit law - 817 F.3d 782 (Fed. Cir. 2016))................................................................................................................2, 14

*Romag Fasteners, Inc. v. Fossil, Inc.*, 2014 U. S. Dist. Lexis 113061 at *15 (D. Conn. August 14, 2014)(JBA)…………………………………………………………………15, 18

*Saxon v. Blann,* 968 F.2d 676 (8th Cir. 1992)........................................................................15

*Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167, 1175 (2d Cir. 1976)............14

*State v. Esposito,* 223 Conn. 299, 322 (1992)…………………………………….................16

*State v. Hull,* 210 Conn. 481, 489-99 (1989)…………………………………………………16

*State v. Ober*, 24 Conn. App. 347, 357 (1991)……………………………………………...16

*Supreme Sec. Sys. v. Supreme Sec. Servs.,* 2012 U.S. Dist. Lexis 45688 *7, n. 5. (E.D.N.Y. 2012).............................................................................................................17

*United States Media Corp. v. Eddie Entertainment, Inc.*, 1998 U.S. Dist. Lexis 10985 ..14

*Universal City Studios, Inc. v. Nintendo Co. Ltd.*, 797 F.2d 70, 77 (2d Cir. 1986) ............18

*U.S. v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013)…………………………………………16

*Viacom Int'l, Inc. v. Fanzine Int'l, Inc.*, 2001 U.S. Dist. Lexis 119245 (S.D.N.Y. 2001)...14

*W.E. Bassett Co. v. Revlon, Inc.* 435 F. 2d 656, 665 (2d Cir. 1970). ......................................16

*Zuppardi's Apizza, Inc. v. Tony Zuppardi's Apizza*, LLC, 2014 U.S. Dist. Lexis 136763, *23, (D. Conn. Sept. 29, 2014)(RNC)................................................................................1, 14

## Statutes and Other

15 U.S.C. §1117.................................................................................................................. 1, 2, 17

15 U.S.C. §1117(a)....................................................................................................... 3, 13, 15, 17, 18

F.R.Evid.801(c) ..............................................................................................................16

Tait and LaPlante's Handbook of Connecticut Evidence  (2d Edition 1988) §11.3.3......16

Transcript of June 5, 2015, pgs. 1 - 5, 14 - 22…………………………………………….3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                                        )
LAVATEC LAUNDRY TECHNOLOGY GMBH    )
            Plaintiff                                   )        Civil Action
                                                        )        3:13-cv-0056-SRU
            v.                                          )
                                                        )        February 3, 2017
VOSS LAUNDRY SOLUTIONS INC.             )
            Defendant                                   )
_____ )


**DEFENDANT VOSS' OPPOSITION TO PLAINTIFF'S DAMAGE CLAIM WITH
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

I.      **Preface**

Plaintiff Lavatec Laundry Technology GmbH (LLT) seeks damages pursuant to 15 U.S.C. §1117 of the Lanham Act.  Plaintiff, however, has neither the law nor the facts to support the damages claim.

Though 15 U.S.C. §1117 provides for "any damages sustained by plaintiff", Plaintiff LLT has waived a claim for such damages.  The reason is clear.  Plaintiff has not sustained any damages and cannot prove that it has sustained any damages.  Unlike a finding of trademark infringement that can be determined on the basis of a likelihood of confusion, damages to the Plaintiff require proof of actual confusion.  Otherwise the damage award would be based upon speculation.  *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, USA, Inc,*, 80 F.3d 749, 753 (2d Cir. 1996); *Zuppardi's Apizza, Inc. v. Tony Zuppardi's Apizza, LLC*, 2014 U.S. Dist. Lexis 136763, *23, (D. Conn. Sept. 29, 2014)(RNC).  Plaintiff asserts that actual confusion has occurred in the submission of invoices (a function of a billing department), but has not cited any

1

instance in which a purchasing department actually purchased the wrong product in view of trademark confusion.  The purchase of the wrong product would not occur in any event since Defendant only makes folding equipment and Plaintiff does not.

The absence of a claim for Plaintiff's losses is significant since the absence relegates Plaintiff to the more stringent claim for Defendant's profits.  The theories for an award of defendant's profits are to avoid unjust enrichment, to compensate for plaintiff's loss, and to deter willful infringement.  *George Basche Co. v. Blue Coral, Inc.,* 968 F.2d 1532, 1537 (2d Cir. 1992).  But to base the claim on the theory of unjust enrichment it has been held in the Second Circuit that "a showing of actual consumer confusion – or at least proof of deceptive intent so as to raise the rebuttable presumption of consumer confusion" is required.  Id. at 1538.  The same is true under a deterrence theory.  Id. at 1539-40.  As a consequence all three theories upon which an award of defendant's profits may be based require a finding of willful infringement.  While intervening legislation may have cast some doubt about the continuing vitality of the willfulness requirement, in this district a finding of willful infringement is still a necessary prerequisite for the award of defendant's profits.  *Romag Fasteners. Inc. v. Fossil, Inc.*, 29 F. Supp. 3d 86, 109 – 110; 2014 U.S. Dist. Lexis 87635 at *62-63 (D. Conn. June 27, 2014) (JBA)( affirmed applying Second Circuit law - 817 F.3d 782 (Fed. Cir. 2016)).

