_____ )
                                            )

LAVATEC LAUNDRY TECHNOLOGY GMBH    )
         Plaintiff                             )       Civil Action
                                            )       3:13-cv-0056-SRU
                     v.                           )
                                            )

VOSS LAUNDRY SOLUTIONS INC.            )
         Defendant                         )
_____ )

# DEFENDANT VOSS' EXHIBIT 637

//TRADE SECRET/COMMERCIALLY SENSITIVE//

**Notarized copy of extracts!**

- without the conveyance in Part 1, Sec.8, (1) of the document
and without applications for cancellation in Part 1, Sec. 8, (3-6) of the document

**NOTARY DR. ROLF GAUPP**
Uhlandstrasse 21, 74072 Heilbronn [Germany]

---

# Purchase Agreement dated May 26, 2010
# Document No. 924/2010

between

**Attorney Dr. Ferdinand Kiessner**
with his business address at Eisenbahnstrasse 19-23, 77855 Achern,
in his capacity as insolvency trustee in the insolvency proceedings with respect to the property of the
firm **LAVATEC GmbH**                                                               **-Seller 1-**

as well as

**Attorney Holger Blümle**
with his business address at Kriegsstr. 113, 76135 Karlsruhe,
in his capacity as insolvency trustee in the insolvency proceedings with respect to the property of the
firm **LAVATEC WASCHEREI-MASCHINEN GmbH & Co KG**                 **-Seller 2-**

and

the firm **Lavatec Laundry Technology GmbH** with its main office in Heilbronn,
Wannenäckerstrasse 53, 74078 Heilbronn                                       **- Buyer -**

---

**The copy under seal corresponds to the extracts from the original document submitted to
me and is hereby notarized!**

At the same time, I confirm that the portions of the document that were not copied related solely
to the conveyance and approvals and applications for cancellation with respect to rights pursuant
to Articles II and III of the Real Estate Register!

Heilbronn, June 8, 2010,
[Signature]
**Dr. Gaupp, Notary**

[Illegible round seal]

//TRADE SECRET/COMMERCIALLY SENSITIVE//

1

CONFIDENTIAL–ATTORNEYS EYES ONLY

DEFENDANT'S
EXHIBIT

637

LT16522

Roll of Documents No. 924/2010



**NEGOTIATED**

in 74072 Heilbronn                        on                   May 26, 2010

(in words: May twenty-sixth, two thousand and ten)

**Before me, the undersigned Notary**

**DR. ROLF GAUPP**

**74072 Heilbronn, Uhlandstr. 21**

the following persons appeared in my law office:

2

CONFIDENTIAL—ATTORNEYS EYES ONLY

LT16523

- 2 -

5.    Attorney Patric Naumann, born on March 3, 1971.
      with his business address at 68161 Mannheim, N 7.11

      -    identified by his personal identity card

      with the declaration that he is not negotiating on his own behalf but rather as a representative
      without (sic) a power of attorney for:

      1.1    Attorney Dr. Ferdinand Kiessner,
             with his business address at Eisenbahnstr. 19-23, 77855 Achern,
             in his capacity as insolvency trustee in the insolvency proceedings with respect to the
             property of the firm
             **LAVATEC GmbH**

                            -    hereinafter referred to as **Seller 1**

      1.2    Attorney Holger Blümle,
             with his business address at Kriegsstr. 113, 76135 Karlsruhe,
             in his capacity as insolvency trustee in the insolvency proceedings with respect to the
             property of the firm
             **LAVATEC WASCHEREI-MASCHINEN GmbH & Co KG**

                            -    hereinafter referred to as **Seller 2**

      -    hereinafter also referred to jointly as **"Sellers"**

      without any obligation on the part of those present to procure notarized declarations of
      approval which will be deemed approved and effective when received by the Notary.

2.    Mr. Wolf-Peter Graeser, born on September 12, 1957,
      with his business address at 74078 Heilbronn, Wannenäckerstrsse 53

      -    personally known [to Notary Gaupp]

      with the declaration that he will hereafter negotiate for a limited liability company under the
      trade name

      **Lavatec Laundry Technology GmbH** with its main address in Heilbronn
      Wannenäckerstrasse 53, 74078 Heilbronn
      (recorded in the Commercial Register of the District Court of Stuttgart under HRB 724988)

                            -    hereinafter also referred to as **"Buyer"**

*Confirmation of authority to represent will follow in a separate document.*

3

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16524

- 3 -

The question of whether to obtain a preliminary certification pursuant to Section 3, (1) No. 7 of the Certification Statute (Beurkundungsgesetz) was answered in the negative.

The persons present [in the office of Notary Gaupp) declare the following purchase agreement for purposes of public certification:

## PREAMBLE

### I.

1. The District Court Heilbronn - Insolvency Court- File No. 12 IN 321/09, in a decision dated June 8, 2009, appointed Attorney Dr. Ferdinand Kiessner as temporary insolvency trustee for the property of LAVATEC GmbH, hereinafter also referred to as Debtor 1.

   In a decision dated September 1, 2009 by the District Court of Heilbronn - insolvency court - the insolvency proceedings were opened and Attorney Dr. Ferdinand Kiessner was appointed as insolvency trustee for the property of Debtor 1.

2. Debtor 1 is the holding company of the LAVATEC group of companies.

### II.

1. The District Court Heilbronn - Insolvency Court Az. 14 IN 276/09, in a decision dated May 7, 2009, appointed Attorney Thomas Kind as temporary insolvency trustee for the property of LAVATEC WASCHEREI-MASCHINEN GmbH&Co KG, hereafter also referred to as Debtor 2.

   In a decision dated June 1, 2009 by the District Court Heilbronn - Insolvency Court - the insolvency proceedings were opened and Attorney Thomas Kind was appointed as insolvency trustee for the property of Debtor 2.

   In a decision dated April 29, 2010 by the District Court Heilbronn, Attorney Holger Blümle was appointed as insolvency attorney.

2. Debtor 2 engaged in the development, production, sales and servicing of complete washing installations for large companies.

   The business has been closed since June 2009.

4

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16525

- 4 -

3. This agreement consists of the following four contracts that are independent of each other, but are connected from a business perspective, and were therefore included in an overall agreement pursuant to which the Sellers will sell to the Buyer:

a) in Part 1 of this Agreement, the real estate of Seller 1 in Heilbronn on which the business was operated;

b) in Part 2 of this Agreement, objects of personal property of Seller 1, as described more fully in the agreement;

c) in part 3 of this Agreement, out of the inventory of Debtor 2, raw materials, auxiliary and factory materials, unfinished and finished products and goods;

d) in Part 4 of this Agreement, intangible property such as the trade name , the know-how, and the list of customers.

4. Part 5 of this agreement deals with general provisions and other agreements.

**Part 1**
**Real Estate Purchase Agreement**

**Section 1**
**Status of the Land Registration**

1. Debtor 1 is listed under its prior company Lavatec AG in the Land Registry office of Heilbronn in the Land Registry of Heilbronn, Sheet 28216 in the first section as the owner of the following real estate properties:

- Item No. 1:
Parcel No. 6000/17      Wannenäckerstr. 53
                        Buildings and open space      with 15,900 m$^2$

- Item No. 2:
Parcel No. 6000/21      Wannenäckerstr. 53
                        Buildings and open space      with 3,204 m$^2$

The properties have a production building and an office complex built on them.

5

- 5 -

2. The property is mortgaged as follows:

   a) <u>In the second section:</u>

   Item No. 1, only encumbered on prior parcel 6000/17 with 10,000 m²:
   limited personal easement for the city of Heilbronn concerning construction and use
   restriction. Commercial area restriction and prohibition for use for consumer market.
   Entered on February 24, 1987;

   Item No. 3, only encumbered on prior parcel 6000/15 with 5,900 m²:
   limited personal easement for the city of Heilbronn concerning construction and use
   restriction. Commercial area restriction and prohibition for use for consumer market.
   Entered on 04/27/1992;

   Item No. 6:
   limited personal easement for the city of Heilbronn concerning construction and use
   restriction (no gambling halls and similar businesses, restaurants and entertainment
   venues, retail stores). Entered on 06/21/1994;

   Item No. 7:
   Provisional insolvency administration has been arranged. Orders by the Debtor
   regarding the objects on her property are only valid with the approval of the provisional
   insolvency administrator, Sections 21, 22 of the German Insolvency Code
   (Insolvenzordnung – InsO). Entered on 06/17/2009;

   Item No. 8:
   A general access prohibition has been imposed on the owner. Entered on 07/15/2009;

   Item No. 9:
   Insolvency note, entered on 09/03/2009.

   b) <u>In the third section:</u>

   With regard to the encumbrances in the third section, reference is made to the Land
   Registry excerpt in **Attachment A1.1.**

3. The certifying Notary has determined the status of the land registration.

6

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16527

- 6 -

## Section 2
## Purchased Property

Seller 1 hereby sells the property described in more detail in Section 1, specifically Parcel No. 6000/17 with 15,900 m$^2$, as well as Parcel No. 6000/21 with 3,204 m$^2$, including the standing premises with all the essential components to the Buyer for sole ownership.

## Section 3
## Purchase price, due date

1.    The purchase price for the developed property totals

€ 4,000,000.00
(in words: EURO Four million).

On the property and land, this amount has hereby been allotted          € 750,000.00
On the buildings built there                                           € 3,250,000.00

The Seller hereby states, pursuant to Section 9 (1) Value Added Tax Act (Umsatzsteuergesetz – UStG or sales tax), that he waives the exemption from taxes on the sale.

The Buyer warrants that he as the buyer represents a business pursuant to Section 2 (1) UStG and will use the property that is the object of the purchase for business purposes pursuant to Section 9 (1) UStG. In case the Buyer does not represent a business or it loses its status as a business and/or object of the purchase, contrary to his assurance, will not be used for these business purposes, the Buyer is liable to the Seller for all damages the Seller may incur and holds the Seller harmless.

2.    Pursuant to Section 13b (2) UStG, the Buyer owes the sales tax and will pay it.

3.    The purchase price is due within 7 days after receipt of written notice from the Notary by registered mail with return receipt to the Buyer to the address mentioned at the start of this document (credit to account), in which he shall communicate that

      a)    the priority ownership notice granted to the Buyer is entered into the Land Registry, or the entry has been rejected as a result of the Buyer's default with respect to the advance on costs requested by the Land Registry office;

      b)    the Notary has the necessary documents in regard to the release from any encumbrances or there is a confirmation from the creditor that the mortgage lien to be assumed

7

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16528

- 7 -

- if necessary, after payment of an amount from the purchase price – he is no longer liable for the liabilities of the Seller and specifically for all of the charges or for those entered into with the preliminary note, which the Buyer is not required to assume. These may only be granted subject to the payment requirements that can be met from the purchase price. The Notary will be empowered to request the documents for release from any encumbrances or for confirmation to accept and use them for the parties to the Agreement and the purchase price funding pursuant to Section 875 (2) BGB.

The purchase price must be paid when due, at no expense, to the escrow account that has been specially set up for this, "Lavatec GmbH – S-account Sale of Real Estate," at the Offenburg/Ortenau Savings Bank, BIC 66450050, Account No. 88 433 992. The interest on the escrow account belongs to the Seller. Seller 1 shall not charge the Buyer any costs or fees that may be due from holding an escrow account.

3. Seller 1 may access the contribution to the escrow account only after submitting all the permits and certificates required for legal validity or for private law and/or public law. The Notary will be responsible for notifying the Buyer and the Seller regarding the existence of all such required permits and certificates.

The purchase price must be used by the Seller primarily and first to repay the secured debt for his personal liabilities. He may transfer the excess amount from the escrow account to the insolvency trustee account, "Dr. Kießner – InsV Lavatec GmbH," at the Offenburg/Ortenau Savings Bank, BIC 664 500 50, Account No. 88 42 7656.

## Section 4
## Transfer of ownership, benefits and encumbrances

1. The ownership and benefits, the danger, and public and private encumbrances including all liabilities from the insurance for the purchased property shall be transferred to the Buyer on June 1, 2010, at midnight.

The Buyer shall give Seller 1 and Seller 2 the right to use the small meeting room in the executive area in the administration building for office activities, starting on the day of transfer, for a period of 2 years.

2. The Notary has noted that the requirement to ensure public safety will only transfer to the Buyer at the time of the conveyance of the property in the Land Registry. The Buyer therefore commits to assuming the insurance of public safety as of June 1, 2010. The Buyer indemnifies Seller 1 from all responsibility and liability to third parties in regard to the insurance of public safety as of June 1, 2010.

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16529

- 8 -

3.   Existing property and liability insurance policies, especially any fire insurance, transfer to the Buyer pursuant to Subsection 95 et seq. of the Insurance Contract Act (Versicherungsvertragsgesetz – VVG), as long as he does not cancel them within a month after the transfer of ownership. With the entry of the change in ownership, all insurance law claims of Buyer 1 relating to the object of the purchase will be assigned by Seller 1 to the Buyer. The Buyer hereby accepts the assignment. The Buyer is reminded in this regard that the insurance coverage may be voided if the indication of the sale does not take place immediately, which the Buyer will take care of himself.

As of June 1, 2010, the Buyer must also meet the obligation to pay premiums and to notify the insurer. The Buyer therefore indemnifies the Seller from all future claims for insurance. If the Seller has already provided premiums, which must be covered by the Buyer according to the above provision, the Seller is entitled to reimbursement. If the Buyer makes use of his right to cancel, these regulations apply to premium receivables of the insurance, which cover the period from the due date of the purchase price, at the latest upon transfer of ownership.

4.   Seller 1 cancels, unless agreed otherwise in this Agreement, all other existing long-term debt relationships for the object of the purchase. He will notify each of the contractual partners that they must contact the Buyer for a new Agreement, if applicable.

5.   Public service development costs and abutter costs (contributions) and other public charges (fees) for the object of the purchase, as well as surveying costs, including the acquisition of the results in the real estate register, which arise or become due after the day of the certification, shall be borne by the Buyer, in particular also those which the Seller should use, starting today, until the transfer of ownership by delivery of contribution notifications or expense notes, even if the measures to be billed should already be started structurally today; land tax and land tax arrears shall be borne by the Buyer. The Buyer indemnifies the Seller in regard to these payment obligations. If Seller 1 has already made payments for 2010, which the Buyer must bear according to the above rule, Seller 1 is entitled to make a claim for reimbursement from the Buyer.

### Section 5
### Liability for defects

1.   The Buyer is buying from Seller 1 in the insolvency proceedings. Seller 1 himself only has limited knowledge about the object of the purchase; his information is particularly based on information from employees of Debtor 2. Seller 1 assumes no liability for the correctness or for the completeness of this information.

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16530

- 9 -

2.  The Buyer has personally satisfied himself in regard to the overall condition of the property and the building and its furnishings.

    Seller 1 has notified the Buyer in particular about the following:

    - There is a painting facility, a drying facility and an acid bath. It is important to ensure that no acid leaks out.

    The Buyer waives the requirement for a detailed list in this document of the defects that are known to him. The Seller is not aware of any defects from his clearing activities.

    The Buyer is buying the object of the purchase in its current condition, having been used for many years. The Seller does not assume any guarantees, especially not for the constitution or for the usability of the property sold and the standing buildings and their furnishings.

    There is an expert opinion report on the condition of the building from Klöters & Partner, date 09/23/2009, which is the object of a separate notarized deed document dated today (UR No. 923 / 2010 by Notary Dr. Gaupp in Heibronn). All parties hereby authorize the statement provided to them in the deed document and make the deed effective retroactively.

    The deed document is the original and its contents is known to all parties. Express reference shall be made to this deed document. It forms a part of this document. All parties waive the re-reading of the deed document. A certified copy of the deed document is attached to this document as **Attachment A1.5.2**.

3.  Liability for defects for material or legal defects is completely excluded, as long as Seller 1 does not legally require this and as long as Section 9 Item 5 in the 5th section of this document does not provide otherwise. This exclusion of liability also applies to those defects that occur after the conclusion of the Agreement and before the transfer of risk. An exception to this is the requirement to transfer the object of the purchase free of the charges for it entered in the Land Registry, provided these will not be expressly assumed by the Buyer in this document.

    Seller 1 is especially not liable for the correctness of the surface measurements entered into the Land Registry and the demarcation of the property in nature. Seller 1 is not liable for the usability of the property or the buildings or the furnishings in any manner whatsoever. The exclusion of liability for material defects also applies for hidden and serious defects, especially for any damaging soil changes and contamination pursuant to the Federal Soil Protection Act (Bundes-Bodenschutzgesetz – BbodSchG) and damaging changes to the building as well as changes in the quality of the groundwater pursuant to Section 22 Water Management Act (Wasserhaushaltsgesetz – WHG).

    This includes claims which result from risk exploration measures, from cleanup orders, cleanup measures and the results of a cleanup, e.g. removal of waste, construction delays, etc. The abovementioned especially applies to the utilization pursuant to BBodSchG. Measures of this kind shall rather be borne by the Buyer at his own cost and risk. Costs for

10

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16531

- 10 -

measures related to damaging soil changes and contamination and damaging changes to the buildings, especially of the abovementioned type, shall not be reimbursed to the Buyer if this Agreement is rescinded. Seller 1 is not aware of any claims from third parties. The Buyer is obligated, in the event of a partial or total resale, to commit his legal successor in the same way and to require him to impose the obligations for transfer; he is liable for any damages that arise from a violation of this obligation.

Seller 1 is not aware of any hidden defects.

4.    Seller 1 does not have an energy performance certificate pursuant to Section 16 Energy Conservation Regulations (Energiesparverordnung – EnEV). The Buyer definitively waives this submission and transfer. He is aware that he must submit a certificate of this kind to future interested lessees, upon request, and that he may have to meet retrofitting requirements. Seller 1 is not liable for this.

5.    The purchase price has been agreed on in particular considering the extensive defect liability exclusion.

6.    Insofar as Seller 1 still has some rights in regard to defects of the object of the purchase, these are hereby transferred to the Buyer, with the prior condition that the entry of the Buyer as the new owner is registered in the Land Registry. Seller 1, however, assumes no liability for the fact that the Buyer can stay out of the transferred defect liability claims with no indemnification. The Buyer accepts this transfer.

7.    There are no rental or leasing relationships.

8.    The charges in the 2nd section remain, unless otherwise provided for in this Agreement, exist and are also included in the purchase price as net. The Buyer also assumes for these included charges the increased personal obligations that arise from these with the effect of discharging the debt.

The insolvency note in the 2nd section of the Land Registry, as well as entries on the preliminary insolvency proceedings under Items 7 and 8 and the ban on access, must be discharged by the Seller at his own costs.

The Seller will present the amounts claimed by the mortgage creditors to submit their approval for cancellation or release from the mortgage. The Buyer will bear all other costs that may arise in connection with the cancellation or release from the mortgage.

Seller 1 has not looked into the easement book. The Seller is not aware of easements or easements not registered in the Land Registry under the old law. Should such rights exist, the Buyer assumes them with no allowance for them in the

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16532

- 11 -

purchase price for further tolerance, is they are not cancelled through acquisition in good faith.

9.    Seller 1 assumes no liability for the non-application of any existing statutory preemption rights, nor for the production of any required certificates and approvals for the legal validity of the Agreement. Claims for damages shall be excluded, regardless of their legal basis.

## Section 6
### Permits

Seller 1 and Buyer empower and assign to the Notary the task of obtaining all necessary permits and statements for the preparation of the Land Registry execution. The contractual parties are hereby applying for all required permits for the legal validity of this Agreement. They request that the Notary accept all the permits that have been issued without conditions and requirements. For these permits, the parties, as of today, waive the formal delivery and the lodging of appeals. Permits of any kind for this document should be made to take effect for all parties concerned by the Notary upon their receipt.

## Section 7
### Right of first refusal

Should any right of first refusal be exercised, the Agreement between the parties shall be rescinded.

Any additional claims by the Buyer based on exercising the right of first refusal do not exist.

## Section 8
### Land register legal statement

1.    Seller 1 and Buyer agree on the transfer of the property in the real property mentioned in Section 1. Seller 1 already agrees to the Buyer's registration as the new owner in the Land Registry. Both partners request registration in the Land Registry.

12

LT16533

- 12 -

2. To ensure the right to transfer of ownership, Seller 1 grants and

moves for

the Buyer to enter a priority notice pursuant to Section 883 German Civil Code (Bundesgesetzbuch – BGB) in the next ranking area. Seller 1 enters into this Agreement at no cost.

3. The Seller agrees and already applies for the cancellation of this priority notice with the completion of the change in ownership in the Land Registry under the condition that no intermediate rights have been applied for or entered without the participation of the buyer.

4. The Seller agrees and already applies for the cancellation of this priority notice. Buyer 1 enters into this Agreement at no cost. The Notary is instructed to forward the complete copy of the

   a) If the Notary has sent the confirmation regarding the due date of the purchase price to the Buyer at his address listed in the document entry and Seller 1 has notified the Notary in writing that he has withdrawn from the Purchase Agreement because the payment of the purchase price has not been made on time, and/or he has refused the fulfillment of this Agreement, and the Buyer has not notified the Notary in writing of within 10 days that the purchase price has been paid

   or

   b) if Seller 1 has notified the Notary in writing that he has withdrawn from the Purchase agreement due to non-payment of the real estate transfer tax that is due, and the Buyer has not notified the Notary, upon written request, that the real estate transfer tax has been paid within 10 days

   or

   c) if Seller 1 has notified the Notary in writing that he has withdrawn from the Purchase agreement due to the absence of a permit required for the validity or implementation of the Agreement, pursuant to Section 7 No. 1 in the 5th Section of this Agreement.

5. Seller 1 agrees and applies for the cancellation of the insolvency note entered into the 2nd section of the Land Registry, the cancellation of the entry of the previous insolvency proceeding, ongoing No. 7, as well as the cancellation of the transfer prohibition, ongoing No. 8; these expenses shall not be borne by the Buyer.

13

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16534

- 13 -

6. Seller 1 already agrees to the cancellation and the lien release of the costs that will not be borne by the Buyer. The cancellation and the lien release have been agreed to by all Parties.

7. The Notary is consistently and irrevocably instructed by Seller 1 and the Buyer to submit an original or a copy of this Agreement, initially only partially (for the execution of application no. 2 with respect to the prior note) to the Land Registry office and, in addition, to only give it to the Buyer or the authorities, and also then to only forward the complete version of this Agreement with the conveyance and the cancellation applicants to the Land Registry office for execution, after he has been notified of the payment of all purchase prices from this Agreement in their full amounts, with no unrealizable conditions by Seller 1, and the payment of the Notary costs has been made and the Notary or the Land Registry office has the certificate of tax clearance.

