### Page 1

```
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
CIVIL ACTION NO. 3:13CV 00056 (SRU)(WIG)
----------------------------------------x
LAVATEC LAUNDRY TECHNOLOGY GMBH,       :
On Behalf of Itself and as Successor   :
In Interest to LAVATEC GMBH and        :
LAVATEC-WASCHEREIMASCHINEN GMBH        :
CO. KG.,                               :
     Plaintiffs,                       :
          -v-                          :
VOSS LAUNDRY SOLUTIONS, INC.,          :
     Defendant.                        :
----------------------------------------x
```

        Deposition of PETER THOMPSON, taken pursuant to the Federal Rules of Civil Procedure, at the Law Offices of Hurtiwz, Sagarin, Slossberg & Knuff, LLC, 147 North Broad Street, Milford, Connecticut, before James A. Martone, LSR #248, and Notary Public, in and for the State of Connecticut, on July 27th, 2015, at 10:05 a.m.

### Page 2

```
 1  APPEARANCES:
 2
 3      For the Plaintiffs:
 4  KLEIN, MOYNIHAN, TURCO, LLP
 5  450 Seventh Avenue
 6  New York, New York 10123
 7  BY: JOHN E. GREENE, ESQ.
 8          -And-
 9  HURWITZ, SAGARIN, SLOSSBERG & KNUFF, LLC
10  147 North Broadway
11  Milford, Connecticut 06460
12  BY: DAVID A. SLOSSBERG, ESQ.
13
14      For the Defendant:
15  McCORMICK, PAULDING & HUBERK, LLP
16  185 Asylum Street
17  City Place II-18th Floor
18  Hartford, Connecticut 06103
19  BY: JOHN C. LINDERMAN, ESQ.
20
21  Also Present: Mark Thrasher
22
23
24
25
```

### Page 3

```
 1                S T I P U L A T I O N S
 2
 3       IT IS HEREBY STIPULATED AND
 4   AGREED by and between counsel for the
 5   respective parties hereto that all
 6   technicalities as to proof of the official
 7   character before whom the deposition is to
 8   be taken are waived.
 9
10       IT IS FURTHER STIPULATED AND
11   AGREED by and between counsel for the
12   respective parties hereto that the
13   deposition may be signed before any Notary Public.
14
15       IT IS FURTHER STIPULATED AND
16   AGREED by and between counsel for the
17   respective parties hereto that all
18   objections, except as to form, are reserved
19   to the time of trial.
20
21
22                * * * * * *
23
24
25
```

### Page 4

```
 1               WITNESS INDEX
 2                                          PAGE
 3   Direct Examination by Mr. Greene        6
 4
 5               EXHIBIT INDEX
 6   PLAINTIFF    DESCRIPTION               PAGE
 7   28  Notice of Deposition                 5
 8   29  Lavatec, Inc. Income Statement for the nine
         months ended 9/30/2011               9
 9
     30  Lavatec, Inc. Income Statement for the nine
10       months ended 9/30/2011              11
11   31  Lavatec, Inc. Income Statement for the twelve
         months ended 12/31/2011             12
12
     32  Lavatec, Inc. Income Statement for the twelve
13       months ended 12/31/2012             15
14   33  Lavatec, Inc. Income Statement for the twelve
         months ended 12/31/2013             16
15
     34  Voss Laundry Solutions, Inc. Income Statement
16       for eleven months ended 11/30/2014  19
17   35  Lavatec, Inc. Income Statement for the nine
         months ended 9/30/2011              20
18
     36  Lavatec, Inc. Form 1120 for 2011    23
19
     37  Lavatec, Inc. Form 1120 for 2012    24
20
     38  Lavetec, Inc. Form 1120 for 2013    26
21
     39  Objections and Responses to Second Set of
22       Document Requests                   27
23   40  Lavatec, Inc. Financial statements
         for the year-ended December 31, 2012  35
24
     41  Lavatec, Inc. Financial Statements for
25       the years ended December 31, 2013 and 2012  42
```