The requirement for a finding of willfulness endorses a long-held principle that in the absence of actual damages and the lack of an intent to confuse or deceive, injunctive relief satisfies the equities of the case.  *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 555 ( 5th Cir. 1998).   An accounting is not automatic just because an infringement is found.  In the absence of fraud or palming off, an injunction is sufficient.  *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131 (1947).

Plaintiff LLT also asserts a claim for attorney fees.  However, to be eligible for attorney fees under the statute, 15 U.S.C. §1117, the case must be found to be exceptional.  Exceptional in the Second Circuit has been held to mean "fraud, or bad faith, or willful infringement".  *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003).  The case can be exceptional by virtue of the claims made or the manner in which the case was prosecuted.  In the present case the Defendant had

2

justifiable cause and exercised good faith in asserting both the trademark claims, and the state unfair competition and trade secret claims, as the survival of most of the claims indicates, even if they had to be brought in state court.  Only two unfair competition claims based on §43(a) (15 U.S.C. §1125(a)) were dismissed as being frivolous.  The dismissed unfair competition claims were the subjects of one hearing after the ruling on trademark ownership, and hence played an insignificant role overall in the litigation that began in 2013.  The refusal to withdraw the unfair competition claims was based on at least a palpable argument, and hence hardly amounts to bad faith litigation misconduct warranting an award of attorney fees.  See Transcript of June 5, 2015, pgs. 1–5, 14- 22.


## II.      DEFENDANT VOSS'S PROPOSED FINDINGS OF FACT

### A. DEFENDANT'S GOOD FAITH ADOPTION AND USE OF THE LAVATEC MARK

1.  Mr. Herman Bernstein began working with Defendant Voss's predecessor, Lavatec, Inc. (Old Lavatec), the wholly owned US subsidiary of Lavatec GmbH, Plaintiff's predecessor, as a consultant and advisor on accounting and taxation for the company in 1987.  Plaintiff's Exhibit 4, pp. 8-13.

2.  Mr. Bernstein became an employee of Old Lavatec as an accounting chairman in September 2009 to guide the company through a Chapter 11 bankruptcy process. Plaintiff's Exhibit 4, p. 11.

3.  Mr. Peter Thompson has been working for or on behalf of Old Lavatec since January 1987 prior to its incorporation in February 1987. Def. Trial Exh. 519.

4.  Mr. Thompson will testify that in 2009 while he was Manager and Secretary of Lavatec,Inc. (Old Lavatec), Lavatec GmbH, Plaintiff's predecessor, and its manufacturing subsidiary in Germany Lavatec KG , collectively "Lavatec Germany", were insolvent, and a trustee had been appointed to oversee liquation of the assets. Manufacturing of industrial laundry equipment at the German subsidiary had ceased.

5.  Mr. Thompson will testify that in 2009 while he was Manager of Old Lavatec no buyer of the assets of Lavatec Germany had appeared and it was uncertain that Lavatec Germany would survive.

6.  Mr. Thompson will testify that in 2009 while he was Manager of Old Lavatec, Inc., Old Lavatec was a debtor in possession of its assets and was an operating business with the prospect of survival.

7.  Mr. Bernstein did not list the trademark LAVATEC on the initial schedule of assets for the bankruptcy proceedings in 2009 because the mark at the time did not have a cash value and was not listed on the balance sheet.  Plaintiff's Exh. 4, p. 43.

8.  Mr. Bernstein began an investigation of company trademarks in the United States to determine if the LAVATEC mark had been registered.  He considered a registration of the mark to be important to the sale of the business of Old Lavatec.  The results of the investigation indicated no registration of the LAVATEC trademark existed.  As a result of his investigation Mr. Bernstein had an application prepared, signed by Mr. Thompson, and filed in March 2010 to register the mark.  Mr. Bernstein paid for the filing himself as a fiduciary because expenses by Old Lavatec were strictly limited by the bankruptcy proceedings, and because of the importance of the mark to the company and the preservation of jobs.  Plaintiff's Exh. 4, pp. 44, 49-54.

9.  Mr. Bernstein became President of Old Lavatec in July 2010 to seek out and negotiate with potential buyers of the company.  Plaint. Exh 4, p. 15 - 16

10.  Mr. Thompson will testify that on September 17, 2010 while he was Manager of Old Lavatec he received a cease and desist letter (Defendant's Trial Exhibit 616) from Atty Fiocchi who was representing Mr. Graeser and Plaintiff LLT.  He immediately passed the letter on to Mr. Bernstein who at that time was President of Old Lavatec.

11.  Mr. Bernstein and Atty. Dean Baker, who was bankruptcy counsel for Old Lavatec and who also received a copy of the cease and desist letter, immediately began a due diligence investigation to determine if the US rights to the LAVATEC  trademark had actually been sold to Plaintiff.  Defendant's Trial Exhibit 619 and Exhibit 624.

12.  Mr. Thompson will testify that he received copies of a series of emails exchanged between Mr. Bernstein, Atty. Baker and Dr. Annerose Tashiro who was a German attorney in the law firm Schultze & Braun GmbH that specializes in insolvency proceedings.  Defendant's Trial Exhibits 619 and 624.