It shall be made clear that all applications, each with no conditions or deadlines, have been made.

The Buyer irrevocably waives his right to forward copies himself to the Land Registry office and also waives requesting the conveyance containing certified copies or regular copies.

### Section 9
### Financing of purchase price/Charge authority

1. Seller 1 commits to participate, for the financing of the purchase price of the object of the purchase, in the assigning of rights to mortgages in favor of German credit and insurance institutions, up to a maximum amount of 5 million Euros plus any interest and to participate in any associated costs. Seller 1 has the right – in the internal relationship of the parties – to refuse participation if the entire financing of the purchase price and the costs listed in Section 6 in the 5th part of this document are not ensured. The obligation to participate by Seller 1 only exists if the following provisions are added to the mortgage certificate, which has already been agreed on by the parties:

   a) Each mortgage ensures – as opposed to all form-type purposes of the future mortgage creditor and any agreements with the Buyer – up to the full purchase price payment, only an amount totaling the actual portion of the purchase price paid by the creditor to Seller 1. All other statements regarding the purpose, insurance and utilization agreements within or outside of this document are only valid after full payment of the purchase price, at the latest upon transfer of ownership. From this time, they are considered to be guarantors for and against the Buyer.

   Seller 1 assumes no personal liability in relation to the mortgage. The Buyer commits to indemnify Seller 1 from all costs and any consequences of the mortgage.

14

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16535

- 14 -

The Buyer assumes the assigned mortgage also for collateral liability upon transfer of ownership. Seller 1 transfers all rights that he has had in regard to this mortgage until then to the Buyer and already agrees to a description of this in the Land Registry.

b) For the purposes of hedging of Seller 1, the Buyer hereby assigns his claims to disbursement of loans for which the Seller has ordered mortgages for lien, up to the amount of the purchase price, and any interest on arrears and other services to the Seller, who accepts the assignment. The Buyer and Seller 1 hereby irrevocably instruct the creditors and intermediate creditors to make payments until the legal validity of the purchase agreement exists (presence of all private and public law certificates and permits, with the exception of the clearance certificate from the tax authorities) and until the full payment of the purchase price has been made. This assignment is no longer applicable when the full purchase price has been paid.

The Notary must show the assignments to the beneficiaries of the liens and ensure their compliance.

c) If the transfer of ownership is not completed in the Land Registry, Seller 1 can request that the ordered liens be cancelled free of charge for Seller 1 against refund of the purchase price / partial purchase price paid to him; this applies in particular if the Parties to the Agreement withdraw from the Agreement or the Agreement is not implemented due to other reasons.

2.  Seller 1 grants to the Buyer under the abovementioned conditions

**the authorization**

to agree for him on the assignment of mortgage rights for German credit and insurance institutions up to a maximum amount of 5 million Euros plus any interest and any associated costs, to subject the object of the purchase to the immediate foreclosure against the respective owner pursuant to Section 80 Code of Civil Procedure (Zivilprozessordnung – ZPO) and to approve the entry of the mortgage, together with all additional transactions.

This authorization is only valid if the provisions shown in Items 1 a) to c) in the mortgage certificate are agreed on.

The provisions and limitations of the authorization as well as the rules in Item 1 are not valid in regard to the Land Registry office.

The parties state that the encumbrance authorization must apply independently of the public law permits.

The authorization may only be exercised or revoked before the recording Notary or his

15

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16536

- 15 -

successor or official representative. They will be instructed by the appointer of the authorization with the assignment of mortgage rights based on this authorization which include the conditions and limitations under Items 1 a) to c) of this authorization in the assignment certificate.

--------------------------

## Part 2
## Purchase agreement for moveable assets

### Section 1
### Object of the purchase agreement

1.  Seller 1 sells to the accepting Buyer, with an effective date of June 1, 2010, 12:00 a.m. (**the closing date**), moveable assets of Debtor 1, insofar as they belong solely to Debtor 1 after settlement of existing lien interests pursuant to Section 3 Item 2 of this part of the Agreement. The sold assets are shown in the list attached to this Agreement as **Attachment A2.1.** **Attachment A2.1** is an essential part of this Agreement. All assets are at the Heilbronn location, Wannenäckerstr. 53, which are the property of Debtor 1, even if they are not included in the list, with the exception of the Mercedes-Benz, S-class car, which Seller 1 is selling separately.

    Any objection that the objects shown in the list are not there is waived.

### Section 2
### Purchase price

1.  The purchase price for the movable fixed assets pursuant to Section 1 of this part of the Agreement totals

    € 225,000.00

    plus sales tax in the amount required by law.

2.  The sales tax is due immediately upon signing of this Agreement and at the latest by the 5th of the calendar month, which follows the effective transfer date, and must be paid, without expense, into the insolvency trustee account, "Dr. Kießner – InsV Lavatec GmbH" at the Offenburg/Ortenau Savings Bank, BIC 664 500 50, Account No. 88 427 656.

    The obligation to pay sales tax can be satisfied by the Buyer in that he assigns to Seller 1 his

16

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16537

- 16 -

refund claims against the responsible tax authority, based on tax withholding. Seller 1 accepts the assignment. Section 10 in part 5 of this Agreement is applicable.

3. The remainder of the purchase price is due 14 days after signing this Agreement and must be paid, at no expense, into the escrow account set up specifically for this purpose by the Seller, "Lavatec GmbH – S-account for the sale of capital assets" at the Offenburg/Ortenau Savings Bank, BIC 664 500 50, Account No. 88 434 205.

The purchase price – net of sales tax – must be used by the Seller primarily and first to pay existing lien interests on the sold objects of the moveable fixed assets. He may transfer the remaining amount from the escrow account to the insolvency trustee account at the Offenburg/Ortenau Savings Bank BIC 664 500 50, Account No 88 427 565. The interest on the escrow account belongs to the Seller.

## Section 3
### Liability for defects

1. The Buyer is buying from Seller 1 in the insolvency proceedings. Seller 1 himself only has limited knowledge about the object of the purchase; his information is particularly based on information from employees of the Debtor. Seller 1 assumes no liability for the correctness or for the completeness of this information.

All of the listed and sold objects in the moveable fixed assets as shown in Section 1 of this Agreement have been used for many years and may also possibly be damaged. The Buyer is aware of them from having viewed them. Defects that are known should not be specifically listed. The Buyer is buying these objects in their current condition.

Seller 1 assumes no guarantees, especially not for the state or for the usefulness of the sold objects of the moveable fixed assets. The liability for material or legal defects is completely excluded, as long as the Seller is not legally liable and as long as it is not otherwise provided for in Section 8 Item 5 in the 5th part of this document. This exclusion of liability also applies to those defects that occur after conclusion of the Agreement and prior to transfer of risk. If Seller 1 must be held liable for defects, he has the right to eliminate the defect or to provide a defect-free object.

The purchase price is agreed on in particular considering the extensive exclusion of liability for defects.

2. The Buyer is aware that the sold objects of the moveable fixed assets are encumbered by lien rights of third parties. Seller 1 will cancel these rights after payment of the purchase price by using the money from the purchase price.

17

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16538

- 17 -

3.  The Buyer commits – if necessary – to dispose of the objects sold through this Agreement at his own costs. If, after signing this Agreement, third parties make claims against Seller 1 in connection with the disposal, the Buyer shall meet these requirements or shall extensively indemnify Seller 1, if he cannot meet the requirements. If Seller 1 meets the requirements to dispose of these objects anyway, the Buyer must reimburse Seller 1 for the costs incurred for this.

### Section 4
### Transfer of ownership

1.  The parties agree on the transfer of ownership of the sold objects of the moveable fixed assets pursuant to Section 1 in conjunction with Section 3 Item 2 of this part of the Agreement.

    For the purposes of the transfer, the parties agree that Seller 1 will transfer the sold objects of the moveable fixed assets under the hereby justified bailment on the **effective transfer date** on loan and in case the objects to be transferred should not be in the possession of Seller 1, a possible claim against the direct owner (third party) will be made, which the Buyer assumes.

    The Buyer will collect the objects located in Sarstedt within three months from the effective transfer date at his own costs.

2.  The transfer of ownership of the purchase property and the solicitous assignment of any restitution claims fall under the precedent condition of the payment of the entire purchase price from this Agreement in its full amount to the respectively indicated escrow accounts. If there are any liens or other interventions by third parties, the Buyer must immediately notify the Seller of this in writing, so that Seller 1 can file suit together with the Buyer. If the third party is unable to reimburse the Seller for the legal or extrajudicial costs of a suit, the Buyer will bear the costs for any failure that Seller 1 may incur.

3.  Seller 1 commits to release the liens he is entitled to if the Buyer requests this, if their realizable value exceeds the secured claims, to the extent these have not been paid.

4.  The abovementioned lien agreement according to Items 2-3 shall terminate automatically as soon as the entire purchase price of this Agreement has been transferred into the respective escrow accounts in time.

---------------------------

18

- 18 -

**Part 3**
**Purchase agreement covering objects in the inventory**

**Section 1**
**Object of the Purchase agreement**

1.  Seller 2 sells, effective June 1, 2010, at 12:00 a.m. **(effective transfer date)**, to this accepting Buyer, from the inventory of Debtor 2, raw materials, consumables and operating materials, unfinished and finished products and goods from the business operations of the Seller, provided that after repayment of existing lien interests pursuant to Section 3 Item 2 of this part of the Agreement, they remain solely the property of Debtor 2 and are located at Wannenäkerstr. 53, 74078 Heilbronn on the effective transfer date.

    All existing or future claims which Seller 2 is entitled to as of 05/31/2010, at 12 a.m., pursuant to the coexistence agreement in Section 2 in Part 5 of this Agreement, are not being sold.

    The condition of the sold inventory is shown in the list dated 02/10/2010, which was extracted from Seller 2's inventory management system. The list is attached to this Agreement as **Attachment A3.1. Attachment 3.1** contains the raw materials, consumables and operating materials in **Attachment A3.1a**, the half-finished machines in **Attachment A3.1b** and the old machines in **Attachment A3.1c**. The parties are aware of **Attachment A3.1** and they waive the reading of it. The Buyer waives any objection that this list is incorrect and objects are not there. The purchase price agreed on takes this into account.

**Section 2**
**Purchase price**

1.  The purchase price for the sold objects in the inventory according to Section 1 of this part of the Agreement totals

    **€ 1,084,543.00**

    including:
    - for the raw materials, consumables and operating materials      € 704,543.00
    - for the half-finished machines and old machines      € 380,000.00

    plus sales tax in the amount required by law.

2.  The sales tax is due immediately upon signing of this Agreement and at the latest by the 5th of the calendar month, which follows the effective transfer date, and must be paid, at no expense, into the insolvency trustee account, "Lavatec KG" at the Offenburg/Ortenau Savings Bank, BIC 664 500 50, Account No. 88 423 050.

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16540

- 19 -

The obligation to pay sales tax can be satisfied by the Buyer in that he assigns to Seller 2 his refund claims against the responsible tax authority, based on tax withholding. Seller 2 accepts the assignment. Section 10 in part 5 of this Agreement is applicable.

3.  The remaining purchase price is due as follows:

An amount totaling € 1,044,543.00 is due 14 days after the conclusion of the Agreement.

An amount totaling € 40,000.00 is due after the respective sale of the old machines, at the latest by October 1, 2010. The Buyer shall inform the Seller, without being asked, regarding the sale of the old machines and render account.

The respective amount must be paid, at no expense, into the specially set up escrow account for this purpose by the Seller, "Lavatec KG, S-account Sale of Inventory" at the Offenburgh/Ortenau Savings Bank, BIC 664 500 50, Account No. 88 434 065.

The purchase price – net sales tax – must be used by the Seller first primarily for the settlement of existing lien interests to the sold objects of the inventory. He can transfer the remaining amount to the insolvency trustee account, "Lavatec KG" at the Offenburg/Ortenau Savings Bank, BIC 664 500 50, Account No. 88 423 050. The interest for the escrow account belongs to the Seller.

## Section 3
## Liability for defects

1.  The Buyer is buying from Seller 2 in the insolvency proceedings. Seller 2 himself only has limited knowledge about the object of the purchase; his information is particularly based on information from employees of Debtor 2. Seller 2 assumes no liability for the correctness or for the completeness of this information.

The Buyer is aware of the sold objects of inventory that are included in Section 1 of this part of the Agreement from having viewed them. Known defects do not have to be listed separately. The Buyer is buying these objects in their current condition.

Seller 2 assumes no liability for the purchase objects being free of industrial property rights of third parties, such as, for example, brand rights, patents and designs, nor for them being subject to any prohibitions on their sale, processing or use or any other limitations. Should third parties make claims due to violations of industrial property rights, the Buyer is required to meet or defend these claims, at his discretion, and indemnify Seller 2 from any claims of third parties in this regard.

20

LT16541

- 20 -

Seller 2 points out to the Buyer, in particular, that the patent holder MEWA already prohibited a sale of the two half-finished large dryer machines with machine numbers 780.0106 and 760.0109, citing his patent claims.

Liability for material and legal defects is completely excluded, provided Seller 2 is not legally required to be liable and provided it is not regulated otherwise in Section 9 Item 5 in Part 5 of this document. Seller 2 assumes no guarantee, especially not for the nature or for the usefulness of the sold objects of the inventory. This exclusion of liability also applies to any defects that arise after conclusion of the Agreement and prior to transfer of risk. Neither the Buyer nor Seller 2 is aware of any public statements by Seller 2, the manufacturer or his agents, under the meaning of Section 434 (1) last sentence BGB, regarding certain properties of the objects in the inventory. Seller 2 hereby peremptorily revokes any statements to this effect and the Buyer states that any such statements have in no way influenced his purchase decision.

The Buyer is buying the objects of the inventory in the opened insolvency proceedings. Any possible right of recourse by the Buyer against Seller 2 pursuant to Section 478 BGB is excluded. This exclusion of liability has been sufficiently taken into account in the determination of the purchase price for the sold objects in the inventory; the Buyer has thus been granted equivalent compensation pursuant to Section 478 (4) sentence 1 BGB.

If Seller 2 is required to be liable for defects, it is his choice to either correct the defect or provide a defect-free product.

Seller 2 assigns all claims from third parties against him for liabilities for defects, especially for remedying defects or defect-related damages, with the precedent condition by the payment of the entire purchase price from this Agreement into the respective escrow account to the Buyer, who accepts the assignment. Seller 2, however, does not assume any liability for the Buyer being able to remain indemnified from the assigned liability claims.

The purchase price has been agreed on in particular in view of this extensive exclusion for liability for defects.

2.    The Buyer is aware that the sold objects are debited with third party liens. Seller 2 shall cancel these liens after payment of the purchase price by using the purchase price.

3.    The Buyer commits – if necessary – to dispose of the objects purchased through this Agreement at his own costs. If, after signing the agreement, third parties should make claims against Seller 2 in connection with the disposal, the Buyer shall fulfill these requirements and indemnify Seller 2, if fulfillment is not possible. If Seller 2 fulfills the requirement to dispose of these objects anyway, the Buyer must reimburse Seller 2 for the costs arising from this.

21

CONFIDENTIAL–ATTORNEYS EYES ONLY    LT16542

- 21 -

## Section 4
### Transfer of ownership

1.  The parties agree on the transfer of ownership of the sold objects from the inventory pursuant to Section 1 in conjunction with Section 3 Item 2 of this part of the Agreement, under the precondition of full payment of the entire purchase price from this Agreement. In case of garnishments or other claims by third parties, the Buyer must immediately notify Seller 2 of these in writing, so that Seller 2 can file suit together with the Buyer. If the third party is unable to reimburse Seller 2 for the legal or extrajudicial costs of a suit, the Buyer will bear the costs for any failure that Seller 1 may incur.

2.  The Buyer may only sell the reserved goods or process them in the ordinary course of business and as long as his financial situation is not sustainably worsened. He assigns to Seller 2 as of now all future claims in the amount of the final invoice with all ancillary rights, including sales tax, which should arise from the further sale against his customers or third parties, and independently of whether the reserved good are sold without or after processing, combining or mixing. The Buyer is empowered, as long as he complies with his payment obligations, to collect the assigned claims. The right to the claims is cancelled if there are any delayed payments from the Buyer or with significant deterioration of the Buyer's financial circumstances. In this case, the Seller is hereby empowered by the Buyer to inform the customers about the assignment and to collect the claims himself.

    For the enforcement of the assigned claims, the Buyer must communicate the necessary information, permit the review of this information and distribute the documents related to this. In particular, upon request, he must give to Seller 2 an exact listing of the claims owed to him, with the names and addresses of the customers, amounts of each of the claims, invoice dates, etc.

3.  If the reserved goods are combined, mixed or processed by the Buyer into new movable goods, this shall apply for Seller 2, without him being obligated in any way hereby. Through the combination, mixing or processing, the Buyer is not buying the ownership pursuant to Subsection 947 et seq. BGB of the new goods. By combining, mixing or processing with goods that do not belong to Seller 2, the Buyer is buying joint ownership of the new goods, according to the ratio of the invoice value of his reserved good to the total value.

4.  The Buyer shall store the reserved goods free of charge for Seller 2. He must insure them against the usual risks, such as, for example, fire, theft and water at the standard level. The Buyer hereby assigns his claims to damage, which he is entitled to from damages of the abovementioned kind against insurance companies or other obligated parties, to the Seller in the amount of the invoice value. Seller 2 accepts this assignment.

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16543

- 22 -

5.  Seller 2 commits to releasing the liens that he is entitled to upon request by the Buyer, as their realizable value exceeds the secured claims, unless they are paid, by more than 10%.

6.  Should Seller 2, in exercising his ownership retention right, take back the reserved good, then the only recourse is to rescind from the Agreement, if the Seller explicitly states this. Seller 2 may satisfy his claims by privately selling the reserved goods he took back.

7.  The above lien agreement pursuant to Items 1-5 automatically expires as soon as the entire purchase price in this Agreement has been transferred in time to the designated escrow account.

-----------------------------

## Part 4
## Purchase Agreement covering intangible rights

### Section 1
### Subject matter of the Purchase Agreement

1.  Seller 1 sells to the Buyer, with an effective date of June 1, 2010, at 12:00 a.m. (**the effective closing date**), the intangible property rights of the Seller's business, in particular the trade name, the know-how and the list of customers, and Buyer accepts same.

    Included in the sale are, as the case may be, existing intellectual property rights, e.g., trademarks, patents, drawings, plans and general business records; this is also true for not yet registered rights, e.g., intellectual property rights that have been applied for. The sale does not include the trademark "Dunnewolt." Seller 1 advises the Buyer that intellectual property rights were sold in connection with the closing of another purchase agreement and that no registered intellectual property rights are known at this time.

    Seller 1 further conveys to the Buyer software licenses to the extent these can be transferred by Seller 1 and such transfers are not blocked by the rights of third parties.

2.  Seller 2 sells to Buyer, with an effective date of June 1, 2010, at 12:00 a.m. (**the effective closing date**), the intangible rights of the Seller's business, in particular the know-how and the list of customers, and Buyer accepts same.

23

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16544

- 23 -

## Section 2
### Purchase Price

1. The purchase price for the intangible property rights pursuant to Section 1 Par. 1 of this part of the Agreement amounts to

€ 50,000.00

plus sales tax in the amount required by law.

The sales tax must be paid immediately after this Agreement is signed and no later than the 5th day of the calendar month following the Closing, without expense, to the insolvency trustee escrow account of Seller 1 at the Offenburg/Ortenau Savings Bank, BIC 664 500 50, Account No. 88 433 992.

The obligation to pay sales tax can be satisfied by the Buyer in that he assigns to Seller 1 his refund claims against the responsible tax authority, based on tax withholding. Seller 1 accepts the assignment. Section 10 in part 5 of this Agreement is applicable.

The remainder of the purchase price is due 14 days after the signing of this Agreement and must be paid, without cost, to the Insolvency Trustee escrow account of Seller 1 at the Offenburg/Ortenau Savings Bank, BIC 664 500 50, Account No. 88 433 992.

2. The purchase price for the intangible property rights pursuant to Section 1, Par. 2 of this part of the Agreement amounts to

€ 1.00

plus sales tax in the amount required by law.

The sales tax must be paid immediately after this Agreement is signed and no later than the 5th day of the calendar month following the Closing. The amount should be paid, without expense, to the escrow account of the Insolvency Trustee of Seller 2 at the Offenburg/Ortenau Savings Bank, BIC 664 500 50, Account No. 88 423 050.

The obligation to pay sales tax can be satisfied by the Buyer in that he assigns to Seller 1 his refund claims against the responsible tax authority, based on tax withholding. Seller 1 accepts the assignment. Section 10 in part 5 of this Agreement is applicable.

The remainder of the purchase price is due 14 days after the signing of this Agreement and must be paid, without cost, to the Insolvency Trustee escrow account of Seller 1 at the Offenburg/Ortenau Savings Bank, BIC 664 500 50, Account No. 88 423 050.

24

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16545

- 24 -

### Section 3
### Liability for Defects

1. The Buyer is buying from a Seller in an insolvency proceeding. The Seller himself has only limited knowledge about the object being sold. His information comes from employees of the Debtor. Seller assumes no liability of any kind for the accuracy and completeness of this information.

   The Buyer is aware of the objects of intangible property covered by Section 1 of this Agreement. Defects that have become known will not be listed separately. The Buyer is buying these intangible property rights "as is."

2. Following the Closing of this Agreement, Seller 1 will, upon the request of Buyer, try to change the trade name of Debtor 1. Seller 1 cannot guarantee that the change of trade name in the Commercial Register will become effective. Buyer assumes the responsibility to indemnify and pay to Seller 1 the expenses incurred by Seller 1, up to an amount of 5,000 Euros, particularly with respect to Schultze & Braun GmbH, a law firm and accounting firm, which has been retained by Seller 1 to effect and perfect the change of trade name.

   Seller 1 puts Buyer on notice that Debtor 1 does not have the exclusive right to the designation "Lavatec" because Lavatec, Inc., USA and Lavatec France also have the right to continue to use their respective trade names.

3. The Buyer is familiar with the registration status of the intellectual property rights governed by this Agreement.

   Seller 1 does not guarantee the issuance of patents that have already been applied for. Seller 1 also does not guarantee the continuing validity of issued patents or that the patents are free from unknown rights of prior use.

   Seller 1 also does not guarantee that no third party has a patent on the basis of which [the third party] can prohibit the Buyer from using the patents sold to him.

   The Buyer is aware that the patents require the continuing payment of annual fees pursuant to the respective national and/or European and/or international rules.