DEFENDANT'S EXHIBIT 827

### Page 29

```
 1   guess through the present, that would be available
 2   for copy and inspection; is that correct?
 3       A.  That is correct.
 4       Q.  Now to the best of your recollection, can
 5   you tell me when the defendant, or when Voss stopped
 6   invoicing as Lavatec, Inc.?
 7       A.  Once we were informed that we were no
 8   longer able to do so.
 9       Q.  Would it have been immediately, the next
10   day you stopped generating invoices?
11           MR. LINDERMAN:  Objection.  I think
12   it's been asked and answered.
13       Q.  You can answer.
14       A.  I believe so.
15       Q.  And Mr. Thompson, when you say the day
16   after you were told to stop, what do you mean by you
17   were told to stop?
18       A.  Simply that we no longer were allowed to
19   use the name Lavatec, Inc.
20       Q.  Were you shown a court order?
21       A.  I believe I simply was informed that the
22   judge had made the decision and we were to cease and
23   desist.
24       Q.  And what decision were you told?
25       A.  That the judge had ruled that we were not
```

### Page 30

```
 1   to use our trade name any longer
 2       Q.  Was Voss or Lavatec at the time, still
 3   manufacturing products in late 2014, say second half
 4   of 2014?
 5       A.  We were in normal operation.
 6       Q.  And that included the manufacture of
 7   products; is that correct?
 8       A.  Yes.
 9       Q.  Okay.  And for the products that were
10   being manufactured by the defendant, did they have a
11   Lavatec trademark or nameplate applied to them?
12       A.  After that date, no equipment left the
13   factory with the Lavatec name on it.
14       Q.  After which date?
15       A.  After we were told to cease and desist
16   using our trade name.
17       Q.  Prior to I guess the November, 2014 time
18   period, products that were being manufactured by the
19   defendant had a Lavatec nameplate applied to them; is
20   that correct?
21       A.  Our folding equipment, yes.  Which had
22   always had that Lavatec nameplate on it, until we
23   were told to cease and desist, had the names on it.
24       Q.  Did any other products sold by the
25   defendant receive a Lavatec nameplate?
```

### Page 31

```
 1       A.  No.
 2       Q.  No Lepauw products also had a Lavatec name
 3   plate?
 4       A.  Never.
 5       Q.  Were you aware of the Court's decision in
 6   September of 2014, concerning the ownership of the
 7   trademark?
 8           MR. LINDERMAN:  Objection.
 9       A.  Can you tell me what date that was?
10       Q.  September 3rd, 2014 I believe.
11       A.  And on that date, what happened?
12       Q.  The Court made a decision as to who owns
13   the Lavatec trademark.
14       A.  Okay.
15       Q.  You were aware of the decision of the
16   Court concerning that?
17       A.  Yes.
18       Q.  And at that time, you continued to invoice
19   as Lavatec; is that correct?
20       A.  The invoices showed our trade name.
21       Q.  What about the manufacture of products?
22   Were you still putting the Lavatec nameplate on after
23   the decision on ownership?
24       A.  I believe not.  That was -- once we lost
25   the trademark case, I believe not.
```

### Page 32

```
 1       Q.  So earlier you had testified that the
 2   nameplate stayed on until the November, 2014 time
 3   period.
 4       A.  I might be confused on that then.  I think
 5   what -- that was when we had to stop using the name
 6   on our invoicing.  I think at the September date, we
 7   had to stop putting the Lavatec name on the machine.
 8       Q.  Is there any document that would reflect a
 9   directive of the company to stop putting the
10   nameplates on?
11       A.  I'm not sure if there was a written
12   document or not.
13           MR. GREENE:  To the extent there was
14   a written document, I'd call for its production.
15       Q.  So is there any document that you could
16   look at that would better inform you when the
17   defendant stopped applying the Lavatec nameplates to
18   certain products?
19       A.  I don't think any internal document that
20   I'm aware of.  I'd have to think about it.  But
21   nothing pops into my head.
22       Q.  So other than your recollection, is there
23   anything to confirm when the defendant stopped
24   applying the Lavatec trademark to the newly
25   manufactured products?
```

Electronically signed by JAMES MARTONE (601-171-250-7767)          de898751-ac5a-403f-a69e-a5f43b4da2bc