13.   Dr. Tashiro was working with the German bankruptcy trustee (insolvency administrator) handling the insolvency of Lavatec Germany. The trustee was Dr. Ferdinand Kiessner (see Def. Exhibit 624, LT0270) who was also an attorney in the firm of Schultze & Braun.

14  Earlier in August 9, 2009 Dr. Tashiro had filed an appearance with a power of attorney on behalf of Dr. Kiessner, the German trustee, in the US bankruptcy proceedings of Old Lavatec.  Def. Trial Exhibit 504.

15.   In July 2010 Dr. Tashiro, along with a Mr. Patric Naumann, another attorney in the Schultze & Braun firm, had been designated by Dr. Kiessner, the trustee and sole shareholder of Old Lavatec, to be directors on the Board of Directors of Old Lavatec upon the removal of Mr. Tadros and other directors.  Def. Trial Exh. 612.

16.   In July 2010 Dr. Tashiro was also elected to be Secretary and Treasurer of Old Lavatec, Mr. Bernstein to be President, Mr. Thompson to be Assistant Secretary, and Mr. Naumann to be Vice President.  Def. Trial Exh. 612.

17.   Def. Trial Exhs. 504 and 612 indicate that prior to receipt of the cease and desist letter from Plaintiff's Atty. Fiocchi in September 2010, Dr. Tashiro was vested with ample authority, both in formal documents and corporate actions, to speak on behalf of the German trustee, Dr. Kiessner, with Mr. Bernstein and Atty. Baker.

18.   Upon receipt of the cease and desist letter from Atty. Fiocchi on behalf of Mr. Graeser and Plaintiff, Mr. Bernstein reported the letter on September 20, 2010 to Dr. Tashiro and indicated that he would have to hire an attorney to defend the trademark in the US.  Dr. Tashiro responded that that would not be necessary because that matter was easier handled in Germany.  Def. Trial Exh. 619 and Def. Exh 826.

19.   In the correspondence with Dr. Tashiro, Mr. Bernstein and Atty. Baker asked if the US trademark had been sold to Plaintiff.  Def. Trial Exh. 619, 624 (LT0273-274).

(The facts set out in Pars. 20 – 24 below are as perceived by Mr. Bernstein and Mr. Thompson at Old Lavatec and Atty. Baker based upon Def. Exhs. 619 and 624.)

20.   Dr. Tashiro responded to Mr. Bernstein and Atty. Baker and told them that the rights to the US trademark LAVATEC had not been sold to Plaintiff, and they had been

reserved for Old Lavatec by the reservation clause in Plaintiff's Asset Purchase Agreement.  Def. Trial Exhs. 619, 624 (LT0268-0270, 0273-274).

21.  Mr. Bernstein asked Dr. Tashiro for a copy of Plaintiff's Asset Purchase Agreement, but she only provided excerpts including the clause of the Agreement reserving the rights to the trademark for "Lavatec, Inc. USA and Lavatec France".  Def. Trial Exhs. 619, 624, LT0269-0273.

22.  On September 23, 2010 Dr. Tashiro advised Mr. Bernstein and Atty. Baker that Mr. Graeser had not yet paid for the assets of Lavatec GmbH, and therefore Plaintiff did not own any of the assets as of that date. Def. Trial Exh. 624, LT0270.

23.  .  On September 23, 2010 Dr. Tashiro also advised Mr. Bernstein and Atty. Baker that the firm had sent Mr. Graeser a demand letter for payment and a request that he not "extent his rights and detriment Lavatec Inc's. Please feel free to do the same (I believe this is you intention)."  Def. Trial Exh. 624, LT0270.

24.  As a director of Old Lavatec and representative of the German trustee, Dr. Tashiro endorsed the filing of the US trademark application mark by Mr. Bernstein, and pursuit of the LAVATEC trademark in the United States with her email of September 23, 2010. Def. Trial Exh. 624, LT0270.

25. In or about March 2011, the Board of Directors of Old Lavatec consisting of Dr. Tashiro and Mr. Naumann with the written consent of Dr. Kiessner as sole shareholder and trustee of Lavatec GmbH adopted a resolution authorizing Mr. Bernstein as President of Old Lavatec to sell the assets of Old Lavatec.  Def. Trial Exh. 629.

26.  The authorization to sell the assets of Old Lavatec was given to Mr. Bernstein by the Directors Tashiro and Naumann and the trustee and sole shareholder Dr. Kiessner six months after the dispute with Plaintiff concerning the LAVATEC trademark had been reported by Mr. Bernstein and Atty. Baker.  Def. Trial Exh. 629.

27.  With full knowledge of the trademark dispute initiated by Plaintiff's Mr. Graeser in September 2010, and unlike the Asset Purchase Agreement relied upon by Plaintiff for its claim of ownership of the LAVATEC trademark, the authorization to sell the assets of Old Lavatec was given to Mr. Bernstein by the Directors Tashiro and Naumann and the

trustee Dr. Kiessner without any reservations concerning the LAVATEC trademark on or about March 2011.  Def. Trial Exh. 629.

28. With (1) the knowledge of the reservations concerning the LAVATEC trademark in the Asset Purchase Agreement relied upon by Plaintiff LLT, (2) the absence of any reservations concerning the LAVATEC trademark in the authorization to sell the assets of Old Lavatec, and (3) the assurances and encouragement received from Dr. Tashiro concerning the rights to the LAVATEC, Mr. Bernstein acted completely in good faith in permitting Old Lavatec to continue the use of the LAVATEC trademark and selling the mark to Defendant Voss.