4. Any liability for defects in the intangible property sold in Section 1 of this Part of this Agreement is excluded to the extent that the respective Sellers are not legally obligated to assume such liability and to the extent that Section 9, Item 5 in Part 5 of this document does not

25

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16546

- 25 -

provide otherwise. The respective Seller does not give any guarantees especially with respect to the obtaining, maintenance and freedom from defects in the sold intangible properties. This exclusion from liability also applies to defects which arise after execution of this Agreement but before the transfer of risks. To the extent that the respective Sellers are required to assume liability for defects, each Seller has the option of correcting the defect or delivering a defect-free object.

5.   The Seller cannot guarantee that there are adequate licenses for the software or that these licenses can be assigned to the Buyer. The Seller cannot guarantee the suitability of the software as used heretofore nor its suitability for the Buyer's intended purpose.

The purchase price was agreed on after taking into account the broad exclusion of liability.


## Section 4
## Transfer of Ownership

1.   The parties are in agreement with respect to the assignment of each and every sold intangible property right named in Section 1 of this Part; they [the property rights] are hereby assigned to the Buyer , who accepts [these assignments].

The respective assignments of the sold intangible property rights are contingent upon payment of the full amount of all purchase prices in this Agreement into the respective escrow accounts.

2.   After receipt of all purchase prices pursuant to this Agreement, Seller 1 will countersign the forms filled out and signed by the Buyer, which are entitled "Application to rename Patents/applications for patents" (Form P3190 of the German Patent Office), with respect to the patents covered by this Agreement. These forms must be promptly submitted to the German Patent and Trademark Office with payment of the required fees, if necessary.


## Section 5
## Order Book

1.   Also included in the sale are the order book of the business of Debtor 2 as well as orders whose fulfillment has been started. The Buyer is obligated to fulfill all partly filled orders that are confirmed by the (temporary) insolvency trustee pursuant to the provisions of Section 2, paragraph 2 in Part 5 of this Agreement. All submitted orders that have not yet been confirmed as well as cancelled orders and orders with respect to which the Seller will declare or has declared non-fulfillment pursuant to Section 103 of the Insolvency Law are conveyed as business opportunities.

26

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16547

- 26 -

2.   The parties to this Agreement are aware that, to the extent that there are contractual agreements with third parties, the assignments may require the consent of the third parties in order to be enforceable. Seller 2 is not responsible; only business opportunities are being sold.

--------------------------

**Part 5**
**General rules and other agreements**

**Section 1**
**Employees**

1.   The Buyer is aware that all employment relationship from Seller 1 and Seller 2 have been terminated, and that these announced terminations possibly are invalid, considering Section 613a BGB, with the result that the terminated employment relationships, together with all existing rights and obligations, would transfer to the buyer beyond the termination deadline. Each seller therefore assumes no liability in regard to the buyer for transferred employment relationships. The buyer, for his part, expressly indemnifies the seller for any liability.

Seller 2 points out that the termination deadlines were extended for time and purpose limits until the end of the clearing activities.

The Seller points out to the Buyer that the following undischarged issues or labor court proceedings still exist:

-   Bettina Fischer (proceeding dormant)
-   Martin Knobloch (appeal at the Court of Appeal)

2.   Due to possible claims by the employees or third parties against the Buyer in regard to Section 613a BGB, each Seller assumes no liability in regard to the Buyer. The Buyer, for his part, indemnifies the Seller explicitly from any liability due to possible claims by the employees against the Buyer, but not from wages and salary claims for the time period before the effective transfer date.

3.   Since the opening of insolvency proceedings, the Seller has given the Buyer the opportunity to inform himself about the employment relationships and all the questions related to them at the Debtor's premises, and especially the chance to perform due diligence. Regarding the completeness of the information at the Debtor's premises on employees and employment relationships, as well as the validity of collective legal regulations, the Seller assumes no liability.

27

LT16548

- 27 -

## Section 2
## Limits of Legal Relationships

1.  Seller 2 shall wind up the business operation by the **effective closing date**, June 1, 2010, at his own expense and within the framework of the insolvency proceeding. Demands arising out of this continue to belong to Seller 2.

    The Buyer agrees that, with respect to all orders received by Seller 2 before and after applying for Insolvency, to the extent that Seller 2 cannot justifiably refuse to fill such orders and Buyer demands it, Seller will continue to fill such orders, as reflected in Seller's business records and Buyer will indemnify Seller for all claims asserted by third parties. The Buyer is entitled to the proceeds with respect to orders required to be filled by Buyer after the Closing on June 1, 2010 to the extent that the customers have not yet paid for their orders. Partial payments made by customers were taken into account during the negotiation of the purchase price for the inventory and. They stay with the Seller.

    At the time this Agreement was signed, orders for the programming of software updates had not been completely fulfilled. These orders are listed in **Attachment A 5.2.1** to this Agreement. The contracting parties are familiar with **Attachment A 5.2.1** and waive the reading [by the Notary] of this attachment.

2.  Each Seller is terminating, after the transfer of ownership, use and charges, unless otherwise specifically agreed on in this Agreement, all of the existing other service obligations, use obligations and other continuing obligations for the purchase object. He will inform each contractual party that they should contact the Buyer in regard to a possible new conclusion of these contracts.

    For the time period from the effective transfer date until the time when the termination goes into effect, the Buyer assumes the liabilities from the continuing obligations with the effect of discharging the Seller. The Buyer will transfer the amounts requested immediately after receiving a statement from each of the Sellers into the designated insolvency trustee account.

3.  Seller and Buyer have agreed on regulations for the delimitation of order backlogs, accounts receivable and other contracts. This delimitation may only be checked and imposed on the basis of the trade books and the inventory.

    The Buyer commits to guaranteeing the Seller the ability to look at any time at all documents related to all issues prior to the effective transfer date as well as all issues that are necessary for the questions that concern the delimitation of the receivables, delivery obligations and other obligations under this Agreement, so that the Buyer can make the necessary determinations himself or allow a person who has been assigned by him to do this

28

LT16549

- 28 -

so that the Buyer can make the necessary determinations himself or allow a person who has been assigned by him to do this.

4.  The Seller agrees with the Buyer that the latter shall retain all trade books, especially the personnel records that need to be retained, also including for the employees that he does not take over; accounting documents and other documents from the insolvency proceedings will, on the other hand, remain with the insolvency administrator. The trade books are not included in the sale, but the Buyer can use them for his own business purposes. If requested, the Buyer must give to the Seller the business books or parts of the business books. If the Seller does not request this, the Buyer shall retain all the Seller's trade books and business papers free of charge with the care that a proper businessman would apply.

    After the legal retention time has expired, but not before the insolvency proceedings are terminated, the Buyer is entitled and required to destroy these documents. The Seller is not required to take them back and/or to destroy them himself. The Buyer is, however, entitled to retain the business documents for a longer time, at his own costs. The Buyer may not charge a fee for this obligation.

5.  The Seller may need information or help from previous employees over the course of the insolvency proceedings, especially from the following employees: Baier, Jung, Muth, Erb, Clement, who may need to look at and create documents from the business documents retained by the Buyer. The Buyer commits to hiring previous or – if necessary – also new employees, at no charge, for a period of up to 300 hours per year to handle the requests for information by the Seller, at no charge (also for producing a reasonable number of photocopies, etc.), within a reasonable time.


### Section 3
### Interest for delays in payment

If the payment of the purchase prices in Part 1, Part 2, Part 3 and Part 4 of the Agreement, as well as in Section 2, is made on time, the amount will not be charged interest until its due date. The determining factor for the timely payment is the transfer of the amount due into the respective designated escrow account.

If the Buyer is late with the payment of the purchase price or part of the purchase price or the sales tax, in its entirety or partially, the still unpaid rest of the purchase price shall be charged interest from its due date until and including the day the payment is received in the designated account, at a rate of 8 percentage points per year above the base interest rate pursuant to Section 247 BGB. The right to claim further damages is not hereby excluded.

29

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16550

- 29 -

## Section 4
## Setoffs, Claims for Retention

The Buyer may only offset his own claims against claims by the Seller from this Agreement, regardless of the legal relationship, if the counterclaim is undisputed or the claim is legally enforceable and the Buyer is not in default himself for the duties or for the payments incumbent upon him. The same applies for the enforcement of the right to retention.

## Section 5
## Exclusion of Assignments

1.    Prior to full payment of all purchase prices in this Agreement, the Buyer may not, without the written consent of the Seller, exercise his rights and claims arising out of this Agreement, except as otherwise agreed with respect to particular matters.

2.    Prior to full payment of all purchase prices under this Agreement, the Buyer may not, without the written consent of the Seller, grant licenses with respect to the intellectual property covered by this Agreement.

## Section 6
## Posting of security

Posting of security is waived. The Buyer gave the Sellers a letter from the financing banks, in which they confirm that they agree to the financing plan on the basis of the information provided until then. The Buyer will give to the Sellers forthwith, at the latest by June 8, 2010, independently of the time of the post-approval, a binding financing confirmation from the financing banks.

## Section 7
## Rescission/Restoring the Status Quo

1.    The right of each party to rescind from the Agreement under the law of obligations is determined, unless this Agreement provides otherwise, on the basis of legal regulations.

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16551

- 30 -

2.  Seller 1 is granted the extraordinary right to rescind from the Agreement under the law of obligations if the Buyer does not pay the real estate transfer tax that is due.

The Sellers are granted the extraordinary right to rescind from each individual part of this Agreement, including successively and also in regard to individual objects and parts of objects, properties and buildings and rights, if the Buyer does not provide the binding confirmation of financing mentioned in Section 6 of this part of the Agreement by June 8, 2010.

If a permit needed for the validity or execution of the Agreement should not be granted without limitation, Seller 1 is entitled to rescind. The same applies with the exercise of a first right of refusal, whereby the party entitled to the first right of refusal shall not have his rights affected by this. Section 5 Item 9 in the first part of this document applies.

Without regard to the right to rescind, agreement pursuant to Section 8 of Part 1 of this Agreement has been explicitly declared.

3.  Any claims by the Buyer against the administrator or any of the Sellers in connection with rescission from the Agreement, any other kind of rescission or non-enforcement are limited to the reimbursement of any already paid purchase price. The reimbursement shall be made deducting amounts owed by the Buyer pursuant to Items 4 and 5. If, through this, an excess amount should be calculated in favor of the Seller, the Buyer must pay the Seller this amount. A deduction of costs for rescission from the Agreement shall not be done, provided the Seller alone is responsible for the non-enforcement or the rescission from this Agreement.

4.  In case of non-enforcement or rescission from the Agreement, including partial rescission, the Buyer must pay the following:

    a)  For the use of the property and the moveable fixed assets, a reasonable amount, which the respective Seller will determine, at his reasonable discretion, however, at least 10% per annum of the respective purchase price. The Buyer retains the right to prove that the reasonable amount of the compensation for use is much lower. The remuneration for use plus sales tax is due immediately upon invoicing and must be paid, at no expense, into the designated insolvency trustee escrow account.

    If circumstances triggering the rescission should occur, the Buyer must clear out and the moveable fixed assets immediately and return all existing keys, especially in regard to the buildings. All objects that have been transferred to ownership by the Seller, pursuant to Sections 93 and 94 BGB, remain his. Any furnishings owned by the Buyer which have not become significant components of the property may be removed by the Buyer after receipt of the statement of rescission. The Seller may demand a reasonable amount for the temporary wear and tear against payment of the amount needed to produce new furnishings, which the Buyer may leave as furnishings in the property.

31

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16552

- 31 -

Further use of the property as well as the moveable fixed assets after the circumstances occur that trigger the rescission is only permitted after explicit advance agreement by the Seller in writing.

b) Remuneration for the use of inventories. For this, after the circumstances triggering the rescission take place, the Buyer must immediately draw up an inventory, at his own costs, which the Seller may participate in with no limitations, and which the Seller may review, at his own costs. The difference determined in the inventory is considered to be removals by the Buyer, pursuant to Section 1 in the 3rd part of this Agreement. The valuation of the used objects shall be done by Seller 2 at his reasonable discretion; the Buyer has rights pursuant to Section 315 (3) BGB. The payment plus sales tax is due immediately upon invoicing and, at no expense, must be paid into the designated insolvency trustee escrow account.

When the circumstances triggering the rescission take place, the Buyer must give back the unused inventories forthwith.

Any further use of inventories after the circumstances triggering the rescission take place is only permitted with explicit advance agreement by the Seller in writing.

c) The costs to be borne by the Buyer pursuant to Section 8 of this part of the Agreement as well as the costs for rescission from the Agreement itself.

5. The Buyer is also liable, in case of complete or partial non-enforcement or complete or partial rescission from this Agreement, to the Sellers as joint creditors for a lump sum compensation of €50,000.00. This does not apply if a Seller is responsible for the non-enforcement or the rescission alone. The respective Seller is entitled to any further claims.

**Section 8**
**Costs**

The costs for this Agreement, its enforcement, the costs for the transfer of the objects sold as well as the costs for the justification and transfer of the rights sold, the costs for any permits from authorities, the real estate transfer tax, as well as all the costs incurred in connection with the cancellation or release from lien for charges assumed and limitations shall be borne by the Buyer.

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16553

- 32 -

## Section 9
### Limitation of Liability, Statute of Limitations

1. In the case of slightly negligent violations, the liability of the Seller shall be limited to foreseeable, customary, direct damage. This also applies to slightly negligent violations by legal representatives and assistants. However, the Seller shall not be liable for slightly negligent violations of unimportant obligations under this Agreement.

2. Except for rescission in the case of a serious liability of the Seller for defects, the Buyer may rescind this Agreement only for breaches of the Agreement.

   If the Buyer rescinds this Agreement, the Buyer has no right to also assert claims for damages.

3. Seller's liability to the Buyer is limited to the amount of the purchase price, regardless of the legal basis for the Buyer's claim.

4. Deficiencies in title are governed by a statute of limitations of 12 months. Claims for defects are also governed by a statute of limitations of 12 months. These statutes of limitations do not apply if the law pursuant to Section 438 (1) no. 2 BGB (Construction and building materials) and Section 479 BGB (Rights of recourse) provides for longer statutes of limitations, as well as in case of fraudulent concealment of a defect. The legal regulations on the start, suspension and resumption of the statutes of limitations remain unaffected. Negotiations between the Seller and the Buyer on the claims asserted by the Buyer or the facts on which his claims are based do not suspend the statute of limitations, unless the negotiations are done shortly before the end of the statute of limitations.

5. The foregoing limitations of liability do not apply if the Seller is charged with intentional misconduct or gross negligence. They also do not apply to injuries with respect to life, bodily injury or injury to health or in the case of willful failure to disclose a defect. They also do not apply to product liability claims of the Buyer.

## Section 10
### Sales tax, Assignment of tax refund claim

1. The parties to the Agreement agree that the Buyer may fulfill his obligation to pay the sales tax

33

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16554

- 33 -

in that he assigns to the respective Seller his refund claims against the responsible tax authority, based on tax withholding. The Seller accepts the assignment.

2. Each Seller shall send to the Buyer an invoice for the tax refund claims he is entitled to. The parties to the Agreement shall undertake the abovementioned assignment according to the formulas provided for this by the responsible tax office. The parties to the Agreement agree to request withholding the sales tax and commit to providing the relevant explanation for this. Should the responsible tax office, contrary to the expectations for the sales tax refund claim by the Buyer, offset these against other tax charges or, for reasons of a repayment of tax liabilities of the Seller from this Purchase Agreement, consider them to be invalid, the Buyer commits to transferring the amount of the legal sales tax immediately to the respective designated insolvency trustee escrow account.

## Section 11
## Submission to enforcement

1. The Buyer submits, based on the received payment obligations pursuant to Section 3 Item 1 of the first part, as well as the purchase prices agreed on in Section 2 of Part 2, Part 3 and Part 4 of this document and interest on arrears in the amount of 8 percentage points above the base interest rate pursuant to Section 247 BGB annually to the respective Seller against the immediate compulsory enforcement from this document in his entire assets. In order to satisfy the determination requirement of the enforcement proceedings, the interest is considered to be due one month from today's certification.

2. The Notary executing this document is unanimously instructed to give to the Seller any time after the due date an enforceable copy of this document. For this, the statement of the maturity of the establishing facts is sufficient; a reversal of the burden of proof is not implied with this.

## Section 12
## General

1. In case of disputes between the parties relating to this Agreement and its implementation, the court in Karlsruhe shall have sole jurisdiction. The Seller is also entitled to sue the Buyer in a court having jurisdiction over the Buyer.

2. Additions or amendments to this Agreement must be in writing; this also applies to a change in the clause requiring such writing. To the extent that

34

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16555

- 34 -

notarial certification is required, any amendment must meet such requirement.

3.   If individual parts of this agreement are or become ineffective or void or if it turns out that there is a gap in this Agreement which should have been corrected to carry out the intention of the contracting parties, the existing effective portion of this Agreement shall in any event continue to be valid. Provisions that are ineffective or void shall be replaced by an agreement between the parties that is as close as possible commercially to the ineffective or void provision. Until such an agreement is reached, the gap will be filled by supplemental construction of this Agreement.

4.   Without impairing the retroactive effect of approvals of this Agreement required by the Seller, the parties agree that the due dates required by this Agreement that are tied to the date on which the agreement was executed only begin to run when the Notary-certified approvals are received by the Document Notary and the Buyer is duly notified by this Notary.

### Section 13
### Attachments

The following are attachments to this Agreement:

**Attachment A1.1**
Extract from real estate register dated May 25, 2010;

**Attachment A1.5.2**
Notarized copy of the purchase document form May 26, 2010
(including the expert opinion of Klöters & Partner dated September 23, 2009);

**Attachment A2.1**
List of sold Items of moveable fixed assets;

**Attachment A3.1**
List of sold object in the inventory;

**Attachment A5.2.1**
List of orders.

Since **Attachments A1.1, A2.1, A3.1 and A5.2.1** deal with current lists of real estate, objects, rights and legal relationships, a reading of the attachments is waived pursuant to section 14 of the Certification Law.

It is confirmed, pursuant to Section 14, (3) of the Certification Law, that the named attachments were submitted for review and each attachment was signed. Where the attachments consisted of several pages, the additional pages were initialed.

35

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16556

- 35 -

**Section 14**
**Conclusion**

1. The following is requested, if necessary also in part, for:

   a) Land Registry of Heilbronn – copy for notification of enforcement – first just extracts' without conveyance, after notification of complete payment;

   b) For each party, a notarized copy,

      a simple copy for Schultze & Braun GmbH Law Firm/Auditing Firm, Eisenbahnstr. 19-23, 77855 Achern, Attn.: Judith Franz, Esq., AZ: 30480-10;

   c) All other necessary copies and transcripts, including partial excerpts, based on the notary's judgment.

2. For notification of enforcement, the Notary is also asked to [send] to Schultze & Braun GmbH Law Firm/Auditing Firm, Eisenbahnstr. 19-23, 77855 Achern, Attn.: Judith Franz, Esq., AZ: 30480-10.

3. The Certifier instructed the parties to the Agreement on the legal meaning of their statements and noted the following in particular:

   a) The property shall transfer to the Buyer only transfer in the Land Registry. The transfer is only possible once the conveyance is declared as well as the negative evidence pursuant to Section 28 (1) Federal Building Code (Baugesetzbuch – BauGB) and certificate of good standing from the tax office for the real estate transfer tax are available.

   b) Ancillary agreements are subject to notarization and non-observance of this can lead to invalidity of the Agreement. In this case, provisional entry does not imply security. Therefore, the amount of the purchase price in particular and all other quid pro quo must be communicated completely and correctly.

   c) The object of the Agreement is liable for registered charges and arrears on taxes and duties, whereby the Seller warrants that there are no arrears. The parties are jointly liable for costs and taxes. Certain legal relationships (e.g. Subsection 95 et seqq. VVG, Subsection 566 et seqq. BGB) transfer to the Buyer by operation of law.

   d) If the transfer of ownership should take place prior to complete payment of the purchase price or the payment price or parts thereof without sufficient real guarantees by the Buyer, this could possibly imply an uninsured advance provision of a part of the Agreement.

36

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16557

- 36 -

e)  It is not the duty of the Notary to advise or instruct the parties in taxation.

5.    Processing power of attorney

All the parties hereby grant to the employees of Notary Dr. Rolf Gaupp, namely the following women:

Ms. Carmen Grösser, Ms. Ilse Klöss, Ms. Anny Müller
Ms. Petra Schäfer, Ms. Gabriele Walter                          - each individually –

power of attorney separate from the legal validity of today's Agreement to represent them in the supply and receipt of additional statements and statements that may cause adjustments and that give rise to rights and, in general, to do everything necessary for the complete execution or for the purposes of the Agreement.

The power of attorney is transferable and expires only upon death. Exemption from the limitations of Section 181 BGB is granted.

Only Notary Dr. Gaupp or his respective official representative may use this power of attorney. The powers of attorney do not constitute an obligation to act.

This transcript was read to the persons present by the Certifier, approved by the persons present and signed as follows by them and by the Certifier:

[Signature] Patric Naumann

[Signature] Wolf-Peter Graeser

[Signature] Dr. Gaupp , Notary

[Round stamp]
DR. ROLF GAUPP
NOTARY IN HEILBRONN

37

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16558

## CONFIRMATION OF REPRESENTATION

Based on a review today of the electronically maintained Commercial Register of the district court of Stuttgart, I confirm that:

A.    The Company with limited liability, which is registered in the Commercial Register of the District Court of Stuttgart under HRB 724988 under the trade name

     *Lavatec Laundry Technology GmbH*
     with its main office in Heilbronn
     (Wannenäckerstrasse 53, 74078 Heilbronn)

     is represented by its manager who is its sole representative und who  is not subject to the restrictions of Section 181 of the Civil Code,

     Mr. Wolf-Peter **Graeser**,
     born on September 12, 1957 in Flein

B.    And that the right of representation in subparagraph A has remained unchanged since March 3, 2010.

                                          Heilbronn, May 26, 2010

[Round stamp]
DR. ROLF GAUPP
NOTARY IN HEILBRONN

                                         (s) Dr. Gaupp, Notary

38

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16559

Urkundenrolle Nr.  *9д4*  /2010



# VERHANDELT

zu 74072 Heilbronn                    am          26. Mai 2010

(I.W. sechsundzwanzigsten Mai zweitausendundzehn)

### Vor mir, dem unterzeichnenden Notar

## DR. ROLF GAUPP

### 74072 Heilbronn, Uhlandstr. 21

erscheinen heute in den Kanzleiräumen:

P000001

CONFIDENTIAL- ATTORNEY'S EYES ONLY

CONFIDENTIAL–ATTORNEYS EYES ONLY                                      LT16560

- 2 -

1.  Herr **Rechtsanwalt Patric Naumann**, geboren am 03.03.1971,
    geschäftsansässig in 68161 Mannheim, N 7,11

    - ausgewiesen durch Personalausweis -

    mit der Erklärung, nicht in eigenem Namen zu handeln, sondern jeweils als Vertreter
    ohne Vertretungsmacht für

    1. 1.  Herrn Rechtsanwalt Dr. Ferdinand Kießner,
           geschäftsansässig Eisenbahnstr. 19 – 23, 77855 Achern,
           in seiner Eigenschaft als Insolvenzverwalter im Insolvenzverfahren über
           das Vermögen der Firma
           **LAVATEC GmbH**

           - im Folgenden Verkäufer **1** genannt -

    1. 2.  Herrn Rechtsanwalt Holger Blümle,
           geschäftsansässig Kriegsstr. 113, 76135 Karlsruhe,
           in seiner Eigenschaft als Insolvenzverwalter im Insolvenzverfahren über
           das Vermögen der Firma
           **LAVATEC WÄSCHEREI-MASCHINEN GmbH & Co KG**

           - im Folgenden Verkäufer **2** genannt -

    - im Folgenden gemeinsam auch "**Verkäufer**" genannt –

    ohne Übernahme der Haftung des Anwesenden für die Beibringung der notariell be-
    glaubigten Genehmigungserklärungen der Vertretenen. Die Genehmigungserklä-
    rungen gelten mit Eingang beim Urkundsnotar allen Beteiligten als zugegangen und
    somit wirksam.