Page 33

1    A.  I believe we had nameplates made that said
2    Master Eclipse on our equipment, that perhaps would
3    be a document that would show.  We had to get a new
4    plate to put on the machine.
5        Q.  Did you sell any machines or any newly
6    manufactured machines after the decision on the
7    trademark ownership but before you received the new
8    Master Eclipse plates?
9        A.  I'm pretty sure we had no equipment
10   leaving with the name "Lavatec" on it once we were
11   told we had lost the trademark case.
12       Q.  Is there anything on the products that
13   indicates when a particular product was manufactured?
14       A.  Yes.  There's a nameplate, not a trade --
15   not a trade plate if you want to call it that, but
16   there's a serial plate that would show.
17       Q.  And the serial plate reflects the date of
18   the manufacture of the product?
19       A.  It does.
20       Q.  And is the serial plate on just the -- I
21   guess just the machine itself or is it also on the
22   circuit boards or anything else?
23       A.  I know that the nameplate is on the
24   machine.
25       Q.  Mr. Thompson, when we deposed you

Page 34

1    previously, we discussed the AccPac software.  Do you
2    recall that, Mr. Thompson?
3        A.  I remember we discussed AccPac, yes.
4        Q.  Can you tell me what the AccPac software
5    is?
6        A.  It's our accounting software.
7        Q.  And what does that reflect or capture?
8        A.  Everything that you see on the Income
9    Statement, on the balance sheet -- AccPac produces
10   our invoices.  It pays our -- cuts checks.  It does
11   everything that you would need for an accounting
12   system to do.
13       Q.  So it provides more detail or backup to
14   the income statements; is that correct?
15       A.  It produces accounts receivable, accounts
16   payables.  It's a full accounting system.
17       Q.  And the AccPac software can be printed out
18   by year for the accounting year?  In other words,
19   your '96 sales information, you can just run a report
20   from AccPac, which just has the '96 sales
21   information; is that correct?
22       A.  I can go back in time to produce, yes.
23       Q.  Mr. Thompson, this was previously marked
24   as PT 21.  I'm sorry, I don't have copies.  If you
25   can just look at that for a moment.  Is PT 21 a

Page 35

1    general ledger from the AccPac software?
2        A.  This is the -- as it states, it's the
3    Lavatec, the old Lavatec, before the purchase of
4    Lavatec out of bankruptcy, and it is a general ledger
5    report of equipment sales.
6        Q.  For a particular time period; is that
7    correct?
8        A.  Yes.  It says for year 2006, from January
9    to December.
10           MR. GREENE:  I'm gonna call for the
11   production of a general ledger, AccPac report for the
12   years 2011 post-bankruptcy until the end of time,
13   through 2014.
14           MR. LINDERMAN:  You're calling for
15   what?
16           MR. GREENE:  Production of the
17   general ledger from the AccPac for the years 2011,
18   post-bankruptcy obviously, 2011, 2012, 2013, 2014.
19       A.  To clarify --
20           MR. LINDERMAN:  I'll take that under
21   consideration.
22           MR. GREENE:  Let's mark this.
23           (Plaintiff's Exhibit 40
24           Marked for identification)
25       Q.  Mr. Thompson, you've just been handed

Page 36

1    what's been marked as PT 40.  If you can take a
2    moment to review.
3        A.  All right.
4        Q.  Mr. Thompson, can you tell me what PT 40
5    is, please?
6        A.  That's the audited financials for the
7    year-ending 2012.
8        Q.  And have you reviewed this before?
9        A.  I've seen it before.
10       Q.  If you can turn to page V 198.  If you
11   look under paragraph 2.  It's date of management's
12   review.  Do you see that, Mr. Thompson?
13       A.  Uh-huh.
14       Q.  Would you have been part of the management
15   team that reviewed this financial statement?
16       A.  Uh-huh.  Yes.
17       Q.  Turning back to V 194.  Can you tell me
18   what the net sales were for the defendant for 2011?
19       A.  2011, it is 1,836,893.
20       Q.  Would that be for the time period just
21   post bankruptcy?
22       A.  That is correct.
23       Q.  What were the net sales for 2012?
24       A.  5,106,037.
25       Q.  Now for all of the sales reflected in this