29.  As Manager and Asst.Secretary, Mr. Thompson will testify that he was also privy to the communications between Mr. Bernstein, Atty. Baker, and Dr. Tashiro shown in Defendant's Exhibits 619 and 624 and was otherwise fully informed of the communications by Mr. Bernstein.

30.  Mr. Thompson will also testify the other employees of Old Lavatec including Mr. Bruce Burmann, Vice President - Sales, Reiner Schmelcher, Chief Engineer, and Hector Alejandros, Parts Manager, were all informed of the communications with Dr. Tashiro concerning the rights to the LAVATEC trademark.

31.  Mr. Thompson will testify that when the assets of Old Lavatec were sold to the Dutch company, Machinefabriek Goudkuil Apeldoorn B.V. (Goudkuil) in July 2011 the representatives of Goudkuil were fully apprised of the dispute with Plaintiff, the communications with Dr. Tashiro and the authorization of the sale by trustee Dr. Kiessner.

32.  The assets of Old Lavatec were purchased by Goudkuil by way of a corporate entity known as Laundry Acquisition Inc. which shortly after changed its name to Lavatec, Inc. and subsequently in November 2014 to Voss Laundry Solutions Inc. Plaint. Exh. 11.

33.  Mr. Thompson will testify that with the purchase of the assets of Old Lavatec by Voss the employees of Old Lavatec became employees of Voss.  Mr. Thompson retained the position of Manager and became the corporate Secretary; Mr. Burmann retained the position of Vice President-Sales; Reiner Schmelcher retained the position of Chief Engineer, and Hector Alejandros retained the position of Parts Manager.  Mr.

Albert Goudkuil became President for a brief period, and Mr. Roeland Van Delden became Vice President.

34.  The Asset Purchase Agreement (Plaint. Exhibit 11) in Section 1.2.(j) includes among the assets offered by Old Lavatec the trademark LAVATEC with the acquisition of the mark being at the option of the purchaser.

35.  With the history of the dispute with Plaintiff and the communications with Dr. Tashiro well known by the employees, Voss continued the use of the LAVATEC mark following the purchase of assets in a good faith belief that the rights to the mark belonged to Voss.

36.  When the Court ruled on September 3, 2014 (see Plaintiff's Exhibit 1) that the trademark LAVATEC belonged to Plaintiff, Voss immediately stopped applying the mark to machines to be shipped.  Def. Exhibit 827, pp. 29-33.

37.  Mr. Thompson will testify that when the Court ruled on September 3, 2014 that the trademark LAVATEC belonged to Plaintiff he purchased labels that same month to cover the logo on their invoices and the trademark on the machines to be shipped.  Def. Exhibits 802, 824.

38.  At no time did Voss apply the LAVATEC trademark to Lapauw laundry equipment that was sold by Voss.  Def. Exhibit 827 – p. 31.

39.  The evidence shows that Defendant Voss and its predecessor Old Lavatec conducted a thorough analysis of their rights to use the LAVATEC trademark and, not withstanding the later ruling by the Court on ownership of the mark LAVATEC, Voss concluded in good faith that it had a right to use the mark until the ruling on September 3, 2014.  Additionally the record lacks any evidence establishing that Voss infringed the LAVATEC mark willfully.

### B.  DEFENDANT'S EXPENSES ARE VALID DEDUCTIONS

40.  Since Defendant has only one business, no apportionment of the expenses for a profits determination is appropriate.  All expenses other than attorney fees associated with this case and income taxes are attributable to the manufacture and sale of industrial laundry equipment and associated parts.  Def. Exhibits 823R, 815, 828.

41.  Defendant's Miscellaneous Expenses have not been adequately challenged by Plaintiff and are justified.  The Miscellaneous expenses cover categories of expense that are non-recurring or not associated with any broader category of expense.  The Miscellaneous expenses include donations and non-recurring office supplies.  The expenses have never been disallowed by the IRS as necessary and ordinary expenses of the business.  Def. Exhibits 823R, 815, 828

42.  Defendant's Insurance Expenses have not been adequately challenged by Plaintiff and are justified.  The insurance expenses are associated with employment, manufacturing, and sales, and include liability insurance, property damage insurance, health insurance, workers comp, and disability insurance.  The expenses have never been disallowed by the IRS as necessary and ordinary expenses of the business.  Def. Exhibits 823R, 815, 828

43.  Defendant's Auto Expenses have not been adequately challenged by Plaintiff and are justified.  The Auto Expenses are partly for compensation of key employees in management, sales, and engineering.  The expenses also include reimbursement for out-of-pocket expenses incurred in travel on company business, such as visiting customers and vendors, and attending trade shows or conferences where customers would also be present.  The expenses have never been disallowed by the IRS as necessary and ordinary expenses of the business.  Def. Exhibits 823R, 815, 828

44.  Defendant's Travel Related Expenses have not been adequately challenged by Plaintiff and are justified.  The travel expenses would include air fares, car rentals, hotel accommodations, meals on the road, travel agency charges, and entertainment of customers. The expenses have never been disallowed by the IRS as necessary and ordinary expenses of the business.  Def. Exhibits 823R, 815, 828