2.  Herr Wolf-Peter Graeser, geboren am 12.09.1957,
    geschäftsansässig in 74078 Heilbronn, Wannenäckerstraße 53

    - persönlich bekannt -

    mit der Erklärung, nachfolgend zu handeln für die Gesellschaft mit beschränkter
    Haftung unter der Firma

    **Lavatec Laundry Technology GmbH** mit dem Sitz in Heilbronn
    Wannenäckerstraße 53, 74078 Heilbronn
    (eingetragen im Handelsregister des Amtsgerichts Stuttgart zu HRB 724988)

           - im folgenden auch "**Käufer**" genannt-

    *Vertretungsbescheinigung erfolgt in gesonderter Urkunde*

**CONFIDENTIAL- ATTORNEY'S EYES ONLY**

CONFIDENTIAL–ATTORNEYS EYES ONLY

P000002

LT16561

- 3 -

Die Frage des Beurkundenden nach einer Vorbefassung im Sinne von § 3 Abs. 1 Nr. 7 des Beurkundungsgesetzes wurde verneint.

Die Anwesenden erklären zur öffentlichen Beurkundung folgenden Kaufvertrag:

**Vorbemerkung:**

I.

1.  Das Amtsgericht Heilbronn -Insolvenzgericht- Az.: 12 IN 321/09 hat mit Beschluss vom 08. 06. 2009 Herrn Rechtsanwalt Dr. Ferdinand Kießner zum vorläufigen Insolvenzverwalter über das Vermögen der **LAVATEC GmbH**, nachfolgend auch **Schuldnerin 1** genannt, bestellt.

    Durch Beschluss des Amtsgerichts Heilbronn -Insolvenzgericht- vom 01. 09. 2009 ist das Insolvenzverfahren eröffnet und Herr Rechtsanwalt Dr. Ferdinand Kießner zum Insolvenzverwalter über das Vermögen der **Schuldnerin 1** bestellt worden.

2.  Die Schuldnerin 1 ist Holding des LAVATEC-Konzerns.

II.

1.  Das Amtsgericht Heilbronn -Insolvenzgericht- Az.: 14 IN 276/09 hat mit Beschluss vom 07. 05. 2009 Herrn Rechtsanwalt Thomas Kind zum vorläufigen Insolvenzverwalter über das Vermögen der **LAVATEC WÄSCHEREI-MASCHINEN GmbH & Co. KG**, nachfolgend auch **Schuldnerin 2** genannt, bestellt.

    Durch Beschluss des Amtsgerichts Heilbronn -Insolvenzgericht- vom 01. 06. 2009 ist das Insolvenzverfahren eröffnet und Herr Rechtsanwalt Thomas Kind zum Insolvenzverwalter über das Vermögen der **Schuldnerin 2** bestellt worden.

    Mit Beschluss des Amtsgerichts Heilbronn vom 29. 04. 2010 wurde Herr Rechtsanwalt Holger Blümle zum Insolvenzverwalter bestellt.

2.  Die Schuldnerin 2 befasst sich mit der Entwicklung, der Produktion, dem Vertrieb und der Wartung kompletter Waschstraßen für Großbetriebe.

    Der Geschäftsbetrieb ist seit Juni 2009 eingestellt.

**CONFIDENTIAL- ATTORNEY'S EYES ONLY**

CONFIDENTIAL–ATTORNEYS EYES ONLY

P000003

LT16562

- 4 -

3.  Die Verkäufer werden mit der nachfolgenden Gesamtvereinbarung, bestehend aus
    vier Verträgen, die jeweils rechtlich selbständig sind, wirtschaftlich aber zusam-
    menhängen und deshalb in einer Gesamtvereinbarung zusammengefasst werden,
    an den Käufer veräußem:

    a)  im 1. Teil dieses Vertrages der Verkäufer 1
        das Betriebsgrundstück der Schuldnerin 1 in Heilbronn;

    b)  im 2. Teil dieses Vertrages der Verkäufer 1
        Gegenstände des beweglichen Anlagevermögens der Schuldnerin 1, wie
        dort näher beschrieben;

    c)  im 3. Teil dieses Vertrages der Verkäufer 2
        aus dem Vorratsvermögen der Schuldnerin 2 Roh-, Hilfs- und Betriebsstof-
        fe, unfertige und fertige Erzeugnisse und Waren;

    d)  im 4. Teil dieses Vertrages Verkäufer 1 und Verkäufer 2
        immaterielle Vermögenswerte, wie die Firma, das Know-how und den Kun-
        denstamm.

4.  Daran sich anschließend regelt der 5. Teil dieses Vertrages gemeinsame Vor-
    schriften und sonstige Vereinbarungen.


### 1. Teil
### Grundstückskaufvertrag

### § 1
### Grundbuchstand


1.  Die Schuldnerin 1 ist noch unter ihrer früheren Firma Lavatec AG beim Grund-
    buchamt Heilbronn im Grundbuch von Heilbronn Blatt 28216 in der ersten Abtei-
    lung eingetragen als Eigentümer folgender Grundstücke:

    - lfd. Nr. 1:
    Flurstück Nr. 6000/17          Wannenäckerstr. 53
                                   Gebäude- und Freifläche      mit 15.900 qm.

    - lfd. Nr. 3:
    Flurstück Nr. 6000/21          Wannenäckerstr.,
                                   Gebäude- und Freifläche      mit 3.204 qm.

    Die Grundstücke sind mit einer Produktionshalle und einem Verwaltungskomplex
    bebaut.

CONFIDENTIAL- ATTORNEY'S EYES ONLY

CONFIDENTIAL–ATTORNEYS EYES ONLY

P000004

LT16563

- 5 -

2.   Der Grundbesitz ist wie folgt belastet:

    a)   In der zweiten Abteilung:

        lfd. Ziff. 1, nur lastend auf früherem Flurstück 6000/17 mit 10.000qm:
        beschränkte persönliche Dienstbarkeit für die Stadt Heilbronn betreffend
        Bau- und Benützungsbeschränkung. Gewerbegebietsbeschränkung und
        Verbot für Verbrauchermarktnutzung. Eingetragen am 24. Februar 1987;

        lfd. Ziff. 3, nur lastend auf früherem Flurstück 6000/15 mit 5.900 qm:
        beschränkte persönliche Dienstbarkeit für die Stadt Heilbronn betreffend
        Bau- und Benützungsbeschränkung. Gewerbegebietsbeschränkung und
        Verbot für Verbrauchermarktnutzung. Eingetragen am 27. 04. 1992;

        lfd. Ziff. 6:
        beschränkte persönliche Dienstbarkeit für die Stadt Heilbronn betreffend
        Bau- und Benützungsbeschränkung (keine Spielhallen und ähnliche Unter-
        nehmen, Gaststätten und Vergnügungsstätten, Handelsbetriebe). Eingetra-
        gen am 21. 06. 1994;

        lfd. Ziff. 7:
        Es ist vorläufige Insolvenzverwaltung angeordnet. Verfügungen der
        Schuldnerin über Gegenstände ihres Vermögens sind nur mit Zustimmung
        des vorläufigen Insolvenzverwalters wirksam, §§ 21, 22 InsO. Eingetragen
        am 17. 06. 2009;

        Lfd. Ziff. 8:
        Dem Eigentümer ist ein allgemeines Verfügungsverbot auferlegt. Eingetra-
        gen am 15. 07. 2009;

        lfd. Ziff. 9:
        Insolvenzvermerk, eingetragen am 03. 09. 2009.

    b)   In der dritten Abteilung:

        Hinsichtlich der Belastungen in der dritten Abteilung wird auf den Grund-
        buchauszug in **Anlage A1.1** Bezug genommen.

3.   Der beurkundende Notar hat den Grundbuchstand festgestellt.

CONFIDENTIAL- ATTORNEY'S EYES ONLY

P000005

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16564

- 6 -

### § 2
### Kaufgegenstand

Der Verkäufer 1 verkauft hiermit den in § 1 näher bezeichneten Grundbesitz, nämlich Flurstück Nr. 6000/17 mit 15.900 qm, sowie Flurstück Nr. 6000/21 mit 3.204 qm einschließlich der aufstehenden Gebäulichkeiten mit allen wesentlichen Bestandteilen an den Käufer zu Alleineigentum.

### § 3
### Kaufpreis, Fälligkeit

1. Der Kaufpreis beträgt für den bebauten Grundbesitz insgesamt

€ 4.000.000,00
(in Worten: EURO vier Millionen).

Auf Grund und Boden entfallen hierbei     € 750.000,00;
auf die aufstehenden Gebäulichkeiten     € 3.250.000,00.

Der Verkäufer erklärt hiermit, nach § 9 Abs. 1 UStG auf die Steuerbefreiung des Umsatzes zu verzichten.

Der Käufer versichert, dass er als Erwerber Unternehmer im Sinne des § 2 Abs. 1 UStG ist und den kaufgegenständlichen Grundbesitz zu unternehmerischen Zwecken im Sinne des § 9 Abs. 1 UStG verwendet. Für den Fall, dass der Käufer kein solcher Unternehmer ist oder seine Unternehmereigenschaft verliert und/oder den kaufgegenständlichen Grundbesitz entgegen seiner Versicherung nicht zu solchen unternehmerischen Zwecken verwendet, haftet der Käufer dem Verkäufer für sämtliche dem Verkäufer entstehenden Schäden und stellt den Verkäufer umfänglich frei.

2. Nach § 13 b Abs. 2 UStG schuldet der Käufer die Umsatzsteuer und führt sie ab.

3. Der Kaufpreis ist fällig innerhalb von 7 Tagen nach Zugang einer schriftlichen Mitteilung des Notars per Einschreiben/Rückschein an den Käufer an die eingangs benannte Anschrift (Kontogutschrift), in welchem dieser mitteilt, dass

   a) die zu Gunsten des Käufers bewilligte Eigentumsvormerkung im Grundbuch eingetragen ist, bzw. die Eintragung infolge Zahlungsverzuges des Käufers hinsichtlich eines durch das Grundbuchamt angeforderten Kostenvorschusses abgelehnt wurde;

   b) dem Notar die erforderlichen Lastenfreistellungsunterlagen oder eine Bestätigung des Gläubigers vorliegt, dass das zu übernehmende Grundpfand-

CONFIDENTIAL- ATTORNEY'S EYES ONLY

CONFIDENTIAL–ATTORNEYS EYES ONLY

- 7 -

recht – ggf. nach Zahlung eines Betrages aus dem Kaufpreis – nicht mehr für Verbindlichkeiten des Verkäufers haftet und zwar für alle vor oder mit der Vormerkung eingetragenen Belastungen, die der Käufer nicht zu übernehmen hat. Diese dürfen nur unter solchen Zahlungsauflagen erteilt sein, die aus dem Kaufpreis erfüllbar sind. Der Notar wird allseits bevollmächtigt, die Unterlagen zur Lastenfreistellung oder zur Bestätigung anzufordern, für alle am Vertrag und der Kaufpreisfinanzierung Beteiligten auch gemäß § 875 Abs. 2 BGB entgegenzunehmen und zu verwenden.

Der Kaufpreis ist bei Fälligkeit kostenfrei einzuzahlen auf das vom Verkäufer hierfür gesondert eingerichtete Treuhandanderkonto "Lavatec GmbH – Skto Verkauf Immobilie" bei der Sparkasse Offenburg/Ortenau, BLZ 664 500 50 Konto-Nr. 88 433 992. Die Zinsen für das Treuhandanderkonto stehen dem Verkäufer zu. Der Verkäufer 1 macht gegenüber dem Käufer keine Kosten und Gebühren aus dem Führen eines Treuhandkontos geltend.

3.   Der Verkäufer 1 kann über den Betrag des Treuhandanderkontos erst nach Vorliegen sämtlicher für die Rechtswirksamkeit des Vertrages ggf. erforderlicher privatrechtlicher und/oder öffentlich-rechtlicher Genehmigungen und Bescheinigungen verfügen. Der Notar wird beauftragt, dem Käufer und dem Verkäufer das Vorliegen sämtlicher dergestalt erforderlicher Genehmigungen und Bescheinigungen schnellstmöglich mitzuteilen.

Der Kaufpreis ist vom Verkäufer vorrangig zunächst zur Tilgung der mit den Grundschulden gesicherten persönlichen Verbindlichkeiten zu verwenden. Den überschießenden Betrag kann er vom Treuhandanderkonto auf das Insolvenzverwalteranderkonto "Dr. Kießner – InsV Lavatec GmbH" bei der Sparkasse Offenburg/Ortenau, BLZ 664 500 50, Konto-Nr. 88 42 7656 überweisen.

### § 4
### Übergang von Besitz, Nutzungen und Lasten

1.   Besitz und Nutzungen, die Gefahr, öffentliche und private Lasten einschließlich aller Verpflichtungen aus den den Kaufgegenstand betreffenden Versicherungen gehen am 01. Juni 2010, 0.00 auf den Käufer über.

Der Käufer räumt dem Verkäufer 1 und dem Verkäufer 2 für den Zeitraum von 2 Jahren ab dem Übergabestichtag das unentgeltliche Nutzungsrecht an dem kleinen Sitzungszimmer im Vorstandsbereich im Verwaltungsgebäude für Abwicklungstätigkeiten ein.

2.   Der Notar hat darauf hingewiesen, dass die Verkehrssicherungspflicht erst mit Umschreibung des Eigentums im Grundbuch auf den Käufer übergeht. Der Käufer verpflichtet sich deshalb, die Verkehrssicherungspflicht bereits ab dem 01. Juni 2010 wahrzunehmen. Der Käufer stellt den Verkäufer 1 von jeglicher Verantwortung und Haftung gegenüber Dritten bezüglich der Verkehrssicherungspflicht ab dem 01. Juni 2010 frei.

CONFIDENTIAL- ATTORNEY'S EYES ONLY

CONFIDENTIAL–ATTORNEYS EYES ONLY

P000007

LT16566

- 8 -

3. Bestehende Sach- und Betriebshaftpflichtversicherungen, insbesondere auch eine etwaige Brandversicherung, gehen gemäß §§ 95 ff VVG auf den Käufer über, sofern sie nicht innerhalb eines Monats nach Eigentumsumschreibung gekündigt. Mit Eintragung des Eigentumswechsels werden dem Käufer alle versicherungsrechtlichen Ansprüche des Verkäufers 1 bezüglich des Kaufgegenstands abgetreten. Der Käufer nimmt die Abtretung an. Der Käufer wurde darauf hingewiesen, dass der Versicherungsschutz erlöschen kann, wenn die Anzeige der Veräußerung nicht unverzüglich erfolgt, was der Käufer selbst erledigen wird.

Ab dem 01. Juni 2010 trifft den Käufer auch die Pflicht zur Prämienzahlung und zur Anzeige an den Versicherer. Der Käufer stellt den Verkäufer insoweit von allen künftigen Ansprüchen der Versicherung frei. Soweit der Verkäufer bereits Prämien geleistet hat, die nach der vorstehenden Regelung der Käufer zu tragen hat, steht dem Verkäufer insoweit ein Erstattungsanspruch zu. Sofern der Käufer von seinem Kündigungsrecht Gebrauch macht, gelten diese Regelungen entsprechend für Prämienforderungen der Versicherung, die den Zeitraum ab der Fälligkeit des Kaufpreises, spätestens bei Besitzübergang betreffen.

4. Der Verkäufer 1 kündigt, soweit in diesem Vertrag nicht anderslautend vereinbart, sämtliche für den Kaufgegenstand bestehenden sonstigen Dauerschuldverhältnisse. Er wird den jeweiligen Vertragspartner zur Kenntnis bringen, dass sie sich wegen eines ggf. Neuabschlusses von entsprechenden Verträgen mit dem Käufer in Verbindung setzen sollten.

5. Öffentlich-rechtliche Erschließungs- und Anliegerkosten (Beiträge) und sonstige öffentliche Lasten (Gebühren) des Kaufgegenstandes wie auch Vermessungskosten einschließlich der Kosten der Übernahme der Ergebnisse in das Liegenschaftskataster, die nach dem Tag der Beurkundung entstehen oder fällig werden, trägt der Käufer, insbesondere auch solche, zu denen der Verkäufer ab heute bis zur Eigentumsumschreibung durch Zustellung von Beitragsbescheiden oder Kostennoten herangezogen werden sollte, auch soweit die abzurechnenden Maßnahmen heute bereits bautechnisch begonnen sein sollten; Grundsteuer und Grundsteuerrückstände trägt der Käufer. Der Käufer stellt den Verkäufer wegen solcher Zahlungspflichten frei. Soweit der Verkäufer 1 für das Jahr 2010 bereits Zahlungen geleistet hat, die nach der vorstehenden Regelung der Käufer zu tragen hat, steht dem Verkäufer 1 insoweit ein Erstattungsanspruch gegen den Käufer zu.

## § 5
## Mängelhaftung

1. Der Käufer erwirbt vom Verkäufer 1 im Insolvenzverfahren. Der Verkäufer 1 hat selbst nur eine eingeschränkte Kenntnis vom Kaufgegenstand, seine Informationen beruhen insbesondere auf Angaben von Mitarbeitern der Schuldnerin 2. Der Verkäufer 1 übernimmt keinerlei Haftung für die Richtigkeit noch für die Vollständigkeit dieser Angaben.

**CONFIDENTIAL- ATTORNEY'S EYES ONLY**

CONFIDENTIAL–ATTORNEYS EYES ONLY

P000008

LT16567

- 9 -

2.   Der Käufer hat sich persönlich vom Zustand des Grundbesitzes und des Gebäudes und des Zubehörs insgesamt überzeugt.

Der Verkäufer 1 hat den Käufer insbesondere auf Folgendes hingewiesen:

- Es gibt eine Lackieranlage, eine Trocknungsanlage und ein Säurebad. Es ist darauf zu achten, dass keine Säure ausläuft.

Der Käufer verzichtet darauf, die ihm bekannt gewordenen Mängel in dieser Urkunde genau aufzulisten. Dem Verkäufer sind aus seiner Abwicklungstätigkeit keine Mängel bekannt geworden.

Der Käufer erwirbt den Kaufgegenstand in seinem derzeitigen langjährig gebrauchten Zustand. Der Verkäufer übernimmt keinerlei Garantien, insbesondere nicht für die Beschaffenheit noch für die Nutzbarkeit des verkauften Grundbesitzes und der aufstehenden Gebäulichkeiten und des Zubehörs.

Zum Zustand des Gebäudes liegt ein Sachverständigengutachten Klöters & Partner vom 23.09.2009 vor, welches Gegenstand einer gesonderten notariell beurkundeten Bezugsurkunde vom heutigen Tage ist (URNr. 923 / 2010 des Notars Dr. Gaupp in Heilbronn). Sämtliche Beteiligten genehmigen hiermit die in der Bezugsurkunde für sie abgegebenen Erklärungen und machen die Urkunde rückwirkend wirksam.

Die Bezugsurkunde liegt in Urschrift vor. Ihr Inhalt ist allen Beteiligten bekannt. Auf diese Bezugsurkunde wird ausdrücklich verwiesen. Sie bildet einen Bestandteil dieser Niederschrift. Auf ein erneutes Vorlesen der Bezugsurkunde wird allseits verzichtet. Eine beglaubigte Abschrift der Bezugsurkunde ist dieser Niederschrift als **Anlage A1.5.2** beigefügt

3.   Die Mängelhaftung für Sach- oder Rechtsmängel ist völlig ausgeschlossen, soweit der Verkäufer 1 nicht gesetzlich zwingend haftet und soweit § 9 Ziff. 5 im 5. Teil dieser Urkunde nicht abweichend regelt. Dieser Haftungsausschluss gilt auch für solche Mängel, die nach Vertragsschluss und vor Gefahrübergang entstehen. Hiervon ausgenommen ist die Verpflichtung, den Kaufgegenstand frei von den im Grundbuch eingetragenen Lasten zu übergeben, soweit solche von dem Käufer nicht ausdrücklich in dieser Urkunde übernommen werden.

Der Verkäufer 1 haftet insbesondere nicht für die Richtigkeit der im Grundbuch eingetragenen Flächenmaße und die Abgrenzung des Grundbesitzes in der Natur. Der Verkäufer 1 haftet nicht für die Nutzbarkeit des Grundbesitzes oder der Gebäulichkeiten oder des Zubehörs in irgendeiner Art und Weise. Der Ausschluss der Haftung für Sachmängel gilt auch für verborgene und schwere Mängel, insbesondere für etwaige schädliche Bodenveränderungen und Altlasten im Sinne des BBodSchG und schädliche Veränderungen der Gebäude sowie Änderungen der Beschaffenheit des Grundwassers im Sinne des § 22 WHG.

Dies schließt Ansprüche ein, die aus Gefahrforschungsmaßnahmen, aus Sanierungsanordnungen, Sanierungsmaßnahmen und den Folgen einer Sanierung, z. B. Entsorgung von Abfällen, Bauverzögerungen, etc. resultieren. Vorstehendes gilt insbesondere für eine Inanspruchnahme nach dem BBodSchG. Maßnahmen dieser Art unternimmt der Käufer vielmehr auf eigene Kosten und eigenes Risiko. Ko-

CONFIDENTIAL–ATTORNEYS EYES ONLY

- 10 -

sten für Maßnahmen im Zusammenhang mit schädlichen Bodenveränderungen und Altlasten und schädlichen Veränderungen der Gebäude, insbesondere der vorgenannten Art, werden dem Käufer auch dann nicht erstattet, wenn dieser Vertrag rückabgewickelt wird. Dem Verkäufer 1 sind keine Ansprüche Dritter bekannt. Der Käufer ist verpflichtet, im Falle einer ganzen oder teilweisen Weiterveräußerung seinen Rechtsnachfolger in gleicher Weise zu verpflichten und diesem die Verpflichtung zur Weitergabe aufzuerlegen; er haftet für etwaige Schäden, die aus einer Verletzung dieser Pflicht entstehen.