45.  Defendant's Professional Fees Expenses have not been adequately challenged by Plaintiff and are justified.  The professional fees include legal fees not associated with the pending lawsuit, on contracts or other matters, and fees paid to outside accountants for audits, taxes, and regulatory matters.  The expenses have never been disallowed by the IRS as necessary and ordinary expenses of the business.  Def. Exhibits 823R, 815, 828

46.  Defendant's Bank and Credit Card Processing Fees Expenses have not been adequately challenged by Plaintiff and are justified.  Voss's business like any other processes money for purchasing, sales, wages and salaries, and any number of other expenses.  Bank accounts and service charges are inherent for these functions. The expenses have never been disallowed by the IRS as necessary and ordinary expenses of the business.  Def. Exhibits 823R, 815, 828

47.  Defendant's ADP Total Source Fees, Payroll Taxes and Workers Comp Expenses have not been adequately challenged by Plaintiff and are justified.  ADP is a well known business that handles payroll and regulatory compliance matters associated with employees.  The outsourcing of this Human Relations function is the substitute for an in-house HR department and helps keep the costs of employee administration lean.  The expenses have never been disallowed by the IRS as necessary and ordinary expenses of the business.  Def. Exhibits 823R, 815, 828

48.  Defendant's Forensic Fees Expenses have not been adequately challenged by Plaintiff and are justified.  The expenses were incurred in connection with the theft of trade secrets charges brought in the counterclaims against Messrs. Thrasher and Graeser.  As these expenses were not associated with the trademark infringement they are deductible.  Def. Exhibits 823R, 815, 828.

49. . Defendant's Expenses summarized in Def. Exhibit 823R are necessary and ordinary expenses of the Voss business and are deductible to determine net profit or loss.

50.  Based on the Net Profit and Expense figures, no profit is indicated and therefore, no profit award is appropriate.

### C.  EVIDENCE DOES NOT JUSTIFY THE CASE AS EXCEPTIONAL FOR AN AWARD OF ATTORNEY FEES

51.  In reference to Plaintiff's findings of fact, paragraphs 43,44 on page 11 of its brief (Doc. 215), Defendant Voss' Motion for a Stay (Doc. 10) for resolution of ownership of the mark in the US Patent & Trademark Office in an Opposition proceeding before the Trademark Trial and Appeal Board was not dilatory, and if anything should be attributed

to Plaintiff.  The Opposition had been initiated by Plaintiff's Mr. Graeser, and had been pending for more than two years, when on the eve of Plaintiff's testimony period, Plaintiff decided to move the matter to the District Court and start over in a new forum. Moreover, after the matter had been moved to this District Court and had been pending here for another year, it was Plaintiff that ironically in January 2014 proposed that the ownership issue that would have been decided in the Opposition proceeding be bifurcated and tried separately in this District Court.

52. In reference to Plaintiff's Findings of Fact, paragraphs 45,46 on page 11 of its brief (Doc. 215), the three motions to dismiss Plaintiff's principal, Mr. Graeser, all opposed by Defendant (see Plaintiff's findings of fact, Doc. 215, pg. 11, par. 46), never succeeded in having Mr. Graeser exonerated from all claims. See Ruling of June 5, 2014 (Doc. 177).

53.  In Plaintiff's findings of fact, Doc. 215, pg. 11-12, pars. 47- 48(1), Plaintiff alleges that Defendant relied upon an erroneous translation by Dr. Tashiro, the German bankruptcy attorney who translated a German document, namely Plaintiff's Asset Purchase Agreement.  Nowhere does Plaintiff support the allegation that the translation was "clearly erroneous."  Furthermore, Plaintiff erroneously claims that every translation submitted to the Court uses the word "trade name" and not "trademark", when in fact the translation adopted by the Court uses the words "designation 'Lavatec'" where Dr. Tashiro uses the words  "trademark 'Lavatec'" in the clause giving notice of Old Lavatec's right.  See Defendant's Trial Exhibit 637, Part 4, Section 3, Par. 2 (subparagraph 2) n p. 24.

54.  In Plaintiff's findings of fact, Doc. 215, pg. 12-13, pars. 48(2)- 49, Plaintiff makes a misleading comparison of Defendant's remarks from two different sources to allege inconsistency.  In fact in Doc. 71, Defendant refers to the parity of trademarks and trade names as far as preemption is concerned. In the discourse on October 15, 2013 Defendant is discussing the image of a specific trade name on a nameplate.  The two situations are not comparable, nor inconsistent.

55.  In reference to Plaintiff's findings of fact, paragraph 50 on page 13 of its brief (Doc. 215), Defendant's motion for clarification (Doc. 148) of the practice of forwarding emails from the old Lavatec address to the new address was brought for clarification purposes.

A motion for clarification hardly constitutes dilatory conduct, or renders the litigation exceptional. Plaintiff refers to its motion for contempt that was denied in connection with Defendant's motion for clarification.  Plaintiff sought to enjoin internal use of a forwarding email address that had not been changed less than ten days after the preliminary injunction had issued.  The motion for contempt was filed over a month after the complained of incident with no evidence that the email address was still in use.