Der Verkäufer 1 hat keine Kenntnis über verborgene Mängel.

4.   Der Verkäufer 1 ist nicht im Besitz eines Energieausweises gem. § 16 EnEV 2007. Der Käufer verzichtet endgültig auf dessen Vorlage und Übergabe. Ihm ist bekannt, dass es künftigen Mietinteressenten auf Verlangen einen solchen Ausweis vorzulegen hat und dass ihn Nachrüstungspflichten treffen könnten. Der Verkäufer 1 haftet hier wegen nicht.

5.   Der Kaufpreis ist insbesondere mit Blick auf den umfänglichen Mängelhaftungsausschluss vereinbart.

6.   Soweit dem Verkäufer 1 noch irgendwelche Rechte wegen Mängeln des Kaufgegenstands zustehen, werden diese hiermit an den Käufer abgetreten, aufschiebend bedingt durch Eintragung des Käufers als neuen Eigentümer im Grundbuch. Der Verkäufer 1 übernimmt jedoch keinerlei Haftung dafür, dass sich der Käufer aus den abgetretenen Haftungsansprüchen schadlos halten kann. Der Käufer nimmt die Abtretung an.

7.   Miet- oder Pachtverhältnisse bestehen nicht.

8.   Die Belastungen in der 2. Abteilung bleiben, soweit in diesem Vertrag nicht abweichend geregelt, bestehen und werden ohne Anrechnung auf den Kaufpreis mitübernommen. Der Käufer übernimmt für diese mitübernommenen Belastungen auch die hieraus jeweils erwachsenden persönlichen Verpflichtungen mit schuldbefreiender Wirkung.

Der in der 2. Abteilung des Grundbuchs eingetragene Insolvenzvermerk, sowie die unter lfd. Ziff. 7 und 8 erfolgten Eintragungen über das vorläufige Insolvenzverfahren und das Verfügungsverbot sind vom Verkäufer auf seine Kosten zur Löschung zu bringen.

Die von den Grundschuldgläubigern zur Abgabe deren Löschungsbewilligungs- bzw. Pfandfreigabeerklärungen geforderten Beträge wird der Verkäufer aus dem Kaufpreis darstellen. Alle weiteren im Zusammenhang mit der Löschung bzw. Pfandfreigabe im Grundbuch entstehenden Kosten trägt der Käufer.

Der Verkäufer 1 hat das Baulastenbuch nicht eingesehen. Baulasten oder altrechtliche, im Grundbuch nicht eingetragene Dienstbarkeiten sind dem Verkäufer nicht bekannt. Sollten solche Rechte bestehen, übernimmt sie der Käufer ohne Anrech-

- 11 -

nung auf den Kaufpreis zur weiteren Duldung, sofern diese nicht durch gutgläubigen Erwerb erlöschen.

9.   Der Verkäufer 1 übernimmt keine Haftung für das Nichtausüben von ggf. bestehenden gesetzlichen Vorkaufsrechten, noch für das Beibringen von ggf. für die Rechtswirksamkeit des Vertrages erforderlichen Bescheinigungen und Genehmigungen. Schadensersatzansprüche werden, gleich aus welchem Rechtsgrund, ausgeschlossen.

## § 6
### Genehmigungen

Verkäufer 1 und Käufer ermächtigen und beauftragen den Notar, alle zur Vorbereitung des Grundbuchvollzugs erforderlichen Genehmigungen und Erklärungen einzuholen. Die Vertragsschließenden beantragen hiermit alle zur Rechtswirksamkeit dieses Vertrages erforderlichen Genehmigungen. Sie ersuchen den Notar, die Genehmigungen, die ohne Bedingungen und Auflagen erteilt werden, für sie entgegenzunehmen. Für solche Genehmigungen verzichten die Beteiligten schon heute auf die förmliche Zustellung und die Einlegung von Rechtsmitteln. Genehmigungen aller Art zu dieser Urkunde sollen mit ihrem Eingang bei dem Notar allen Beteiligten gegenüber wirksam werden.

## § 7
### Vorkaufsrecht

Sollte von einem gesetzlichen Vorkaufsrecht Gebrauch gemacht werden, wird der Vertrag zwischen den Parteien rückabgewickelt.

Weitergehende Ansprüche des Käufers aus Anlass der Ausübung des Vorkaufsrechts bestehen nicht.

## § 8
### Grundbuchrechtliche Erklärungen

1.   Verkäufer 1 und Käufer sind sich über den Übergang des Eigentums an dem in § 1 genannten Grundbesitz einig. Der Verkäufer 1 bewilligt schon jetzt die Eintragung des Käufers als neuen Eigentümer im Grundbuch. Beide Parteien stellen Antrag auf Eintragung im Grundbuch.

**CONFIDENTIAL- ATTORNEY'S EYES ONLY**

CONFIDENTIAL–ATTORNEYS EYES ONLY

P000011

LT16570

- 12 -

2.  Zur Sicherung des Anspruchs auf Eigentumsübergang bewilligt der Verkäufer 1 und

*beantragt*

der Käufer die Eintragung einer Vormerkung nach § 883 BGB im Grundbuch an rangbereitester Stelle. Der Verkäufer 1 tritt diesem Antrag ohne Kostenfolge bei.

3.  Der Käufer bewilligt und beantragt bereits jetzt die Löschung dieser Vormerkung mit dem Vollzug des Eigentumswechsels im Grundbuch unter der Voraussetzung, dass keine Zwischenrechte ohne Mitwirkung des Käufers beantragt oder eingetragen wurden.

4.  Der Käufer bewilligt und beantragt schon heute die Löschung dieser Vormerkung. Der Verkäufer 1 tritt diesem Antrag ohne Kostenfolge bei. Der Notar wird angewiesen, die vollständige Ausfertigung mit dem Löschungsantrag des Käufers dem Grundbuchamt zum Vollzug zuzuleiten,

    a)  wenn der Notar die Bestätigung über die Fälligkeit des Kaufpreises an den Käufer zu der im Urkundeneingang aufgeführten Anschrift versandt hat und der Verkäufer 1 dem Notar schriftlich mitgeteilt hat, dass er wegen nicht rechtzeitiger Zahlung des Kaufpreises von dem Kaufvertrag zurückgetreten ist, beziehungsweise die Erfüllung dieses Vertrages abgelehnt hat und der Käufer dem Notar auf schriftliche Anforderung hin nicht innerhalb von 10 Tagen nachgewiesen hat, dass der Kaufpreis bezahlt ist

        oder

    b)  wenn der Verkäufer 1 dem Notar schriftlich mitgeteilt hat, dass er wegen Nichtzahlung der fälligen Grunderwerbsteuer vom Kaufvertrag zurückgetreten ist und der Käufer dem Notar auf schriftliche Anforderung hin nicht innerhalb von 10 Tagen nachgewiesen hat, dass die Grunderwerbsteuer gezahlt ist

        oder

    c)  wenn der Verkäufer 1 dem Notar schriftlich mitgeteilt hat, dass er wegen des Nichtvorliegens einer für die Wirksamkeit oder Durchführung des Vertrages erforderlichen Genehmigung gem. § 7 Ziff. 1 im 5. Teil dieses Vertrages vom Kaufvertrag zurückgetreten ist.

5.  Der Verkäufer 1 bewilligt und beantragt bereits jetzt die Löschung des in der 2. Abteilung des Grundbuchs eingetragenen Insolvenzvermerks, die Löschung der Eintragung des vorläufigen Insolvenzverfahrens, lfd. Ziff. 7, sowie die Löschung des Verfügungsverbotes lfd. Ziff. 8; diese Lasten werden vom Käufer nicht übernommen.

**CONFIDENTIAL- ATTORNEY'S EYES ONLY**

CONFIDENTIAL–ATTORNEYS EYES ONLY

P000012

LT16571

- 13 -

6. Der Verkäufer 1 bewilligt bereits jetzt die Löschung und die Pfandfreigabe der nicht vom Käufer übernommenen Lasten. Der Löschung wie auch der Pfandfreigabe wird allseits zugestimmt.

7. Der Notar wird von Verkäufer 1 und Käufer übereinstimmend und unwiderruflich angewiesen, Ausfertigung oder beglaubigte Abschrift dieses Vertrages zunächst nur auszugsweise (zum Vollzug des Antrages Ziff. 2 bezüglich der Vormerkung) dem Grundbuchamt vorzulegen und im übrigen erst dann an den Käufer oder Behörden herauszugeben wie auch die vollständige Ausfertigung dieses Vertrages mit der Auflassung und den Löschungsanträgen erst dann dem Grundbuchamt zum Vollzug zuzuleiten, wenn ihm die Zahlung aller Kaufpreise aus diesem Vertrag in voller Höhe ohne unerfüllbare Auflagen vom Verkäufer 1 mitgeteilt wurde, und die Zahlung der Notarkosten erfolgt ist und dem Notar oder dem Grundbuchamt die steuerliche Unbedenklichkeitsbescheinigung vorliegt.

Klargestellt wird, dass sämtliche Anträge jeweils ohne Bedingung oder Zeitbestimmung gestellt werden.

Der Käufer verzichtet unwiderruflich auf sein Recht, Ausfertigungen selbst dem Grundbuchamt zuzuleiten sowie darauf, eine vollständige, die Auflassung enthaltende beglaubigte Abschriften oder Ausfertigungen zu verlangen.

## § 9
## Kaufpreisfinanzierung/Belastungsvollmacht

1. Der Verkäufer 1 verpflichtet sich, zur Finanzierung des Kaufpreises des Kaufgegenstandes bei der Bestellung von Grundpfandrechten zugunsten deutscher Kredit- und Versicherungsinstitute bis zu einer Höhe von maximal € 5 Mio. zuzüglich beliebiger Zinsen und Nebenkosten mitzuwirken. Der Verkäufer 1 ist – im Innenverhältnis der Vertragsparteien – berechtigt, die Mitwirkung zu verweigern, falls die Gesamtfinanzierung des Kaufpreises und der in § 8 im 5. Teil dieser Urkunde aufgeführten Kosten nicht gesichert ist. Die Mitwirkungspflicht des Verkäufers 1 besteht nur, wenn in der Grundpfandrechtsbestellungsurkunde die folgenden, von den Beteiligten bereits jetzt getroffenen Bestimmungen aufgenommen werden:

a) Jedes Grundpfandrecht sichert - abweichend von allen formularmäßigen Zweckbestimmungen der künftigen Grundpfandrechtsgläubiger und etwaiger Vereinbarungen mit dem Käufer – bis zur vollständigen Kaufpreiszahlung nur einen Betrag in Höhe des tatsächlich vom Gläubiger an den Verkäufer 1 ausgezahlten Kaufpreisteils. Alle weiteren Zweckbestimmungserklärungen, Sicherungs- und Verwertungsvereinbarungen innerhalb oder außerhalb dieser Urkunde gelten erst nach vollständiger Kaufpreiszahlung, spätestens mit Eigentumsumschreibung. Ab diesem Zeitpunkt gelten sie für und gegen den Käufer als neuen Sicherungsgeber.

Der Verkäufer 1 übernimmt im Zusammenhang mit der Grundpfandrechtsbestellung keine persönliche Haftung. Der Käufer verpflichtet sich, den Verkäufer 1 von allen Kosten und sonstigen Folgen der Grundpfandrechtsbestellung freizustellen.

CONFIDENTIAL- ATTORNEY'S EYES ONLY

CONFIDENTIAL–ATTORNEYS EYES ONLY

P000013

LT16572

- 14 -

Der Käufer übernimmt bei Eigentumsumschreibung die bestellten Grund-pfandrechte auch zur dinglichen Haftung. Der Verkäufer 1 überträgt alle Rechte, die ihm bis dahin an diesen Grundpfandrechten zustehen, auf den Käufer und bewilligt schon jetzt eine etwaige Umschreibung im Grundbuch.

b)  Zur Absicherung des Verkäufers 1 tritt der Käufer hiermit seine Ansprüche auf Auszahlung von Darlehen, zu deren Sicherung er die Verkäufer Grund-pfandrechte bestellt hat, bis zur Höhe des Kaufpreises und etwaiger Ver-zugszinsen und sonstiger Leistungen an den Verkäufer ab. Dieser nimmt die Abtretung an. Käufer und Verkäufer 1 weisen die Gläubiger und Zwi-schenkreditgläubiger hiermit unwiderruflich an, Auszahlungen bis zur Rechtswirksamkeit des Kaufvertrages (Vorliegen aller privatrechtlichen und öffentlich-rechtlichen Bescheinigungen und Genehmigungen, jedoch mit Ausnahme der Unbedenklichkeitsbescheinigung des Finanzamtes) und bis zur vollständigen Kaufpreiszahlung vorrangig und nur zweckgebunden zur Kaufpreiszahlung vorzunehmen. Diese Abtretung entfällt, sobald der ge-samte Kaufpreis bezahlt ist.

Der Notar soll die Abtretungen den durch die Grundpfandrechte begün-stigten Gläubigern anzeigen und deren Einhaltung sicherstellen.

c)  Wird der Eigentumswechsel im Grundbuch nicht vollzogen, kann der Ver-käufer 1 verlangen, dass die bestellten Grundpfandrechte gegen Rücker-stattung des an ihn bezahlten Kaufpreises / Kaufpreisteils kostenfrei für den Verkäufer 1 gelöscht werden, dies gilt insbesondere, wenn eine der Ver-tragsparteien vom Vertrag zurücktritt, oder der Vertrag aus sonstigen Grün-den nicht durchgeführt wird.

2.  Der Verkäufer 1 erteilt dem Käufer unter den vorstehenden Bestimmungen

**Vollmacht,**

für ihn der Bestellung von Grundpfandrechten für deutsche Kredit- und Versiche-rungsinstitute bis zu einer Höhe von maximal € 5 Mio. und beliebige Zinsen und sonstige Nebenleistungen zuzustimmen, den Kaufgegenstand der sofortigen Zwangsvollstreckung gegen den jeweiligen Eigentümer gemäß § 800 ZPO zu un-terwerfen und die Eintragung der Grundpfandrechte samt allen Nebengeschäften zu bewilligen.

Diese Vollmacht gilt nur, wenn in der Grundpfandrechtsbestellungsurkunde die vorstehend unter Ziffer 1 a) bis c) getroffenen Bestimmungen vereinbart werden.

Die Bedingungen und Beschränkungen der Vollmacht sowie der Regelungen in Ziffer 1 gelten nicht gegenüber dem Grundbuchamt.

Die Beteiligten erklären, dass die Belastungsvollmacht unabhängig von öffentlich-rechtlichen Genehmigungen gelten soll.

Die Vollmacht kann nur vor dem beurkundenden Notar, oder seinem Nachfolger oder Vertreter im Amt, ausgeübt oder widerrufen werden. Diese werden vom Voll-machtgeber angewiesen, bei der Bestellung von Grundpfandrechten aufgrund die-

P000014

**CONFIDENTIAL- ATTORNEY'S EYES ONLY**

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16573

- 15 -

ser Vollmacht die unter Ziffer 1 a) bis c) formulierten Bedingungen und Beschrän-
kungen dieser Vollmacht in die Bestellungsurkunde aufzunehmen.

---

## 2. Teil
### Kaufvertrag über Gegenstände des beweglichen Anlagevermögens

### § 1
### Gegenstand des Kaufvertrages

1.  Der Verkäufer 1 verkauft mit Wirkung vom 01. Juni 2010, 0.00 Uhr (**Übergabe-
    stichtag**) an den dies annehmenden Käufer Gegenstände des beweglichen Anla-
    gevermögens der Schuldnerin 1, soweit sie nach Ablösung bestehender Siche-
    rungsrechte gem. § 3 Ziff. 2 dieses Teils des Vertrages im Alleineigentum der
    Schuldnerin 1 stehen. Die verkauften Gegenstände sind in der als **Anlage A2.1**
    diesem Vertrag beigefügten Liste erfasst. **Anlage A2.1** ist wesentlicher Bestandteil
    dieses Vertrages. Verkauft sind alle am Standort Heilbronn, Wannenäckerstr. 53
    befindlichen, im Eigentum der Schuldnerin 1 stehende Gegenstände, auch sofern
    sie nicht in der Liste enthalten sein sollten, mit Ausnahme des PKW Mercedes
    Benz, S-Klasse, welchen der Verkäufer 1 gesondert verkauft.

    Auf die Einrede, in der Liste aufgeführte Gegenstände seien nicht vorhanden, wird
    verzichtet.

### § 2
### Kaufpreis

1.  Der Kaufpreis beträgt für das bewegliche Anlagevermögen gem. § 1 dieses Teils
    des Vertrages insgesamt

    **€ 225.000,00**

    zuzüglich Umsatzsteuer in gesetzlicher Höhe.

2.  Die Umsatzsteuer ist sofort mit Unterzeichnung dieses Vertrages fällig und späte-
    stens am 5. des Kalendermonats, der dem Übergabestichtag folgt kostenfrei auf
    das Insolvenzverwalteranderkonto „Dr. Kießner – InsV Lavatec GmbH" bei der
    Sparkasse Offenburg/Ortenau, BLZ 664 500 50, Konto-Nr. 88 427 656 einzuzah-
    len.

    Die Verpflichtung zur Zahlung der Umsatzsteuer kann der Käufer erfüllungshalber
    dadurch erbringen, dass er seine Ansprüche auf Rückerstattung infolge Geltend-
    machung des Vorsteuerabzugs gegen das zuständige Finanzamt an den Verkäu-
    fer 1 abtritt. Dieser nimmt die Abtretung hiermit an. Es gilt § 10 im 5. Teil dieses
    Vertrages.

**CONFIDENTIAL- ATTORNEY'S EYES ONLY**

CONFIDENTIAL–ATTORNEYS EYES ONLY

- 16 -

3.  Der übrige Kaufpreis ist 14 Tage nach Unterzeichnung dieses Vertrages fällig und kostenfrei auf das vom Verkäufer hierfür gesondert eingerichtete Treuhandanderkonto "Lavatec GmbH – Skto Verkauf Anlagevermögen" bei der Sparkasse Offenburg/Ortenau, BLZ 664 500 50, Konto-Nr. 88 434 205 einzuzahlen.

Der Kaufpreis -ohne Umsatzsteuer- ist vom Verkäufer vorrangig zunächst zur Ablösung vorhandener Sicherungsrechte an den verkauften Gegenständen des beweglichen Anlagevermögens zu verwenden. Den überschießenden Betrag kann er vom Treuhandanderkonto auf das Insolvenzverwalteranderkonto bei der Sparkasse Offenburg/Ortenau, BLZ 664 500 50, Konto-Nr. 88 427 565 überweisen. Die Zinsen für das Treuhandanderkonto stehen dem Verkäufer zu.

### § 3
### Mängelhaftung

1.  Der Käufer erwirbt vom Verkäufer 1 im Insolvenzverfahren. Der Verkäufer 1 hat selbst nur eine eingeschränkte Kenntnis vom Kaufobjekt, seine Informationen beruhen insbesondere auf Angaben von Mitarbeitern der Schuldnerin. Der Verkäufer 1 übernimmt keinerlei Haftung für die Richtigkeit noch für die Vollständigkeit dieser Angaben.

Alle in § 1 dieses Teils des Vertrages erfassten verkauften Gegenstände des beweglichen Anlagevermögens sind langjährig gebraucht und möglicherweise auch beschädigt. Der Käufer kennt sie durch Besichtigung. Bekannt gewordene Mängel sollen nicht gesondert erfasst werden. Der Käufer erwirbt diese Gegenstände in ihrem derzeitigen Zustand.

Der Verkäufer 1 übernimmt keinerlei Garantien, insbesondere nicht für die Beschaffenheit noch für die Nutzbarkeit der verkauften Gegenstände des beweglichen Anlagevermögens. Die Mängelhaftung für Sach- oder Rechtsmängel ist völlig ausgeschlossen, soweit der Verkäufer nicht gesetzlich zwingend haftet und soweit in § 9 Ziff. 5 im 5. Teil dieser Urkunde nicht abweichend geregelt. Dieser Haftungsausschluss gilt auch für solche Mängel, die nach Vertragsschluss und vor Gefahrübergang entstehen. Soweit der Verkäufer 1 zwingend für Mängel haftet, ist er nach seiner Wahl zur Beseitigung des Mangels oder zur Lieferung einer mangelfreien Sache berechtigt.

Der Kaufpreis ist insbesondere mit Blick auf den umfänglichen Mängelhaftungsausschluss vereinbart.

2.  Dem Käufer ist bekannt, dass die verkauften Gegenstände des beweglichen Anlagevermögens mit Sicherungsrechten Dritter belastet sind. Der Verkäufer 1 wird diese Rechte nach Zahlung des Kaufpreises unter Verwendung des Kaufpreises ablösen.

CONFIDENTIAL- ATTORNEY'S EYES ONLY

P000016

CONFIDENTIAL–ATTORNEYS EYES ONLY

- 17 -

3.  Der Käufer verpflichtet sich - soweit erforderlich -, durch diesen Vertrag gekaufte Gegenstände auf eigene Kosten zu entsorgen. Sollten nach Unterzeichnung dieser Vereinbarung Dritte gegenüber dem Verkäufer 1 Ansprüche im Zusammenhang mit der Entsorgung geltend machen, so erfüllt der Käufer diese Ansprüche bzw. stellt, soweit die Erfüllung nicht möglich ist, den Verkäufer 1 umfänglich frei. Erfüllt der Verkäufer 1 gleichwohl die Pflicht zur Entsorgung solcher Gegenstände, hat der Käufer dem Verkäufer 1 die hierfür angefallenen Kosten zu ersetzen.


## § 4
### Eigentumsübergang

1.  Die Parteien sind sich über den Eigentumsübergang an den verkauften Gegenständen des beweglichen Anlagevermögens gemäß § 1 i.V.m. § 3 Ziff. 2 dieses Teils des Vertrages einig.

    Zu Zwecken der Übergabe sind sich die Parteien einig, dass der Verkäufer 1 dem Käufer die verkauften Gegenstände des beweglichen Anlagevermögens unter hiermit begründetem Besitzmittlungsverhältnis zum Übergabestichtag leihweise überlässt und für den Fall, dass sich zu übertragende Gegenstände nicht im Besitz des Verkäufers 1 befinden, einen etwaigen Herausgabeanspruch gegen den unmittelbaren Besitzer (Dritte) abtritt, was der Käufer annimmt.