56.  In Plaintiff's findings of fact, Doc. 215, pg. 13, par. 51, Plaintiff alludes to another in its series of motions for contempt that were denied and accuses Defendant of continuing use of the lavatec.com website to advertise Lapauw products.  In actuality the website referenced was not the lavatec.com website at all, but was website of a website developer used by Lapauw.  Upon deleting all the Voss and Lapauw information from the lavatec.com website at the direction of Voss, the website developer apparently re-directed inquiries from the lavatec.com website to his own website to advertise his previous work.  Voss had nothing to do with the re-direction, and the website of the developer was not advertising Lapauw equipment.

57.  In Plaintiff's findings of fact, Doc. 215, pg. 14, pars. 52-53, Plaintiff refers again to its motion for contempt that was denied.  Defendant Voss had made reference to its former name in a trade show announcement so that the public would know that it was now operating under its new name "Voss".   Voss deleted the reference at the Court's direction.

58.  In Plaintiff's findings of fact, Doc. 215, pgs. 14-15, pars. 54 - 58, Plaintiff refers to Defendants defense of its counterclaims for false advertising that dated back to the original pleadings filed in 2013.  In the counterclaims Plaintiff is accused of passing itself off as the "original Lavatec" and claiming it was "the only source of genuine Lavatec equipment and parts."  The false advertising counterclaims were dismissed.  The remaining state and common law claims that were not retained under the court's supplemental jurisdiction were dismissed without prejudice for re-filing in state court. Defendant has presented its defense to the false advertising claims above as having been maintained in subjective good faith and having at least a reasonable basis when the false advertising is viewed in light of its intended audience, namely the purchasers

of industrial laundry equipment and parts.  See Doc. 183 and Transcript of June 5, 2015, pgs 1- 5,14 – 22.  Under the circumstances with a good faith pursuit and reasonable basis for the false advertising claims, the nature of Defendant's actions does not rise to the level of that would cause the case to be "exceptional" under the statute, 15 U.S.C. §1117(a) as applied in the Second Circuit.  See Par. 67 below.

59.  In Plaintiff's findings of fact, Doc. 215, pgs. 15-16, pars. 59-60, Plaintiff refers to its attempt to depose Mr. Albert Goudkuil as an officer of Defendant Voss.  Mr. Goudkuil was an officer of Voss at one time, but he relinquished that position in 2013.  He was not listed as an officer in the tax return of 2014.  He appeared at the mediation session on September 3, 2015 as a representative of the stockholder of Voss, namely Machinefabriek Goudkuil Apeldoorn BV.  Consequently he was not an officer of Defendant Voss available for deposition in May or June 2015 when his deposition was requested.

60. The actions of Defendant above in defending this case did not involve bad faith, fraud, or willfulness so as to render the case "exceptional" under the Lanham Act statute 15 U.S.C. §1117(a).  The most that can be said is the Defendant pursued the false advertising claims in subjective good faith and with reasonable grounds for dispute which remove the case from the "exceptional" category.  See Par. 69 below.

### III.      DEFENDANTS CONCLUSIONS OF LAW

#### A.  Willfulness Is A Prerequisite For An Award of Profits

61. An accounting for profits is not automatic just because trademark infringement is found.  In the absence of fraud or palming off, an injunction is sufficient to satisfy the equities. *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131; 67 S. Ct. 1136 (1947).

62.  In the absence of actual damages and the lack of an intent to confuse or deceive, injunctive relief satisfies the equities in a trademark case. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 555 ( 5th Cir. 1998).

63.  The theories on which an award of defendant's profits in a trademark case are based are to prevent unjust enrichment of the defendant, to compensate for plaintiff's loss, and to deter willful infringement.  *George  Basche Co. v. Blue Coral, Inc.,* 968 F.2d 1532, 1537 (2d Cir. 1992).  In the present case, Defendant has not been unjustly enriched as the profit calculations, without taxes and attorney fees for this case, show a loss; Plaintiff is not seeking damages for loss and has not shown any loss; and Defendant has made a strong showing of good faith adoption and use of the mark.

64. Under any theory, however, a finding of defendant's willful deceptiveness in infringing a mark is a prerequisite for awarding profits.  Id. at 1539-40.

65.  Unlike a finding of trademark infringement that can be determined on the basis of a likelihood of confusion, damages to a plaintiff require proof of actual confusion. Otherwise the damage award would be based upon speculation.  *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, USA, Inc,*, 80 F.3d 749, 753 (2d Cir. 1996)*; Zuppardi's Apizza, Inc. v. Tony Zuppardi's Apizza*, LLC, 2014 U.S. Dist. Lexis 136763, *23, (D. Conn. Sept. 29, 2014)(RNC).

66.  Even if a defendant is found to have infringed a mark, if he acted in good faith in claiming ownership, and the case involves complex and difficult factual and legal issues, an injunction may suffice, and profits or damages may be refused.  *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 707 (2d Cir. 1970); *Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167, 1175 (2d Cir. 1976).

67.  While intervening legislation since the *George Basche case* may have cast some doubt about the willfulness requirement, in the Second District a finding of willful infringement is a necessary prerequisite for an award of defendant's profits.  See Judge Arterton's through analysis in *Romag Fasteners. Inc. v. Fossil, Inc.*, 29 F. Supp. 3d 85, 109 - 110; 2014 U.S. Dist. Lexis 87635 at *62-63 (D. Conn. June 27, 2014) (JBA) (affirmed under Second Circuit law - 817 F.3d 782 (Fed. Cir. 2016)).