    Der Käufer wird die in Sarstedt befindlichen Gegenstände binnen einer Frist von drei Monaten ab dem Übergabestichtag auf eigene Kosten abholen.

2.  Der Eigentumsübergang der verkauften Gegenstände und die fürsorgliche Abtretung etwaiger Herausgabeansprüche steht unter der aufschiebenden Bedingung der Zahlung sämtlicher Kaufpreise aus diesem Vertrag in voller Höhe auf die jeweils genannten Anderkonten. Bei Pfändungen oder sonstigen Eingriffen Dritter hat der Käufer dies dem Verkäufer unverzüglich schriftlich mitzuteilen, damit der Verkäufer 1 in Abstimmung mit dem Käufer Klage erheben kann. Soweit der Dritte nicht in der Lage ist, dem Verkäufer die gerichtlichen oder außergerichtlichen Kosten einer Klage zu erstatten, haftet der Käufer für den dem Verkäufer 1 entstandenen Ausfall.

3.  Der Verkäufer 1 verpflichtet sich, die ihm zustehenden Sicherheiten insoweit auf Verlangen des Käufers freizugeben, als ihr realisierbarer Wert die zu sichernden Forderungen, soweit diese nicht beglichen sind, übersteigt.

4.  Die vorstehende Sicherungsabrede nach Ziff. 2-3 erlischt automatisch, sobald sämtliche Kaufpreise dieses Vertrages auf dem jeweils angegebenen Anderkonto fristgerecht eingegangen sind.

———————

CONFIDENTIAL- ATTORNEY'S EYES ONLY

CONFIDENTIAL—ATTORNEYS EYES ONLY

P000017

LT16576

- 18 -

**3. Teil**
**Kaufvertrag über Gegenstände des Vorratsvermögens**

**§ 1**
**Gegenstand des Kaufvertrages**

1. Der Verkäufer 2 verkauft mit Wirkung zum 01. Juni 2010, 0.00 Uhr (Übergabe-stichtag) an den dies annehmenden Käufer aus dem Vorratsvermögen der Schuldnerin 2 Roh-, Hilfs- und Betriebsstoffe, unfertige und fertige Erzeugnisse und Waren des Geschäftsbetriebes des Verkäufers, soweit sie nach Ablösung bestehender Sicherungsrechte gem. § 3 Ziff. 2 dieses Teils des Vertrages im Alleineigentum der Schuldnerin 2 stehen und sich zum Übergabestichtag in Wannenäk-kerstr. 53, 74078 Heilbronn befinden.

   Nicht mitverkauft sind die dem Verkäufer 2 zum 31. 05. 2010, 24.00 Uhr gemäß der Abgrenzungsvereinbarung in § 2 im 5. Teil dieses Vertrages zustehenden beste-henden oder künftigen Forderungen.

   Der Bestand des verkauften Vorratsvermögens ergibt sich der Auflistung zum 10. 02. 2010, die dem Warenwirtschaftssystem der Schuldnerin 2 entnommen ist. Die Auflistung ist diesem Vertrag als **Anlage A3.1** beigefügt. Innerhalb **Anlage 3.1** sind die Roh-, Hilfs- und Betriebsstoffe in **Anlage A3.1a**, die halbfertigen Maschi-nen in **Anlage A3.1b** und die Altmaschinen in **Anlage A3.1.c** enthalten. **Anlage A3.1** ist den Parteien bekannt, sie verzichten auf ein Verlesen. Der Käufer ver-zichtet auf den Einwand, dass diese Auflistung unrichtig sei und Gegenstände nicht vorhanden seien. Der vereinbarte Kaufpreis trägt diesem Umstand Rech-nung.

**§ 2**
**Kaufpreis**

1. Der Kaufpreis für die verkauften Gegenstände des Vorratsvermögens gemäß § 1 dieses Teils des Vertrages beträgt

€ 1.084.543,00

   und zwar
   - für die Roh-, Hilfs- und Betriebsstoffe           € 704.543,00
   - für die halbfertigen Maschinen und Altmaschinen   € 380.000,00

   zuzüglich Umsatzsteuer in gesetzlicher Höhe.

2. Die Umsatzsteuer ist sofort mit Unterzeichnung dieses Vertrages fällig und spätes-tens am 5. des Kalendermonats, der dem Übergabestichtag folgt kostenfrei auf das Insolvenzverwalteranderkonto „Lavatec KG" bei der Sparkasse Offenburg/ Ortenau, BLZ 664 500 50, Konto-Nr. 88 423 050 einzuzahlen.

P000018

CONFIDENTIAL - ATTORNEY'S EYES ONLY
CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16577

- 19 -

Die Verpflichtung zur Zahlung der Umsatzsteuer kann der Käufer erfüllungshalber dadurch erbringen, dass er seine Ansprüche auf Rückerstattung infolge Geltendmachung des Vorsteuerabzugs gegen das zuständige Finanzamt an den Verkäufer 2 abtritt. Dieser nimmt die Abtretung hiermit an. Es gilt § 10 im 5. Teil dieses Vertrages.

3.     Der übrige Kaufpreis ist fällig wie folgt:

Ein Betrag in Höhe von € 1.044.543,00 ist fällig 14 Tage nach Vertragsabschluss.

Ein Betrag in Höhe von € 40.000,00 ist fällig nach dem jeweiligen Verkauf der Altmaschinen, spätestens am 01. Oktober 2010. Der Käufer wird den Verkäufer unaufgefordert über den Verkauf der Altmaschinen informieren und Rechnung legen.

Der jeweilige Betrag ist kostenfrei auf das vom Verkäufer hierfür gesondert eingerichtete Treuhandanderkonto "Lavatec KG, Skto Verkauf Vorratsvermögen" bei der Sparkasse Offenburg/Ortenau, BLZ 664 500 50, Konto-Nr. 88 434 065 einzuzahlen.

Der Kaufpreis -ohne Umsatzsteuer- ist vom Verkäufer vorrangig zunächst zur Ablösung vorhandener Sicherungsrechte an den verkauften Gegenständen des Vorratsvermögens zu verwenden. Den überschießenden Betrag kann er vom Treuhandanderkonto auf das Insolvenzverwalteranderkonto „Lavatec KG" bei der Sparkasse Offenburg/Ortenau, BLZ 664 500 50, Konto-Nr. 88 423 050 überweisen. Die Zinsen für das Treuhandanderkonto stehen dem Verkäufer zu.

## § 3
## Mängelhaftung

1.     Der Käufer erwirbt vom Verkäufer 2 im Insolvenzverfahren. Der Verkäufer 2 hat selbst nur eine eingeschränkte Kenntnis vom Kaufobjekt, seine Informationen beruhen insbesondere auf Angaben von Mitarbeitern der Schuldnerin 2. Der Verkäufer 2 übernimmt keinerlei Haftung für die Richtigkeit noch für die Vollständigkeit dieser Angaben.

Der Käufer kennt die in § 1 dieses Teils des Vertrages erfassten verkauften Gegenstände des Vorratsvermögens durch Besichtigung. Bekannt gewordene Mängel sollen nicht gesondert erfasst werden. Der Käufer erwirbt diese Gegenstände in ihrem derzeitigen Zustand.

Der Verkäufer 2 übernimmt keine Haftung dafür, dass die Kaufgegenstände frei sind von gewerblichen Schutzrechten Dritter, wie beispielsweise Markenrechten, Patenten und Geschmacksmustern noch dafür, dass sie keinen Veräußerungs-, Verarbeitungs- oder Nutzungsverboten oder sonstigen Beschränkungen unterliegen. Sollten Dritte Ansprüche aus Schutzrechtsverletzungen geltend machen, ist der Käufer verpflichtet, diese nach seiner Wahl zu erfüllen oder abzuwehren und den Verkäufer 2 von jedweden Ansprüchen Dritter insoweit freizustellen.

CONFIDENTIAL- ATTORNEY'S EYES ONLY

CONFIDENTIAL–ATTORNEYS EYES ONLY

P000019

LT16578

- 20 -

Der Verkäufer 2 weist den Käufer insbesondere darauf hin, dass der Patentinhaber MEWA bereits eine Veräußerung der beiden halbfertigen Maschinen Großtrockner mit der Maschinennummer 780.0106 und 760.0109 untersagt hat unter Berufung auf seine Patentansprüche.

Die Mängelhaftung für Sach- und Rechtsmängel ist völlig ausgeschlossen, soweit der Verkäufer 2 nicht gesetzlich zwingend haftet und soweit in § 9 Ziff. 5 im 5. Teil dieser Urkunde nicht abweichend geregelt. Der Verkäufer 2 übernimmt keinerlei Garantie, insbesondere nicht für die Beschaffenheit noch für die Nutzbarkeit der verkauften Gegenstände des Vorratsvermögens. Dieser Haftungsausschluss gilt auch für solche Mängel, die nach Vertragsschluss und vor Gefahrübergang entstehen. Öffentliche Äußerungen des Verkäufers 2, des Herstellers oder seiner Gehilfen im Sinne des § 434 Abs. 1 letzter Satz BGB über bestimmte Eigenschaften der Gegenstände des Vorratsvermögens sind weder dem Käufer noch dem Verkäufer 2 bekannt. Der Verkäufer 2 widerruft vorsorglich solche Äußerungen hiermit und der Käufer erklärt, dass solche Äußerungen in keiner Weise seine Kaufentscheidung beeinflusst haben.

Der Käufer erwirbt die Gegenstände des Vorratsvermögens im eröffneten Insolvenzverfahren. Ein möglicher Rückgriffsanspruch des Käufers gegen den Verkäufer 2 gem. § 478 BGB ist ausgeschlossen. Dieser Haftungsausschluss ist bei Festlegung des Kaufpreises für die verkauften Gegenstände des Vorratsvermögens ausreichend berücksichtigt worden; dem Käufer ist so ein gleichwertiger Ausgleich gem. § 478 Abs. 4 Satz 1 BGB eingeräumt worden.

Soweit der Verkäufer 2 zwingend für Mängel haftet, ist er nach seiner Wahl zur Beseitigung des Mangels oder zur Lieferung einer mangelfreien Sache berechtigt.

Der Verkäufer 2 tritt alle ihm Dritten gegenüber zustehenden Ansprüche aus Mängelhaftung, insbesondere auf Nacherfüllung oder mängelbedingten Schadenersatz, aufschiebend bedingt durch die Zahlung sämtlicher Kaufpreise aus diesem Vertrag auf das jeweils genannte Anderkonto an den Käufer ab, der die Abtretung annimmt. Der Verkäufer 2 übernimmt jedoch keinerlei Haftung dafür, dass sich der Käufer aus den abgetretenen Haftungsansprüchen schadlos halten kann.

Der Kaufpreis ist insbesondere mit Blick auf diesen umfänglichen Mängelhaftungs-Ausschluss vereinbart.


2.   Dem Käufer ist bekannt, dass die verkauften Gegenstände mit Sicherungsrechten Dritter belastet sind. Der Verkäufer 2 wird diese Rechte nach Zahlung des Kaufpreises unter Verwendung des Kaufpreises ablösen.


3.   Der Käufer verpflichtet sich - soweit erforderlich -, durch diesen Vertrag gekaufte Gegenstände auf eigene Kosten zu entsorgen. Sollten nach Unterzeichnung dieser Vereinbarung Dritte gegenüber dem Verkäufer 2 Ansprüche im Zusammenhang mit der Entsorgung geltend machen, so erfüllt der Käufer diese Ansprüche bzw. stellt, soweit die Erfüllung nicht möglich ist, den Verkäufer 2 umfänglich frei. Erfüllt der Verkäufer 2 gleichwohl die Pflicht zur Entsorgung solcher Gegenstände, hat der Käufer dem Verkäufer 2 die hierfür anfallenden Kosten zu ersetzen.

P000020

CONFIDENTIAL–ATTORNEYS EYES ONLY      – ATTORNEY'S EYES ONLY

LT16579

- 21 -

## § 4
### Eigentumsübergang

1.  Die Parteien sind sich über den Eigentumsübergang an den verkauften Gegen-
    ständen des Vorratsvermögens gem. § 1 i.V.m. § 3 Ziff. 2 dieses Teils des Vertra-
    ges, aufschiebend bedingt durch die vollständige Zahlung sämtlicher Kaufpreise
    aus diesem Vertrag, einig. Bei Pfändungen oder sonstigen Eingriffen Dritter hat
    der Käufer dies dem Verkäufer 2 unverzüglich schriftlich mitzuteilen, damit der
    Verkäufer 2 in Abstimmung mit dem Käufer Klage erheben kann. Soweit der Dritte
    nicht in der Lage ist, dem Verkäufer 2 die gerichtlichen oder außergerichtlichen
    Kosten einer Klage zu erstatten, haftet der Käufer für den dem Verkäufer 2 ent-
    standenen Ausfall.

2.  Der Käufer darf die Vorbehaltsware nur im ordentlichen Geschäftsgang veräußern
    oder verarbeiten und sofern sich seine Vermögensverhältnisse nicht nachhaltig
    verschlechtern. Er tritt dem Verkäufer 2 bereits jetzt alle künftigen Forderungen in
    Höhe des Faktura-Endbetrages mit allen Nebenrechten einschließlich Umsatz-
    steuer ab, die ihm aus der Weiterveräußerung gegen seine Abnehmer oder gegen
    Dritte erwachsen, und zwar unabhängig davon, ob die Vorbehaltsware ohne oder
    nach Verarbeitung, Verbindung oder Vermischung weiterverkauft worden ist. Der
    Käufer ist ermächtigt, solange er seinen Zahlungsverpflichtungen nachkommt, die
    abgetretenen Forderungen einzuziehen. Die Einziehungsermächtigung erlischt bei
    Zahlungsverzug des Käufers oder bei wesentlicher Verschlechterung der Vermö-
    gensverhältnisse des Käufers. In diesem Falle wird der Verkäufer hiermit vom
    Käufer bevollmächtigt, die Abnehmer von der Abtretung zu unterrichten und die
    Forderung selbst einzuziehen.

    Für die Geltendmachung der abgetretenen Forderungen muss der Käufer die not-
    wendigen Auskünfte erteilen, die Überprüfung dieser Auskünfte gestatten und die
    dazugehörigen Unterlagen aushändigen. Insbesondere hat er dem Verkäufer 2 auf
    Verlangen eine genaue Aufstellung der ihm zustehenden Forderungen mit Namen
    und Anschrift der Abnehmer, Höhe der einzelnen Forderungen, Rechnungsdatum,
    usw. auszuhändigen.

3.  Wird die Vorbehaltsware vom Käufer zu einer neuen beweglichen Sache verbun-
    den, vermischt oder verarbeitet, so erfolgt dies für den Verkäufer 2, ohne dass die-
    ser hieraus verpflichtet wird. Durch die Verbindung, Vermischung oder Verarbei-
    tung erwirbt der Käufer nicht das Eigentum gem. §§ 947 ff. BGB an der neuen Sa-
    che. Bei Verbindung, Vermischung oder Verarbeitung mit nicht dem Verkäufer 2
    gehörenden Sachen erwirbt der Verkäufer Miteigentum an der neuen Sache nach
    dem Verhältnis des Fakturenwertes seiner Vorbehaltsware zum Gesamtwert.

4.  Der Käufer verwahrt die Vorbehaltsware für den Verkäufer 2 unentgeltlich. Er hat
    sie gegen die üblichen Gefahren, wie z.B. Feuer, Diebstahl und Wasser im ge-
    bräuchlichen Umfang zu versichern. Der Käufer tritt hiermit seine Entschädigungs-
    ansprüche, die ihm aus Schäden der o.g. Art gegen Versicherungsgesellschaften
    oder sonstige Ersatzverpflichtete zustehen, an den Verkäufer in Höhe des Faktu-
    renwertes der Ware ab. Der Verkäufer 2 nimmt die Abtretung an.

P000021

ATTORNEY'S EYES ONLY

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16580

- 22 -

5.   Der Verkäufer 2 verpflichtet sich, die ihm zustehenden Sicherheiten insoweit auf Verlangen des Käufers freizugeben, als ihr realisierbarer Wert die zu sichernden Forderungen, soweit diese nicht beglichen sind, um mehr als 10 % übersteigt.

6.   Nimmt der Verkäufer 2 in Ausübung seines Eigentumsvorbehaltsrechts die Vorbehaltsware zurück, so liegt nur dann ein Rücktritt vom Vertrag vor, wenn der Verkäufer dies ausdrücklich erklärt. Der Verkäufer 2 kann sich aus der zurückgenommenen Vorbehaltsware durch freihändigen Verkauf befriedigen.

7.   Die vorstehende Sicherungsabrede nach Ziff. 1-5 erlischt automatisch, sobald sämtliche Kaufpreise dieses Vertrages auf dem jeweils angegebenen Anderkonto fristgerecht eingegangen sind.

———————

## 4. Teil
## Kaufvertrag über immaterielle Rechte

## § 1
## Gegenstand des Kaufvertrages

1.   Der Verkäufer 1 verkauft mit Wirkung zum 01. Juni 2010, 0.00 Uhr (Übergabestichtag) an den dies annehmenden Käufer die immateriellen Vermögenswerte des Geschäftsbetriebs des Verkäufers, insbesondere die Firma, das Know-how und den Kundenstamm.

Mitverkauft sind ggf. bestehende gewerbliche Schutzrechte z.B. Marken, Patente, Zeichnungen, Pläne und allgemeine Geschäftsunterlagen; dies gilt auch für noch nicht eingetragene, z. B. beantragte Schutzpositionen. Nicht mitverkauft ist die Marke „Dunnewolt". Der Verkäufer 1 weist den Käufer darauf hin, dass Schutzrechte bereits im Zusammenhang mit dem Abschluss eines anderen Kaufvertrages verkauft wurden und aktuell keine eingetragenen Schutzrechte bekannt sind.

Der Verkäufer 1 überträgt ferner an den dies annehmenden Käufer Softwarelizenzen, sofern und soweit der Verkäufer 1 diese übertragen kann und Rechte Dritter nicht entgegen stehen.

2.   Der Verkäufer 2 verkauft mit Wirkung zum 01. Juni 2010, 0.00 Uhr (Übergabestichtag) an den dies annehmenden Käufer die immateriellen Vermögenswerte des Geschäftsbetriebs des Verkäufers, insbesondere das Know-how und den Kundenstamm.

CONFIDENTIAL- ATTORNEY'S EYES ONLY

CONFIDENTIAL–ATTORNEYS EYES ONLY

P000022

LT16581

- 23 -

## § 2
## Kaufpreis

1.  Der Kaufpreis für die immateriellen Vermögenswerte gemäß § 1 Ziff. 1 dieses Teils des Vertrages beträgt

    **€ 50.000,00**

    zuzüglich Umsatzsteuer in gesetzlicher Höhe.

    Die Umsatzsteuer ist sofort mit Unterzeichnung des Vertrages fällig spätestens am 5. des Kalendermonats, der dem Übergabestichtag folgt kostenfrei auf das Insolvenzverwalteranderkonto des Verkäufers 1 bei der Sparkasse Offenburg/Ortenau, BLZ 664 500 50, Konto-Nr. 88 433 992 einzuzahlen.

    Die Verpflichtung zur Zahlung der Umsatzsteuer kann der Käufer erfüllungshalber dadurch erbringen, dass er seine Ansprüche auf Rückerstattung infolge Geltendmachung des Vorsteuerabzugs gegen das zuständige Finanzamt an den Verkäufer 1 abtritt. Dieser nimmt die Abtretung hiermit an. Es gilt § 10 im 5. Teil dieses Vertrages.

    Der übrige Kaufpreis ist fällig 14 Tage nach Unterzeichnung dieses Vertrages und kostenfrei auf das Insolvenzverwalteranderkonto des Verkäufers 1 bei der Sparkasse Offenburg/Ortenau, BLZ 664 500 50, Konto-Nr. 88 433 992 zu überweisen.

2.  Der Kaufpreis für die immateriellen Vermögenswerte gemäß § 1 Ziff. 2 dieses Teils des Vertrages beträgt

    **€ 1,00**

    zuzüglich Umsatzsteuer in gesetzlicher Höhe.

    Die Umsatzsteuer ist sofort mit Unterzeichnung des Vertrages fällig spätestens am 5. des Kalendermonats, der dem Übergabestichtag folgt kostenfrei auf das Insolvenzverwalteranderkonto des Verkäufers 2 bei der Sparkasse Offenburg/Ortenau, BLZ 664 500 50, Konto-Nr. 88 423 050 einzuzahlen.

    Die Verpflichtung zur Zahlung der Umsatzsteuer kann der Käufer erfüllungshalber dadurch erbringen, dass er seine Ansprüche auf Rückerstattung infolge Geltendmachung des Vorsteuerabzugs gegen das zuständige Finanzamt an den Verkäufer 2 abtritt. Dieser nimmt die Abtretung hiermit an. Es gilt § 10 im 5. Teil dieses Vertrages.

    Der übrige Kaufpreis ist fällig 14 Tage nach Unterzeichnung dieses Vertrages und kostenfrei auf das Insolvenzverwalteranderkonto des Verkäufers 2 bei der Sparkasse Offenburg/Ortenau, BLZ 664 500 50, Konto-Nr. 88 423 050 zu überweisen.

CONFIDENTIAL- ATTORNEY'S EYES ONLY

CONFIDENTIAL−ATTORNEYS EYES ONLY

P000023

LT16582

- 24 -

## § 3
## Mängelhaftung

1. Der Käufer erwirbt vom Verkäufer im Insolvenzverfahren. Der Verkäufer hat selbst nur eine eingeschränkte Kenntnis vom Kaufobjekt, seine Informationen beruhen insbesondere auf Angaben von Mitarbeitern der Schuldnerin. Der Verkäufer übernimmt keinerlei Haftung für die Richtigkeit noch für die Vollständigkeit dieser Angaben.

   Der Käufer kennt die in § 1 dieses Teils des Vertrages erfassten verkauften Gegenstände des immateriellen Vermögens. Bekannt gewordene Mängel sollen nicht gesondert erfasst werden. Der Käufer erwirbt diese immateriellen Vermögenswerte in ihrem derzeitigen Zustand.