68.  While the U.S. Supreme Court in *Octane Fitness, LLC v. ICON Heatlh & Fitness, Inc*., 134 S. Ct. 1749, 1756-57, 188 L.Ed.2d 816 (2014) relaxed the standards for finding a case "exceptional" for an award of attorney fees under the Patent Law, the Second Circuit has not adopted the relaxed standards under the Lanham Act (the Trademark

Law) even though the wording of the statutes is similar.  Therefore, Second Circuit cases requiring bad faith, fraud, or willfulness for an attorney fees award are binding precedent in this case.  *Romag Fasteners. Inc. v. Fossil, Inc.*, 2014 U.S. Dist. Lexis 113061 at *15, (D. Conn., August 14, 2014)(JBA).

69.  In the absence of bad faith, fraud, or willfulness on the part of the defendant this case is not "exceptional" within the meaning of the Lanham Act, and the Plaintiff is not entitled to recover its reasonable attorney fees under the statute.  *Romag Fasteners. Inc. v. Fossil, Inc.*, 2014 U.S. Dist. Lexis 113061 at *15 - *16, (D. Conn., August 14, 2014)(JBA).

70.  While an award of profits is also available for infringement in copyright cases, the award is based upon a statute, 17 U.S.C. §504, different from the trademark statute, 15 U.S.C. §1117(a). The following cases cited in Plaintiff's brief are copyright cases or are citations from sections of the case dealing with copyright damages, and are not applicable to the present trademark case:

*Gucci Am. Inc. Gucci,* 2009 U.S. Dist. Lexis 124888

*Viacom Int'l, Inc. v. Fanzine Int'l, Inc.*, 2001 U.S. Dist. Lexis 119245

*United States Media Corp. v. Eddie Entertainment, Inc.*, 1998 U.S. Dist. Lexis 10985

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110 (2d Cir. 1986)

*Saxon v. Blann,* 968 F.2d 676 (8th Cir. 1992)

*Frank Music Corp. v. Metro-Goldwyn Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985)

*Allen-Myland, Inc. v. IBM*, 770 F. Supp. 1014 (E.D. Pa 1991)

71.  Willfulness is a state of mind.  Courts have found that willfulness for an award of profits can arise from:

Fraud or palming off - *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131; 67 S. Ct. 1136 (1947).

Deliberate intent to deceive – *Lindy Pen Co. v. Bic Pen Co.*, 982 F.2d 1400, 1406 (9th Cir. 1993)

Bad faith  - *Readers' Digest Ass'n v. Conservative Digest, Inc.*, 821 F.2d 800 (D.C. Cir. 1987)

Conscious awareness of wrongdoing – *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 191 (1st Cir. 2012)

An intent to benefit from the goodwill or reputation of the other – Klein-Becher USA, LLC v. Englert, 711 F.3d 1153, 1161 (10th Cir. 2013).

72.    An out-of-court statement of another is admissible in evidence if it is submitted to show the effect on the listener, and not to establish the proof of the statement itself. The statement is not hearsay under F.R.Evid.801(c).  See Advisory Committee's note and *U.S. v. Dupree*, 706 F3d 131, 136 (2d Cir. 2013).  Consequently, such statements are admissible to show intent, and it is legal error to exclude such evidence submitted to show state of mind. (*Id.* at  138). See also *Metro. Enter.Corp. v. United Techs. Int'l Corp.*, 2005 U.S. Dist. Lexis 43473, n. 5 (D. Conn. Sept. 21, 2005 (JBA)).

73.  Third party statements submitted not to show the truth of the statements, but to show the listener's subsequent actions are not hearsay and are admissible for that purpose.  *State v. Esposito,* 223 Conn. 299, 322 (1992); *State v. Ober*, 24 Conn. App. 347, 357 (1991); *State v. Hull,* 210 Conn. 481, 489-99 (1989).

74.  Hence it follows that statements of others, such as the correspondence from Dr. Tashiro relating to the Plaintiff's claim of ownership, submitted to show the effects on the hearer or recipient , such as notice, intent, reasonableness, and good faith, and not to prove the truth of the statements are not hearsay and are admissible for that purpose. See Tait and LaPlante's Handbook of Connecticut Evidence  (2d Edition 1988) §11.3.3 Def. Exh. 829

### B.  Calculation of Profits Includes Deductions For Expenses Attributable To The Infringement

75.  Overhead and most operating expenses attributable to the infringement are deductible expenses. *W.E. Bassett Co. v.  Revlon, Inc.* 435 F. 2d 656, 665 (2d Cir. 1970).

76.  Overhead may be apportioned in the same proportion as gross sales.  American *Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990);  *Manhattan Industries v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 8 (2d Cir. 1989). Hence if Plaintiff asserts total sales as infringing sales then total overhead and operating expenses are candidates for deduction.

77.  Included among the expenses considered deductible for a profits determination are sales commissions, returns, shipping costs, and interest on money borrowed from a corporate parent.  *Manhattan Industries v. Sweater Bee by Banff, Ltd.*, 885 F.2d at 7.