2. Der Verkäufer 1 wird sich nach Aufforderung durch den Käufer bemühen, nach Abschluss des vorliegenden Vertrages die Firma der Schuldnerin 1 zu ändern. Der Verkäufer 1 kann nicht dafür einstehen, dass die Firmenänderung im Handelsregister zum Vollzug kommt. Der Käufer verpflichtet sich, den Verkäufer 1 von den Kosten im Zusammenhang mit seinen Bemühungen zur Änderung der Firma der Schuldnerin insbesondere von den Kosten der vom Verkäufer 1 mit der Veranlassung und Durchführung der Firmenänderung beauftragten Schultze & Braun GmbH Rechtsanwaltsgesellschaft Wirtschaftsprüfungsgesellschaft bis zu einem Betrag von € 5.000,00 freizustellen und zu bezahlen.

   Der Verkäufer 1 weist den Käufer darauf hin, dass kein ausschließliches Recht der Schuldnerin 1 an der Bezeichnung „Lavatec" besteht, sondern auch die Lavatec Inc., USA und Lavatec France das Recht haben, ihre jeweilige Firma zu führen.

3. Dem Käufer ist der Registerstand der Vertragsschutzrechte bekannt.

   Der Verkäufer 1 haftet hinsichtlich der angemeldeten Patente nicht für deren Erteilung. Der Verkäufer 1 haftet auch nicht für den weiteren Bestand der eingetragenen Vertragspatente sowie für die Freiheit von unbekannten Vorbenutzungsrechten.

   Der Verkäufer 1 haftet ferner nicht dafür, dass einem Dritten ein Patent zusteht, aufgrund dessen er die Benutzung der verkauften Patente durch den Käufer untersagen kann.

   Dem Käufer ist bekannt, dass für die Patente fortlaufend Jahresgebühren gemäß den jeweiligen nationalen bzw. europäischen bzw. internationalen Vorschriften bezahlt werden müssen. Der Käufer überwacht selbst die Fristenkontrolle und -wahrung.

4. Die Mängelhaftung für die in § 1 dieses Teils des Vertrages verkauften immateriellen Vermögenswerte ist ausgeschlossen, soweit der jeweilige Verkäufer nicht gesetzlich zwingend haftet und soweit in § 9 Ziff. 5 im 5. Teil dieser Urkunde nicht

CONFIDENTIAL- ATTORNEY'S EYES ONLY

CONFIDENTIAL–ATTORNEYS EYES ONLY

P000024

LT16583

- 25 -

abweichend geregelt. Der jeweilige Verkäufer übernimmt keinerlei Garantien, insbesondere nicht für die Beschaffenheit, den Bestand und die Mangelfreiheit der verkauften immateriellen Vermögenswerte. Dieser Haftungsausschluss gilt auch für solche Mängel, die nach Vertragsschluss und vor Gefahrübergang entstehen. Soweit der jeweilige Verkäufer zwingend für Mängel haftet, ist er nach seiner Wahl zur Beseitigung des Mangels oder zur Lieferung einer mangelfreien Sache berechtigt.

5.  Der Verkäufer kann nicht garantieren, dass ausreichende Lizenzen für die Software vorhanden und dass die Lizenzen auf den Käufer übertragbar sind. Er kann weiter weder die Tauglichkeit der Software für den bisher genutzten Rahmen noch für den vom Käufer beabsichtigten Zweck garantieren.

    Der Kaufpreis ist insbesondere mit Blick auf den umfänglichen Mängelhaftungsausschluss vereinbart.

## § 4
### Eigentumsübergang

1.  Die Parteien sind sich über die Abtretung aller verkauften und in § 1 dieses Teils des Vertrages genannten, einzelnen immateriellen Vermögenswerte einig, sie sind hiermit abgetreten an den Käufer, der dies annimmt.

    Die jeweilige Abtretung der verkauften immateriellen Vermögenswerte steht unter der aufschiebenden Bedingung der Zahlung sämtlicher Kaufpreise aus diesem Vertrag in voller Höhe auf das jeweils genannte Anderkonto.

2.  Nach Eingang aller Kaufpreise aus diesem Vertrag wird der Verkäufer 1 die vom Käufer ausgefüllten und unterzeichneten Exemplare „Antrag auf Umschreibung von Patenten/Patentanmeldungen" (Formblatt P 3190 des Deutschen Patentamtes) betreffend der Vertragspatente gegenzeichnen. Diese sind vom Käufer unverzüglich beim Deutschen Patent- und Markenamt, ggf. unter Einzahlung erforderlicher Gebühren, einzureichen.

## § 5
### Auftragsbestand

1.  Mitverkauft sind auch der Auftragsbestand und die angebahnten Aufträge des Geschäftsbetriebs der Schuldnerin 2. Der Käufer verpflichtet sich, alle vom (vorläufigen) Insolvenzverwalter bestätigten, bisher nicht vollständig ausgeführten Aufträge nach Maßgabe von § 2 Ziff. 2 im 5. Teil des Vertrages auszuführen. Alle dem Verkäufer 2 angetragenen Aufträge, die bisher nicht bestätigt worden sind, auch stornierte oder solche, bei denen der Verkäufer nach § 103 InsO Nichterfüllung erklärt bzw. erklärt hat, sind als Geschäftschancen ebenfalls mit übertragen.

**CONFIDENTIAL- ATTORNEY'S EYES ONLY**

CONFIDENTIAL–ATTORNEYS EYES ONLY

P000025

LT16584

- 26 -

2.  Den Vertragsparteien ist bewusst, dass, soweit vertragliche Vereinbarungen mit Dritten bestehen, insoweit die Wirksamkeit der Übertragung der jeweiligen Zustimmung des Dritten bedarf. Der Verkäufer 2 schuldet nichts; verkauft sind lediglich Geschäftschancen.

**5. Teil**
**Gemeinsame Vorschriften und sonstige Vereinbarungen**

**§ 1**
**Arbeitnehmer**

1.  Dem Käufer ist bekannt, dass alle Beschäftigungsverhältnisse vom Verkäufer 1 und Verkäufer 2 gekündigt worden sind, und dass diese ausgesprochenen Kündigungen möglicherweise im Hinblick auf § 613 a BGB unwirksam sind mit der Folge, dass auch die gekündigten Arbeitsverhältnisse mit allen bestehenden Rechten und Pflichten über den Kündigungszeitpunkt hinaus auf den Käufer übergehen würden. Der jeweilige Verkäufer übernimmt dem Käufer gegenüber insoweit keinerlei Haftung für übergehende Arbeitsverhältnisse. Der Käufer stellt seinerseits den Verkäufer ausdrücklich von jeglicher Haftung frei.

    Der Verkäufer 2 weist darauf hin, dass die Kündigungsfristen zeit- und zweckbefristet bis zum Abschluss der Abwicklungstätigkeit verlängert wurden.

    Der Verkäufer weist den Käufer darauf hin, dass es noch folgende, nicht erledigten Sachverhalte bzw. Arbeitsgerichtverfahren gibt:

    -   Bettina Fischer (Verfahren ruhend)
    -   Martin Knobloch (Berufungsverfahren beim Landesarbeitsgericht)

2.  Wegen möglicher Ansprüche der Arbeitnehmer oder Dritter gegen den Käufer im Hinblick auf § 613 a BGB übernimmt der jeweilige Verkäufer dem Käufer gegenüber keinerlei Haftung. Der Käufer stellt seinerseits den Verkäufer insoweit ausdrücklich von jeder Haftung wegen möglicher Ansprüche der Arbeitnehmer gegen den Verkäufer frei, nicht jedoch von Lohn- und Gehaltsansprüchen für den Zeitraum vor dem Übergabestichtag.

3.  Dem Käufer wurde durch den Verkäufer seit Eröffnung des Insolvenzverfahrens Gelegenheit gegeben, sich über die Arbeitsverhältnisse und aller damit zusammenhängender Fragen bei der Schuldnerin zu informieren, insbesondere eine entsprechende Due Diligence durchzuführen. Hinsichtlich der Vollständigkeit der bei der Schuldnerin vorhandenen Informationen über Arbeitnehmer und Arbeitsverhältnissen, sowie die Geltung kollektivrechtlicher Regelungen übernimmt der Verkäufer keine Haftung.

**CONFIDENTIAL- ATTORNEY'S EYES ONLY**
CONFIDENTIAL–ATTORNEYS EYES ONLY

P000026

LT16585

- 27 -

## § 2
### Abgrenzung von Rechtsverhältnissen

1. Der Verkäufer 2 wickelt den Geschäftsbetrieb im Rahmen des Insolvenzverfahrens bis zum Übergabestichtag, dem 01. Juni 2010, auf eigene Rechnung ab. Forderungen hieraus stehen weiterhin ihm zu.

   Der Käufer verpflichtet sich, sämtliche vom Verkäufer 2 vor und nach Insolvenzantragstellung eingegangenen Aufträge, soweit nicht der Verkäufer 2 berechtigterweise die Erfüllung verweigern kann und der Käufer dies vom Verkäufer 2 verlangt, wie sie sich aus den Geschäftsbüchern des Verkäufers ergeben, fortzuführen und zu erfüllen und den Verkäufer aus allen hieraus ihm gegenüber geltend gemachten Ansprüchen Dritter freizustellen. Das Entgelt aus diesen nach dem Übergabestichtag zum 01. Juni 2010, 00.00 Uhr von dem Käufer zu erfüllenden Verträgen steht dem Käufer zu, soweit die Kunden die Vergütung noch nicht bezahlt haben. Von den Kunden geleistete Anzahlungen sind bei der Ermittlung des Kaufpreises für das Vorratsvermögen berücksichtigt. Sie verbleiben dem Verkäufer.

   Zum Zeitpunkt der Vertragsunterzeichnung sind insbesondere Aufträge zur Programmierung von Software-Updates nicht vollständig abgeschlossen. Diese Aufträge sind in der als **Anlage A 5.2.1** dieser Urkunde beigefügten Liste enthalten. **Anlage A 5.2.1** ist den Vertragsparteien bekannt, sie verzichten auf ein Verlesen.

2. Der jeweilige Verkäufer kündigt nach dem Übergang von Besitz, Nutzen und Lasten, soweit in diesem Vertrag nicht anders lautend vereinbart, sämtliche für das Kaufobjekt bestehenden sonstigen Dienstleistungs-, Nutzungs- und sonstigen Dauerschuldverhältnisse. Er wird den jeweiligen Vertragspartnern zur Kenntnis bringen, dass sie sich wegen eines ggf. Neuabschlusses von entsprechenden Verträgen mit dem Käufer in Verbindung setzen sollen.

   Für den Zeitraum vom Übergabestichtag bis zum Zeitpunkt, auf den die Kündigung wirkt, übernimmt der Käufer die Verbindlichkeiten aus den Dauerschuldverhältnissen mit schuldbefreiender Wirkung für den Verkäufer. Der Käufer wird die angeforderten Beträge unverzüglich nach Abrechnung durch den jeweiligen Verkäufer auf das dann benannte Insolvenzverwalteranderkonto überweisen.

3. Verkäufer und Käufer haben Regelungen über die Abgrenzung von Auftragsbestand, Forderungen und sonstigen Verträgen getroffen. Diese Abgrenzung ist nur anhand der Handelsbücher und der Inventur nachzuprüfen und zu belegen.

   Der Käufer verpflichtet sich, dem Verkäufer jederzeit Einsicht in alle Unterlagen betreffend aller Sachverhalte vor dem Übergabestichtag sowie aller Sachverhalte, die notwendig sind für die Fragestellungen, welche die Abgrenzung der Forderungen, Lieferverpflichtungen und sonstigen Verpflichtungen nach diesem Vertrag betreffen, zu gewährleisten, damit dieser die notwendigen Feststellungen selbst oder durch von ihm beauftragte Personen treffen kann.

P000027

ATTORNEY'S EYES ONLY

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16586

- 28 -

betreffen, zu gewährleisten, damit dieser die notwendigen Feststellungen selbst oder durch von ihm beauftragte Personen treffen kann.

4.  Der Verkäufer vereinbart mit dem Käufer, dass dieser im Besitz sämtlicher Handelsbücher, insbesondere der aufbewahrungspflichtigen Personalunterlagen, und zwar auch betreffend die nicht übernommenen Arbeitnehmer, bleibt; Buchhaltungsunterlagen und sonstige Unterlagen aus dem Insolvenzverfahren verbleiben dagegen beim Insolvenzverwalter. Die Handelsbücher werden nicht mitverkauft, der Käufer kann diese aber für seine eigenen Geschäftszwecke nutzen. Auf Verlangen ist der Käufer verpflichtet, die Geschäftsbücher oder Teile der Geschäftsbücher dem Verkäufer herauszugeben. Verlangt der Verkäufer dies nicht, verwahrt der Käufer alle Handelsbücher und Geschäftspapiere des Verkäufers unentgeltlich mit der Sorgfalt eines ordentlichen Kaufmanns.

    Nach Ablauf der gesetzlichen Aufbewahrungspflicht, nicht aber bevor das Insolvenzverfahren aufgehoben ist, ist der Käufer berechtigt und verpflichtet, diese Unterlagen zu vernichten. Der Verkäufer ist nicht verpflichtet, sie entgegenzunehmen und/oder sie selbst zu vernichten. Der Käufer ist jedoch berechtigt, die Geschäftsunterlagen auf seine Kosten länger aufzubewahren. Ein Entgelt für die Verpflichtung des Käufers wird diesem nicht geschuldet.

5.  Der Verkäufer bedarf bei der Abwicklung des Insolvenzverfahrens möglicherweise der Auskunft oder Hilfestellung früherer Mitarbeiter, insbesondere der Arbeitnehmer Baier, Jung, Fleischer, Muth, Erb, Clement, die dazu auch Einsicht in die beim Käufer eingelagerten Geschäftsunterlagen nehmen und ggf. Unterlagen erstellen müssen. Der Käufer verpflichtet sich, frühere oder - soweit notwendig - auch neue Arbeitnehmer bis zu einem Aufwand von insgesamt 300 Stunden pro Jahr unentgeltlich dafür einzusetzen, dass das Auskunftsverlangen des Verkäufers kostenfrei (auch bezüglich angemessener Anzahl von Ablichtungen o.ä.) in angemessener Zeit erledigt wird.

### § 3
### Verzugszinsen

Bei pünktlicher Zahlung der im 1. Teil, im 2. Teil, im 3. Teil und im 4. Teil des Vertrages jeweils in § 2 vereinbarten Kaufpreise ist der Betrag jeweils bis zur Fälligkeit unverzinslich. Maßgeblich für die Rechtzeitigkeit der Zahlung ist der Eingang des geschuldeten Betrages auf dem jeweils benannten Anderkonto.

Kommt der Käufer mit der Zahlung des Kaufpreises oder eines Kaufpreisteils oder der Umsatzsteuer ganz oder teilweise in Verzug, ist der noch offene Kaufpreisrest vom Tage seiner Fälligkeit an bis einschließlich dem Tag des Zahlungseingangs auf dem benannten Konto mit 8 Prozentpunkten über dem Basiszinssatz gem. § 247 BGB jährlich zu verzinsen. Die Geltendmachung eines weitergehenden Verzugsschadens wird dadurch nicht ausgeschlossen.

P000028

CONFIDENTIAL - ATTORNEY'S EYES ONLY
CONFIDENTIAL-ATTORNEYS EYES ONLY

LT16587

- 29 -

### § 4
#### Aufrechnung, Zurückbehaltungsansprüche

Der Käufer kann gegenüber Forderungen des Verkäufers aus diesem Vertrag nur dann mit eigenen Ansprüchen gleich aus welchem Rechtsverhältnis aufrechnen, wenn der Gegenanspruch unbestritten oder der Anspruch rechtskräftig tituliert und der Käufer nicht selbst mit den ihm obliegenden Pflichten oder Zahlungen in Verzug ist. Gleiches gilt auch für die Geltendmachung eines Zurückbehaltungsrechts.

### § 5
#### Abtretungsausschluss

1.  Der Käufer ist vor vollständiger Bezahlung sämtlicher Kaufpreise aus diesem Vertrag nicht berechtigt, ohne schriftliche Zustimmung des Verkäufers über seine Rechte und Ansprüche aus diesem Vertrag zu verfügen, soweit nicht in diesem Vertrag einzelne Sachverhalte abweichend geregelt sind.

2.  Der Käufer ist vor vollständiger Bezahlung sämtlicher Kaufpreise aus diesem Vertrag nicht berechtigt, ohne schriftliche Zustimmung des Verkäufers Lizenzen an den vertragsgegenständlichen Schutzrechten zu erteilen.

### § 6
#### Sicherheitsleistung

Eine Sicherheitsleistung entfällt. Der Käufer hat den Verkäufern ein Schreiben der finanzierenden Banken übergeben, in welchem diese bestätigen, dass sie das beabsichtigte Finanzierungskonzept auf der Basis der bisher bekannt gewordenen Informationen begleiten. Der Käufer wird den Verkäufern unverzüglich, spätestens am 8. Juni 2010, unabhängig vom Zeitpunkt der Nachgenehmigung, eine verbindliche Finanzierungsbestätigung der finanzierenden Banken nachreichen.

### § 7
#### Rücktritt / Rückabwicklung

1.  Das Recht jeder Partei zum Rücktritt von dem schuldrechtlichen Vertrag bestimmt sich, soweit dieser Vertrag nichts Abweichendes regelt, nach den gesetzlichen Regelungen.

CONFIDENTIAL – ATTORNEY'S EYES ONLY

CONFIDENTIAL–ATTORNEYS EYES ONLY

P000029

LT16588

- 30 -

2. Dem Verkäufer 1 wird das außerordentliche Recht zugestanden von dem schuldrechtlichen Vertrag zurückzutreten, wenn der Käufer die fällige Grunderwerbsteuer nicht zahlt.

Den Verkäufern wird das außerordentliche Recht zugestanden, von jedem einzelnen Teil dieses Vertrages zurückzutreten, auch sukzessive und auch bezüglich einzelner Gegenstände und Teilen von Gegenständen, Grundstücken und Gebäuden und Rechten, soweit der Käufer nicht bis 8. Juni 2010 die in § 6 dieses Teils des Vertrages benannte verbindliche Finanzierungsbestätigung vorlegt.

Sollte eine für die Wirksamkeit oder die Durchführung des Vertrages erforderliche Genehmigung nicht uneingeschränkt erteilt werden, so ist der Verkäufer 1 zum Rücktritt berechtigt. Entsprechendes gilt bei Ausübung eines Vorkaufsrechts, wobei dadurch der Vorkaufsberechtigte nicht in seinen Rechten beeinträchtigt wird. Es gilt § 5 Ziffer 9 im 1. Teil dieser Urkunde.

Ohne Rücksicht auf das Rücktrittsrecht ist die Einigung gem. § 8 des 1. Teils dieses Vertrages unbedingt erklärt.

3. Etwaige Ansprüche des Käufers gegen den Verwalter oder den jeweiligen Verkäufer im Zusammenhang mit einem Rücktritt vom Vertrag, seiner sonstigen Rückabwicklung oder seines Nichtvollzugs beschränken sich auf die Rückzahlung eines bereits geleisteten Kaufpreises. Die Rückzahlung erfolgt unter Abzug der vom Käufer gem. nachfolgender Ziff. 4 und Ziff. 5 geschuldeten Beträge. Ergibt sich hierdurch rechnerisch ein Überschuss zugunsten des Verkäufers, hat der Käufer den Betrag dem Verkäufer gegenüber auszugleichen. Ein Abzug von Kosten der Rückabwicklung des Vertrages erfolgt nicht, soweit der Verkäufer den Nichtvollzug oder die Rückabwicklung dieses Vertrages allein zu vertreten hat.

4. Im Falle des Nichtvollzuges oder der Rückabwicklung des Vertrages, auch bei dessen teilweiser Rückabwicklung, wird vom Käufer folgendes geschuldet:

a) für die Nutzung des Grundbesitzes und des beweglichen Anlagevermögens ein angemessener Betrag, den der jeweilige Verkäufer nach billigem Ermessen bestimmt, mindestens jedoch 10 % p.a. des jeweiligen Kaufpreises. Dem Käufer bleibt der Nachweis vorbehalten, dass der angemessene Betrag der Nutzungsentschädigung wesentlich niedriger ist. Das Nutzungsentgelt zuzüglich Umsatzsteuer ist fällig sofort mit Rechnungsstellung und kostenfrei auf das benannte Insolvenzverwalteranderkonto einzuzahlen.

Der Käufer hat mit Eintritt des die Rückabwicklung auslösenden Sachverhalts den Grundbesitz und das bewegliche Anlagevermögen unverzüglich unter Herausgabe aller vorhandenen Schlüssel insbesondere für die Gebäude zu räumen und herauszugeben. Alle Gegenstände, die nach §§ 93, 94 BGB in das Eigentum des Verkäufers übergegangen sind, verbleiben diesem. Einrichtungen des Käufers, die nicht wesentliche Bestandteile des Grundbesitzes geworden sind, kann der Käufer nach Zugang der Rücktrittserklärung entfernen. Der Verkäufer kann gegen Bezahlung des Betrages, der zur Herstellung einer neuen Einrichtung erforderlich wäre, abzüglich eines angemessenen Betrages für die zwischenzeitliche Abnutzung, verlangen, dass der Käufer die Einrichtung auf dem Grundbesitz belässt.

P000030

CONFIDENTIAL- ATTORNEY'S EYES ONLY
CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16589

- 31 -

Eine weitere Nutzung des Grundbesitzes wie des beweglichen Anlagever-
mögens ist nach Eintritt des die Rückabwicklung auslösenden Sachverhalts
nur nach vorausgehender ausdrücklicher, schriftlicher Zustimmung des
Verkäufers erlaubt.

b)   eine Vergütung für den Verbrauch von Vorratsvermögen. Hierfür ist nach
Eintritt des die Rückabwicklung verursachenden Sachverhalts auf Kosten
des Käufers unverzüglich eine Inventur zu erstellen, an der der Verkäufer
uneingeschränkt teilnehmen und die der Verkäufer auf seine Kosten über-
prüfen kann. Die zur Auflistung gemäß § 1 im 3. Teil des Vertrages festge-
stellte Differenz gilt als Entnahme des Käufers. Die Bewertung der ver-
brauchten Gegenstände erfolgt durch den Verkäufer 2 nach billigem Er-
messen, dem Käufer steht das Recht gem. § 315 Abs. 3 BGB zu. Die Ver-
gütung zuzüglich Umsatzsteuer ist fällig sofort mit Rechnungsstellung und
kostenfrei auf das benannte Insolvenzverwalteranderkonto einzuzahlen.

Der Käufer hat mit Eintritt des die Rückabwicklung auslösenden Sach-
halts das nicht verbrauchte Vorratsvermögen unverzüglich herauszugeben.