78.      Plaintiff LLT in its Applicable Law and Analysis section, par. 13, p. 18  has also misrepresented as a matter of law that certain expenses, namely automobile, bank service charges, insurance, professional fees and travel and entertainment costs have been found by a court to be not deductible, citing *Supreme Sec. Sys. v. Supreme Sec. Servs.,* 2012 U.S. Dist. Lexis 45688 *7, n. 5. (E.D.N.Y. 2012).  Actually, the citation is merely a magistrate's recommendation and does not represent a court ruling as a matter of law.  Moreover, the magistrate's recommendation of non-deductibility is based solely upon the defendant's failure to offer any argument in support of the expenses. Each of the cited expenses is a necessary and ordinary expense incurred by almost any business which has employees and which manufactures and sells a product or service.

### C.  Attorney Fees Are Not Awarded Unless the Case Is Exceptional.

79.  The court in exceptional cases may award reasonable attorney fees to the prevailing party.  15 U.S.C. §1117(a).

80. An "exceptional" case under 15 U.S.C. §1117(a) in this District and as understood in the Second Circuit means one in which there has been a finding of "fraud or bad faith, or willful infringement.  *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003).

81. The requirements for finding a case exceptional under 15 U.S.C. §1117(a) in this District are not those in the case cited by Plaintiff, namely, *River Light V, LP v. Lind & J International, Inc.*, 299 F.R.D. 61; 2015 U.S. Dist. Lexis 82940 *(S.D.N.Y. 2014)(a counterfeiting case) citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.

Ct. 1749, 1756 (2014)(a patent case), and have not been adopted by the Second Circuit in trademark cases. *Romag Fasteners, Inc. v. Fossil, Inc.*, 2014 U. S. Dist. Lexis 113061 at *15 (D. Conn. August 14, 2014) (JBA).

82. The Second Circuit cases interpreting the attorney fee provision of 15 U.S.C. §1117(a) prior to *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014) remain good law and are binding precedent in this District. *Romag Fasteners, Inc. v. Fossil, Inc.*, 2014 U. S. Dist. Lexis 113061 at *15 (D. Conn. August 14, 2014) (JBA).

83. The focus of the bad faith inquiry in the exceptional cases context is whether the plaintiff had a credible, good faith basis on which to rest its Lanham Act claims. *See, e.g., Universal City Studios*, 797 F.2d 70, 77 (2d Cir. 1986).

84. In regard to an award of attorney fees, the statute, 15 U.S.C. §1117(a) is permissive – "…may award". Even where there is a finding of bad faith in a Lanham Act case, the court may exercise its discretion to deny an award of attorney fees. *Faberware Licensing Co. LLC v. Meyer Mktg. Co.,*428 Fed. Appx. 97, 100 (2d Cir. 2011).

## IV. Conclusion

The facts and law above lead inevitably to the conclusion that this case is not exceptional and an award of profits and attorney fees is not warranted. The principal matter litigated was the ownership of the trademark LAVATEC. Defendant's claim to ownership was clearly reasonable under the facts of the case and was asserted in good faith. Defendant had before it the portion of Plaintiff's Asset Purchase Agreement with a reservation clause stating the trustee did not have exclusive rights to the mark and Old Lavatec did have rights. If there were any ambiguity in what rights Old Lavatec had and conveyed to Defendant Voss, the doubts were extinguished by (1) the emails from Dr. Tashiro citing the reservation clause, and (2) the authorization given to Mr. Bernstein to sell the assets of Old Lavatec without reservations by the trustee Dr. Kiessner, the same person through whom Plaintiff derives its rights with reservations.

The good faith state of mind of the people comprising Old Lavatec and subsequently Defendant Voss is even clearer when it is recognized that Dr. Kiessner, Dr. Tashiro, and Mr. Naumann were well aware of the trademark dispute initiated by Plaintiff six months prior to the time the authorization to sell was given to Mr. Bernstein without reservations.

The motions following the ruling on ownership should not color the overall conduct of the case.  The case has been pending since 2013 following Plaintiff's abandonment of its trademark opposition that had been pending for two years in the US Patent & Trademark Office, both proceedings initiated by Plaintiff and devoted to the same issue, ownership of the LAVATEC mark.  Defendant's defense of its remaining counterclaims and claims against Mr. Graeser was valid and successful in part, since a number of the claims survived for action in the state courts.  The amount of court time devoted to Defendant's Counterclaims that were dismissed on the merits was limited to part of one hearing that  was shared with the time devoted to other counterclaims that were not dismissed on the merits.  Hence, Plaintiff is as much to blame on the Counterclaims issue as anyone.

Accordingly, the Plaintiff's claim for damages, attorney fees, and costs is not supported by the law or the facts, and should be denied.

Respectfully submitted

VOSS LAUNDRY SOLUTIONS INC.

By /s/ John C. Linderman
   John C. Linderman
   ct04291
    lind@ip-lawyers.com
   McCormick, Paulding & Huber LLP
   185 Asylum Street, CityPlace II
   Hartford, CT 06103-3410
    Ph. 860 549-5290
    Attorney for Defendant

CERTIFICATE SERVICE

I hereby certify that on February 3, 2017 a copy of the foregoing

**DEFENDANT VOSS' OPPOSITION TO PLAINTIFF'S DAMAGE CLAIM WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW**

was filed electronically and served by mail on anyone who has appeared and is unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties who have appeared by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ John C. Linderman
John C. Linderman