Ein weiterer Verbrauch von Vorräten ist nach Eintritt des die Rückabwick-
lung auslösenden Sachverhalts nur nach vorausgehender ausdrücklicher,
schriftlicher Zustimmung des Verkäufers erlaubt.

c)   die vom Käufer gemäß § 8 dieses Teils des Vertrages zu tragenden Kosten
wie die Kosten der Rückabwicklung des Vertrages selbst.

5.   Weiter schuldet der Käufer für den Fall des vollständigen oder teilweisen Nichtvoll-
zugs oder des vollständigen oder teilweisen Rückabwicklung dieses Vertrages den
Verkäufern als Gesamtgläubiger eine pauschale Abgeltung von € 50.000,00. Dies
gilt nicht, wenn ein Verkäufer den Nichtvollzug oder die Rückabwicklung allein zu
vertreten hat. Darüber hinausgehende Ansprüche bleiben dem jeweiligen Verkäu-
fer vorbehalten.

## § 8
### Kosten

Die Kosten dieses Vertrages, seines Vollzuges, die Kosten der Übergabe der verkauften
Gegenstände wie die Kosten der Begründung und Übertragung der verkauften Rechte,
die Kosten etwaiger behördlicher Genehmigungen, der Grunderwerbssteuer, sowie alle im
Zusammenhang mit der Löschung bzw. Pfandfreigabe für nicht übernommene Belastun-
gen und Beschränkungen entstehenden Kosten trägt der Käufer.

P000031

CONFIDENTIAL– ATTORNEY'S EYES ONLY
CONFIDENTIAL–ATTORNEYS EYES ONLY

- 32 -

## § 9
## Haftungsbeschränkung, Verjährung

1.  Bei leicht fahrlässigen Pflichtverletzungen beschränkt sich die Haftung des Ver-
    käufers auf den vorsehbaren, vertragstypischen, unmittelbaren Schaden. Dies
    gilt auch bei leicht fahrlässigen Pflichtverletzungen gesetzlicher Vertreter und Er-
    füllungsgehilfen. Der Verkäufer haftet jedoch nicht bei leicht fahrlässiger Verlet-
    zung unwesentlicher Vertragspflichten.

2.  Mit Ausnahme des mängelbedingten Rücktritts im Falle einer zwingenden Mängel-
    haftung des Verkäufers darf der Käufer nur bei einer vom Verkäufer verschuldeten
    Pflichtverletzung vom Vertrag zurücktreten.

    Tritt der Käufer vom Vertrag zurück, steht ihm daneben kein Schadensersatzan-
    spruch zu.

3.  Die Haftung des Verkäufers gegenüber dem Käufer, gleich aus welchem Rechts-
    grund, beschränkt sich auf die Höhe des geleisteten Kaufpreises.

4.  Rechtsmängelansprüche verjähren in 12 Monaten. Auch Sachmängelansprüche
    verjähren in 12 Monaten. Diese Verjährungsfristen gelten nicht, soweit das Gesetz
    gem. § 438 Abs. 1 Nr. 2 BGB (Bauwerk und Sachen für Bauwerke) und § 479 BGB
    (Rückgriffsansprüche) längere Fristen vorschreibt, sowie bei arglistigem Ver-
    schweigen eines Mangels. Die gesetzlichen Regelungen über Beginn, Hemmung
    und Neubeginn der Fristen bleiben unberührt. Verhandlungen zwischen dem Ver-
    käufer und dem Käufer über die vom Käufer geltend gemachten Ansprüche oder
    die seine Ansprüche begründenden Tatsachen hemmen die Verjährung nicht, es
    sei denn die Verhandlungen werden kurz vor Ende der Verjährung geführt.

5.  Die vorstehenden Haftungsbeschränkungen gelten nicht, wenn den Verkäufer der
    Vorwurf des Vorsatzes oder des groben Verschuldens trifft. Sie gelten weiter nicht
    bei Schäden für Leben, Körper und Gesundheit oder im Falle des arglistigen Ver-
    schweigens eines Mangels. Sie betreffen weiter nicht Ansprüche des Käufers aus
    Produkthaftung.

## § 10
## Umsatzsteuer, Abtretung Vorsteuererstattungsanspruch

1.  Die Vertragsparteien sind sich darüber einig, dass der Käufer die Verpflichtung zur
    Zahlung der Umsatzsteuer erfüllungshalber dadurch erbringt, dass er seine An-
    sprüche auf Rückerstattung infolge Geltendmachung des Vorsteuerabzugs gegen

**CONFIDENTIAL- ATTORNEY'S EYES ONLY**

CONFIDENTIAL–ATTORNEYS EYES ONLY

- 33 -

das zuständige Finanzamt an den jeweiligen Verkäufer abtritt. Dieser nimmt die Abtretung hiermit an.

2.  Der jeweilige Verkäufer wird dem Käufer eine zum Vorsteuerabzug berechtigende Rechnung erteilen. Die Vertragsparteien werden vorstehend erwähnte Abtretung entsprechend den vom zuständigen Finanzamt hierfür vorgesehenen Formularen vornehmen. Die Vertragsparteien vereinbaren, die Verrechnung der Umsatzsteuer zu beantragen, und verpflichten sich, die entsprechende Erklärung hierzu abzugeben. Sollte das zuständige Finanzamt wider Erwarten den Umsatzsteuererstattungsanspruch des Käufers mit anderen Steuerlasten verrechnen oder aus anderen Gründen eine Tilgung der Umsatzsteuerverbindlichkeiten des Verkäufers aus diesem Kaufvertrag ganz oder teilweise für unwirksam erachten, verpflichtet sich der Käufer, den Betrag der gesetzlichen Umsatzsteuer unverzüglich auf das jeweils genannte Insolvenzverwalteranderkonto zu überweisen.

## § 11
### Vollstreckungsunterwerfung

1.  Der Käufer unterwirft sich wegen der eingegangenen Zahlungsverpflichtungen gem. § 3 Ziff. 1 des ersten Teils, sowie der jeweils in § 2 des 2. Teils, des 3. Teils und des 4. Teils dieser Urkunde vereinbarten Kaufpreise und Verzugszinsen in Höhe von 8 Prozentpunkten über Basiszinssatz gem. § 247 BGB jährlich dem jeweiligen Verkäufer gegenüber der sofortigen Zwangsvollstreckung aus dieser Urkunde in sein gesamtes Vermögen. Um dem Bestimmtheitserfordernis des Zwangsvollstreckungsverfahrens zu genügen, gelten die Zinsen einen Monat ab heutiger Beurkundung als geschuldet.

2.  Der amtierende Notar wird übereinstimmend angewiesen, dem Verkäufer nach dem Fälligkeitszeitpunkt jederzeit eine vollstreckbare Ausfertigung dieser Urkunde zu erteilen. Hierbei genügt die Darlegung der die Fälligkeit begründenden Tatsachen; eine Umkehr der Beweislast ist damit nicht verbunden.

## § 12
### Allgemeines

1.  Für den Fall von Streitigkeiten zwischen den Parteien im Zusammenhang mit dem Vertrag und seiner Durchführung wird als ausschließlicher Gerichtsstand Karlsruhe vereinbart. Der Verkäufer ist auch berechtigt, am allgemeinen Gerichtsstand des Käufers zu klagen.

2.  Ergänzungen oder Änderungen zu diesem Vertrag bedürfen mindestens der Schriftform, dies gilt auch für die Änderung der Schriftformklausel selbst. Soweit

**CONFIDENTIAL- ATTORNEY'S EYES ONLY**

P000033

CONFIDENTIAL–ATTORNEYS EYES ONLY

- 34 -

notarielle Beurkundung erforderlich ist, muss die Änderung in dieser Form erfolgen.

3. Sollten einzelne Teile dieser Vereinbarung unwirksam oder nichtig sein oder werden, oder sollte sich eine Lücke in dieser Vereinbarung herausstellen, die nach dem beabsichtigten Ziel der Vertragschließenden in dieser Vereinbarung hätte geregelt werden sollen, so gilt der vorhandene und wirksame Teil des Vertrages in jedem Falle. Unwirksame oder nichtige Bestimmungen sind durch eine Vereinbarung der Parteien, die der unwirksamen oder nichtigen Bestimmung wirtschaftlich möglichst nahe kommt, zu ersetzen. Bis zu einer solchen Vereinbarung wird die Lücke durch ergänzende Vertragsauslegung entsprechend ausgefüllt.

4. Unbeschadet der schuldrechtlichen Rückwirkung der auf Verkäuferseite erforderlichen Genehmigungen dieses Vertrages stimmen die Vertragsparteien überein, daß in diesem Vertrag genannte Fristen, die auf den Zeitpunkt des Vertragsabschlusses abstellen, erst zu laufen beginnen mit Eingang der notariell beglaubigten Genehmigungen beim Urkundsnotar und entsprechender Benachrichtigung des Käufers durch den Urkundsnotar.

§ 13
Anlagen

Diesem Vertrag sind folgende Anlagen beigefügt:

Anlage A1.1
Grundbuchauszug vom 25.05.2010.

Anlage A1.5.2
Beglaubigte Abschrift der Bezugsurkunde vom 26.05.2010
(beinhaltend: Sachverständigengutachten Klöters & Partner vom 23. 09. 2009);

Anlage A2.1
Liste der verkauften Gegenstände des beweglichen Anlagevermögens;

Anlage A3.1
Auflistung der verkauften Gegenstände des Vorratsvermögens.

Anlage A5.2.1
Liste der Aufträge.

Nachdem es sich bei den Anlagen A1.1, A2.1, A3.1 und A5.2.1 jeweils um Bestandsverzeichnisse über Grundstücke, Sachen, Rechte und Rechtsverhältnisse handelt, wird gemäß § 14 BeurkG auf ein Vorlesen dieser Anlagen verzichtet.

Gemäß § 14 Abs. 3 BeurkG wird bestätigt, daß die genannten Anlagen zur Durchsicht vorgelegt und jeweils am Schluß der betreffenden Anlage unterschrieben wurden. Soweit Anlagen aus mehreren Seiten bestehen, sind die übrigen Seiten daneben jeweils paraphiert worden.

CONFIDENTIAL- ATTORNEY'S EYES ONLY

CONFIDENTIAL–ATTORNEYS EYES ONLY

P000034

LT16593

- 35 -

## § 14
## Schluss

1. Beantragt, ggf. auch auszugsweise, werden für:

   a) Grundbuchamt Heilbronn - Ausfertigung zum Vollzug gegen Vollzugsanzeige - zunächst auszugsweise ohne Auflassung-, nach Zahlungsmeldung vollständig;

   b) für jeden Beteiligten eine beglaubigte Abschrift,

      eine einfache Abschrift für Schultze & Braun GmbH Rechtsanwaltsgesellschaft Wirtschaftsprüfungsgesellschaft, Eisenbahnstr. 19 - 23, 77855 Achern zu Händen Rechtsanwältin Judith Franz, AZ: 30480-10;

   c) alle darüber hinaus nach Beurteilung des Notars erforderlichen auch auszugsweise Ausfertigungen und Abschriften.

2. Der Notar ist um Vollzugsanzeige auch an Schultze & Braun GmbH Rechtsanwaltsgesellschaft Wirtschaftsprüfungsgesellschaft, Eisenbahnstraße 19-23, 77855 Achern, zu Händen Rechtsanwältin Judith Franz, AZ: 30480-10 gebeten.

3. Der Beurkundende hat die Vertragsbeteiligten über die rechtliche Bedeutung ihrer Erklärungen belehrt und hat insbesondere auf folgendes hingewiesen:

   a. Das Eigentum geht erst mit der Umschreibung im Grundbuch auf den Käufer über. Die Umschreibung ist erst möglich, wenn die Auflassung erklärt ist sowie das Negativzeugnis nach § 28 Abs. 1 BauGB und die Unbedenklichkeitsbescheinigung des Finanzamts wegen der Grunderwerbsteuer vorliegen.

   b. Nebenabreden sind beurkundungspflichtig und die Nichtbeachtung kann zu einer Nichtigkeit des Vertrages führen. In diesem Falle bedeutet auch die Vormerkung keine Sicherung. Deshalb müssen insbesondere die Höhe des Kaufpreises und alle etwaigen sonstigen Gegenleistungen vollständig und richtig angegeben werden.

   c. Der Vertragsgegenstand haftet für eingetragene Belastungen sowie Rückstände an Steuern und Abgaben, wobei der Verkäufer versichert, daß keine Rückstände bestehen. Die Beteiligten haften gesamtschuldnerisch für Kosten und Steuern. Bestimmte Rechtsverhältnisse (z.B. §§ 95 ff. VVG, §§ 566 ff. BGB) gehen kraft Gesetzes auf den Käufer über.

   d. Soweit die Besitzübergabe vor vollständiger Kaufpreiszahlung bzw. die Zahlung des Kaufpreises oder Teilen hiervon ohne ausreichende dingliche Sicherung des Käufers erfolgen, kann hierin möglicherweise eine ungesicherte Vorleistung eines Vertragsteils liegen.

CONFIDENTIAL- ATTORNEY'S EYES ONLY

CONFIDENTIAL—ATTORNEYS EYES ONLY

P000035

LT16594

- 36 -

e. Es ist nicht Aufgabe des Notars, die Beteiligten in steuerlicher Hinsicht zu beraten oder zu belehren.

5.  Abwicklungsvollmacht

Sämtliche Beteiligten erteilen hiermit den Angestellten des Notars Dr. Rolf Gaupp, nämlich den Damen

Frau Carmen Grösser, Frau Ilse Klöss, Frau Anny Müller,
Frau Petra Schäfer, Frau Gabriele Walter                    - je einzeln -

die von der Rechtswirksamkeit der heutigen Vereinbarungen unabhängige Vollmacht, sie bei der Abgabe und Entgegennahme von ergänzenden, berichtigenden und rechtsbegründenden Erklärungen zu vertreten und überhaupt alles zu tun, was zur vollständigen Erledigung des Vertrages erforderlich oder zweckmäßig ist.

Die Vollmacht ist übertragbar und erlischt nicht durch Tod. Befreiung von den Beschränkungen des § 181 BGB ist erteilt.

Von dieser Vollmacht kann nur vor Notar Dr. Gaupp oder seinem jeweiligen Vertreter im Amt Gebrauch gemacht werden. Die Vollmachten begründen keine Pflicht zum Tätigwerden.

Vorstehende Niederschrift wurde den Erschienenen vom Beurkundenden vorgelesen, von den Erschienenen genehmigt und von ihnen und dem Beurkundenden eigenhändig unterschrieben wie folgt:

Dr. Gaupp, Notar

P000036

CONFIDENTIAL- ATTORNEY'S EYES ONLY
CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16595

# VERTRETUNGSBESCHEINIGUNG

Aufgrund heutiger Einsichtnahme in das elektronisch geführte Handelsregister des Amtsgerichts Stuttgart bescheinige ich, daß

A.   die im Handelsregister des Amtsgerichts Stuttgart zu <u>HRB 724988</u> eingetragene Gesellschaft mit beschränkter Haftung unter der Firma

**Lavatec Laundry Technology GmbH**
mit dem Sitz in Heilbronn
(Wannenäckerstraße 53, 74078 Heilbronn)

vertreten wird durch deren einzelvertretungsberechtigten und von den Beschränkungen des § 181 BGB befreiten Geschäftsführer,

Herrn Wolf-Peter **G r a e s e r** ,
geboren am 12.09.1957, Flein

B.   und daß die unter lit. A. genannte Vertretungsberechtigung unverändert besteht seit dem 03.03.2010.

Heilbronn, den 26. Mai 2010

Dr. Gaupp, Notar

CONFIDENTIAL- ATTORNEY'S EYES ONLY

P000037

CONFIDENTIAL—ATTORNEYS EYES ONLY

LT16596

**<u>Attachment A3.1 to the Certificate of the Notary Dr. Rolf Gaupp in Heilbronn</u>**

**<u>of May 26, 2010 – URNo. 924/2010 –</u>**

**Listing**

of the

**Purchased objects**

from the

**inventory**

_____

**Raw materials, auxiliary supplies and operating supplies**
(Attachment A3.1a)

CONFIDENTIAL–ATTORNEYS EYES ONLY

LT16597

Case 3:13-cv-00056-SRU   Document 240-8   Filed 02/03/17   Page 78 of 78

LT16598

# Inventory on 02/09/2010, sorted numerically

LAVATEC AG    02/09/2010    10:44 am   Page 0
Processor   muth

* Inventory list *

| | | |
|---|---|---|
| Inventory location | 0 | 910 |
| Part | | zzz |
| Inventory | only positive | |
| Negative We | no | |
| Deadline | 02/09/2010 | |
| Inventory location | 10 | |

| Running Pos No. | Warehouse Location | Part | TA | Designation | ME | Stock | E-Price | GesVal | oB | U | Suppl. No. | Suppl. Name | HL | No. | Section |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 14137 | 23-02-04 | 000007 | 10 | Sheet steel Stw 22 (DD11) | kg | 192 | XXXXX | XXXXX | 9 | | 736120 | XXXXX | yes | 1 | 0 |
| 2 14135 | 23-02-03 | 000010 | 10 | Sheet steel Stw 22 (DD11) | kg | 128 | XXXXX | XXXXX | 10 | | 736120 | XXXXX | yes | 1 | 0 |
| 3 14152 | 30-04-01 | 000011 | 10 | Sheet steel Stw 22 (DD11) | kg | 450 | XXXXX | XXXXX | 10 | | 736120 | XXXXX | yes | 1 | 0 |
| 4 14135 | 23-02-03 | 000013 | 10 | Sheet steel Stw 22 (DD11) | kg | 960 | XXXXX | XXXXX | 9 | | 736120 | XXXXX | yes | 1 | 0 |
| 5 14119 | 22-01-09 | 000016 | 10 | Sheet steel Stw 22 (DD11) | kg | 381 | XXXXX | XXXXX | 9 | | 736120 | XXXXX | yes | 1 | 0 |
| 6 14150 | 30-03-04 | 000019 | 10 | Sheet steel Send Verz | kg | 64 | XXXXX | XXXXX | 11 | | 736120 | XXXXX | yes | 1 | 0 |
| 7 14120 | 22-01-09 | 000020 | 10 | Sheet steel Send Verz | kg | 240 | XXXXX | XXXXX | 9 | | 736120 | XXXXX | yes | 1 | 0 |
| 8 14153 | 30-04-02 | 000021 | 10 | Sheet steel Send Verz | kg | 300 | XXXXX | XXXXX | 13 | | 736120 | XXXXX | yes | 1 | 0 |
| 9 14138 | 23-02-05 | 000023 | 10 | Sheet steel Send Verz | kg | 162 | XXXXX | XXXXX | 11 | | 736120 | XXXXX | yes | 1 | 0 |
| 10 14151 | 30-03-04 | 000025 | 10 | Sheet steel Send Verz | kg | 23.5 | XXXXX | XXXXX | 11 | | 736120 | XXXXX | yes | 1 | 0 |
| 11 14102 | 20-04-08 | 000027 | 10 | Sheet steel Send Verz | kg | 360 | XXXXX | XXXXX | 9 | | 736120 | XXXXX | yes | 1 | 0 |
| 12 14122 | 22-01-10 | 000028 | 10 | Sheet steel Send Verz | kg | 480 | XXXXX | XXXXX | 10 | | 736120 | XXXXX | yes | 1 | 0 |
| 13 14105 | 20-05-01 | 000029 | 10 | Sheet steel Send Verz | kg | 100 | XXXXX | XXXXX | 10 | | 736120 | XXXXX | yes | 1 | 0 |
| 14 14139 | 23-02-05 | 000030 | 10 | Sheet steel Send Verz | kg | 200 | XXXXX | XXXXX | 20 | | 736120 | XXXXX | yes | 1 | 0 |
| 15 14154 | 30-04-02 | 000031 | 10 | Sheet steel Send Verz | kg | 37.5 | XXXXX | XXXXX | 12 | | 736120 | XXXXX | yes | 1 | 0 |
| 16 14140 | 23-02-05 | 000044 | 10 | Sheet steel ST12-03 | kg | 1,152 | XXXXX | XXXXX | 11 | | 736120 | XXXXX | yes | 1 | 0 |
| 17 14141 | 23-02-05 | 000101 | 10 | Sheet steel Stw 22 (DD11) | kg | 900 | XXXXX | XXXXX | 10 | | 736120 | XXXXX | yes | 1 | 0 |
| 18 14171 | 22-01-09 | 000126 | 10 | Sheet steel ST W22 Laserqual. | kg | 560 | XXXXX | XXXXX | 10 | | 736120 | XXXXX | yes | 1 | 0 |
| 19 14106 | 20-05-01 | 000133 | 10 | Sheet steel St 37-2 Laserqual. | kg | 240 | XXXXX | XXXXX | 11 | | 736120 | XXXXX | yes | 1 | 0 |
| 20 14107 | 20-05-01 | 000137 | 10 | Sheet steel DD 11 S 235 Laser | kg | 2,240 | XXXXX | XXXXX | 10 | | 736120 | XXXXX | yes | 1 | 0 |
| 21 14165 | 33-12-03 | 000138 | 10 | Sheet steel S 235 JRG 2 | kg | 200 | XXXXX | XXXXX | 11 | | 736120 | XXXXX | yes | 1 | 0 |
| 22 14149 | 30-02-01 | 000141 | 10 | Sheet steel St 37-2 Laserqual. | kg | 320 | XXXXX | XXXXX | 11 | | 736120 | XXXXX | yes | 1 | 0 |
| 23 14187 | | 000143 | 10 | Sheet steel St 37-2 Laserqual. | kg | 250 | XXXXX | XXXXX | 12 | | 736120 | XXXXX | yes | 1 | 0 |
| 24 14188 | | 000144 | 10 | Sheet steel St 37-2 Laserqual. | kg | 375 | XXXXX | XXXXX | 11 | | 736120 | XXXXX | yes | 1 | 0 |
| 25 14159 | 30-05-02 | 000202 | 10 | Perforated Sheet steel ST12-03 | kg | 144 | XXXXX | XXXXX | 11 | | 755760 | XXXXX | yes | 1 | 0 |
| 26 14192 | 20-04-03 | 000203 | 10 | Perforated Sheet steel ST12-03 | kg | 636 | XXXXX | XXXXX | 11 | | 755760 | XXXXX | yes | 1 | 0 |
| 27 14160 | 30-05-02 | 000204 | 10 | Perforated Sheet steel ST12-03 | kg | 50 | XXXXX | XXXXX | 14 | | 755760 | XXXXX | yes | 1 | 0 |
| 28 14128 | 23-01-14 | 000301 | 10 | Stainless steel sheet 1.4016 | kg | 112 | XXXXX | XXXXX | 11 | | 790160 | XXXXX | yes | 1 | 0 |

1 – 402      02/10/10   8:40 am

CONFIDENTIAL—ATTORNEYS EYES ONLY